# EXHIBIT B

COPY

# IN THE CIRCUIT COURT
## FOR DAVIDSON COUNTY, TENNESSEE
### AT NASHVILLE

|  |  |
|---|---|
| **IAN LUCAS, Pro *Se*** ) | ) |
| *Plaintiff* ) | **DOCKET NO.  24C655** |
| **v.** ) | ) |

IAN LUCAS, Pro *Se*
                    *Plaintiff*

v.

Mary Ann Jessee, Michelle Tellock,
Joel Newsome, Melissa Porter, G.L. Black,
Clarise Gamez, Neil Jamerson, Jeremy
Bourgoin, Mavis Schorn, Pamela Jefferies,
Marissa Shulruff, E. Jacob Cummings,
Jill Harris, Heather Robbins, Cate Enstrom,
Chrystal Ritchie, Angela Weaver, Mary Roy,
Michael Fazi, and Feylyn Lewis

        *Defendants*

DOCKET NO.  24C655

**COMPLAINT
JURY DEMAND**

## COMPLAINT

Plaintiff, Ian Hunter Lucas (hereinafter "Plaintiff"), brings this Complaint against the

Defendants, **Michelle Tellock, Joel Newsome, Melissa Porter, G.L. Black, Mary Ann Jessee,**

**Clairse Gamez, Neil Jamerson, Jeremy Borgoin, Mavis Schoen, Pamela Jefferies, Marissa**

**Shulruff, , E. Jacob Cummings, Tim Garrett, Jill Harris, Heather Robbins, Kate Enstrom,**

**Alice Bernet, Chrystal Ritchie, and Feylyn Lewis** (collectively "Defendants"), for breach of

contract, negligence, discrimination on the basis of disability in violation of the Americans with

Disabilities Act, Section 504 of the Rehabilitation Act, and the Tennessee Human Relations Act,

and retaliation for Plaintiff making complaints regarding the discrimination that he experienced

due to Vanderbilt University's actions as well as other wrongful actions under the laws of the

United States and the State of Tennessee, and alleges as follows:

COPY

## PARTIES

1.      Plaintiff, Ian Hunter Lucas, is an adult male citizen of the United States, who is a resident of Pleasant View, Tennessee, and was a graduate student at the Vanderbilt University School of Nursing Master of Nursing (MN) Program from January 2023 to December 2023.

2.      Mr. Lucas has been diagnosed with a disability of physically limiting and cognitive disabilities, as the term disability is defined in the Americans with Disabilities Act because as Mr. Lucas meets the standard of having an actual impairment that substantially limits one or more of his major life activities.

3.      At all relevant times, Mr. Lucas has been a "qualified individual" with a disability because he is able to be a functional successful student with the reasonable accommodations he received as a student with a disability.

4.      At all relevant times to this lawsuit, Mr. Lucas was a student of Defendant Vanderbilt University, as a graduate student at the Vanderbilt University School of Nursing to obtain a Master of Nursing degree.

5.      Defendant Vanderbilt University is an educational institution in Nashville, Tennessee, and Defendant Vanderbilt School of Nursing is a component thereof.

6.      Defendant Vanderbilt University ("Vanderbilt") is a private, non-profit educational institution, which receives significant federal funds, and is incorporated and does business in Nashville, Tennessee.

7.      On information and belief, Vanderbilt University has had formal non-discrimination and anti-harassment policies in place since July 2016; those policies specifically include protections from discrimination, harassment, and retaliation based on, among other things, disability.

## JURISDICTION
## AND VENUE

8.     This Court has jurisdiction over Mr. Lucas' claims pursuant to 28 U.S.C. §1331 and §1343 since the matters in controversy arise under the laws of the United States.

9.     This Court also has jurisdiction under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et. seq.*, amended by the Americans with Disabilities Amendments Act (ADA-AA) with an effective date of January 1, 2009, which, as Title II of the ADA, prohibits discrimination in the provision of public services.  Section 202 of the Act, 42 U.S.C. §12132 (Supp. 1991), the Rehabilitation Act of 1973, §§ 504 and 505, as amended.

10.     This Court also has jurisdiction under 28 U.S.C. §1367 over the supplemental state law claims made by Mr. Lucas in seeking relief under the Tennessee Human Rights Act, T.C.A. §4-21-101 *et. seq.*

11.     This Court has personal jurisdiction over both Plaintiff and Defendant.

12.     At all relevant times, Defendant had more than 15 employees, and thus is subject to the requirements of the ADA (42 U.S.C. §12101 *et. seq.* and the Tennessee Human Rights Act (T.C.A. §4-21-101 *et. seq.*).

13.     Venue is proper in the Middle District of Tennessee pursuant to 28 U.S.C. §1391(b)(c) as Defendant is located in the District and subject to the jurisdiction of the Court, and because the events giving rise to the claims raised herein occurred in this judicial district.

COPY



## NATURE OF ACTION

14.     This action seeks relief for Defendants' wrongful actions, including breach of contract, negligence, and intentional infliction of emotional distress, leading to damages through a knowing and inflicting action with the intent to do harm upon the Plaintiff, including wrongful expulsion, whistleblower retaliation, witness intimidation, and obstruction of justice in violation of applicable state and federal laws and principles of equity.

15.     Plaintiff seeks redress for Defendants' wrongful and discriminatory actions that have caused significant educational, professional, and personal harm to Plaintiff.

16.     Further through the process of discovery and trial evidence. Plaintiff will demonstrate Manipulation of External Investigations, Collusion, Witness Intimidation, and Obstruction of Justice, in which the plaintiff is involved in as a federal witness to a whistleblower fraud, waste and abuse case under seal with subpoenas issued under seal by the United States District Court of the Western District of Tennessee, prosecution and representation for the United States led by Sara Williams, Assistant United States Attorney for the United States Attorney's Office of the Western District of Tennessee, and lead investigative agency Department of Health and Human Services Office of Inspector General led by Special Agent Ed Miller.

17.     Defendants' actions demonstrate collusion with the defendant of this investigation in which defendants were aware of a $1.25 million dollar "donation" provided by the Defendants' and the Plaintiff's former employer as a bribe to academically dismiss and expel the Plaintiff. The reason for expulsion exactly matches the investigation determination and "policy violations" as the reason for the wrongful

EFILED 03/30/24 07:37 AM CASE NO. 24C655 Joseph P. Day, Clerk

termination. This served as a mutual and benefiting purpose for the Defendants, who were under investigation at the same time for EOA violations by the Plaintiff for disability discrimination.

18.     Through the trial process, Plaintiff will demonstrate that the retaliation was quite evident, giving the Defendants reasoning to defame and ensure the Plaintiff was expelled to attempt to conceal and deflect the systemic disability discrimination that had been occurring by the Defendants.

19.     Furthermore, two of the Defendants, also student peers of the Plaintiff, agreed to aid the other Defendants in their actions. These Defendants did so for suspected academic and needed favors from the other Defendants' ability and positions of power to provide such aide.

20.     The student Defendants acted in this way, despite Plaintiff's many attempts to offer these student Defendants the opportunities to provide any rebuttal or even an affirmation of not being involved in the matter entirely. The student Defendants, however, chose not respond to Plaintiff's many requests and even choose to continue in their false statements to other members of the student body and on clinical rotations at potential and former employers of the Plaintiff.

## **FACTUAL ALLEGATIONS**

21.     Plaintiff enrolled in Defendant's Master of Nursing program (MN) under the assurance of receiving fair and equitable treatment, educational services, and due process in all academic affairs as part of the contractual relationship with Defendants.

22.     Defendants engaged in discriminatory practices against Plaintiff, breaching

EFILED 03/30/24 07:37 AM CASE NO. 24C655 Joseph P. Day, Clerk

the implied covenant of good faith and fair dealing inherent in the educational contract.

23. Defendants' negligent mismanagement and willful disregard for Plaintiff's right to a fair academic process caused direct harm to Plaintiff's educational trajectory and professional future.

24. Defendants' actions have inflicted severe emotional distress upon Plaintiff, causing damages that are compensable under Tennessee law.

25. On June 3, 2023, Plaintiff reported an incident to the Office of Equal Access, alleging discrimination based on disability by a faculty member, in violation of Plaintiff's rights under Tennessee state law.

26. The basis of this complaint was that Plaintiff was receiving retaliatory treatment and discriminatory treatment by his pediatric clinical faculty member, Professor Harris, based on him using his reasonable accommodation for Crohn's disease on an attendance issue, and that points had been wrongfully deducted from his course grade due to that use of the accommodation.

27. Plaintiff informed Jill Harris that he had a university recognized and approved accommodation via email. Jill Harris then spoke to faculty leadership, confirming that Plaintiff had a reasonable accommodation and that the zero (0) would have to be removed and the tardy would have to be excused.

28. Subsequent to the aforementioned incidents, the Plaintiff was subjected to vindictive treatment orchestrated by Harris, characterized by a series of retaliatory actions designed to ensure the Plaintiff's failure. Harris, with deliberate intent, established conditions and engaged in a consistent pattern of conduct aimed at undermining the Plaintiff's performance. This was notably evident when Harris, in the presence of the

Plaintiff and fellow students, repeatedly expressed her intention for the Plaintiff to be unsuccessful in his nursing education, particularly in relation to a pediatric clinical rotation and associated clinical documentation.

29.     It is pertinent to mention that the Plaintiff possesses more than ten years of experience in pediatric care and had been employed for more than four years at the hospital where the clinical rotation was taking place. Furthermore, Harris resorted to making slanderous remarks and statements, alongside endeavors to publicly disgrace the Plaintiff. Such actions were executed in the presence of the Plaintiff's former colleagues and other clinical staff, individuals familiar with the Plaintiff, who would often extend their well-wishes and encouragement towards his professional pursuits.

30.     A few weeks later, Plaintiff was informed that he violated a rule by looking up a patient's record outside a clinical setting, although it had never previously been brought to his attention as an issue and his clinical instructor, Professor Harris, had requested that he look up the record on his laptop.

31.     Plaintiff was not provided with specific instructions that other students were provided with, to send his clinical paperwork to Jill Harris. Plaintiff was then disciplined for failing to provide Jill Harris with this paperwork when he had not been informed to do so. Furthermore, Jill Harris as confirmed by testimony of other students witnesses to EOA Investigator, required plaintiff to email clinical paperwork to Jill Harris as she noted not being able to discern the Plaintiff's handwriting.

32.     Jill Harris then wrongfully deducted points from Plaintiff in an attempt to fail the Plaintiff based on the syllabus policy on vague application of accumulation of zeros (0) assigned in the category of unprofessionalism. This began with Jill Harris accusing the

Plaintiff of turning in clinical documentation late, which then evolved into Jill Harris falsifying comments in the Plaintiff's clinical "Exxat" reflections and deducting his score based on Jill Harris' hypothetical assumptions of what the Plaintiff would have done in a clinical setting, rather than actual performance of actions themselves.

33. The Plaintiff communicated his concerns to the clinical faculty leadership, including Professor Weaver, Dr. Robbins, and Dean Jesse. This complaint prompted them to remove Plaintiff from Professor Harris' clinical course.

34. A meeting was scheduled in which Plaintiff was informed that he had failed clinical paperwork. However, Plaintiff had turned in this paperwork at the beginning of the clinical and the procedure was for incorrect paperwork to be given back to the student, review it with them, and remediate it with the student. Additionally, the Plaintiff was informed that Jill Harris had reported him to Weaver, Harris, and Jesse with unfounded allegations of failing to submit several weeks' worth of clinical paperwork on time and further accused the Plaintiff of copying and pasting the clinical documentation merely because it was typed, notwithstanding that it was composed in the Plaintiff's own words.

35. Moreover, Jill Harris falsely claimed that the Plaintiff had inappropriately accessed patient charts "multiple times" during post-conference sessions, even though it was Harris herself who requested the Plaintiff to retrieve multiple lab results for the patient being discussed for educational purposes, as it noted in other student eyewitness statements as provided in recorded transcribed testimony from EOA investigator transcripts of student interviews.

36. During that meeting, an academic learning contract was prepared for Plaintiff stating generic and erroneous claims that would make non-logical sense to any nursing student such as "do not copy information from the EHR" and "Do not Access the EHR outside of Clinical

EFILED 03/30/24 07:37 AM CASE NO. 24C655 Joseph P. Day, Clerk

Hours."

37.     Plaintiff started the next semester and had a class with Dr. Enstrom, who emailed his accommodation letter on August 21, 2023. This email wrongfully took away Plaintiff's accommodations for his disability by stating that he would be penalized 10 points, instead of 0 for missed classes, despite his reasonable accommodations for his disability.

38.     Plaintiff emailed Catherine Buttery, Assistant Director of Student Access for the Office of Equal Access in order to ensure that he would not be wrongfully penalized for these disability related absences. Ms. Buttery replied that he should not be penalized for those absences.

39.     Later in the semester, after Plaintiff had to miss class due to his disability, he emailed Professor Enstrom regarding his absence and requested makeup work.

40.     Kate Enstrom replied with the makeup work and informed Plaintiff that since he had missed two sessions and one-quarter of a third session that an additional absence would warrant a meeting with the course coordinators to discuss course progression.

41.     Plaintiff responded by email, requesting a meeting with Professor Enstrom and her faculty supervisor.

42.     Only after Plaintiff had made this request was he presented with a learning plan.

43.     On December 4, 2023, Plaintiff was subject to an interim suspension from campus, ostensibly for a mental health assessment as per the University's Wellness Committee policy, without appropriate due process as required under Tennessee law.

44.     Of note, a majority of this investigation focused on the concern that the Plaintiff maintained his concealed carry firearm in his vehicle. The Plaintiff is a concealed handgun carry permit holder. "Persons who carry a handgun pursuant to Tenn. Code Ann. §39-17-1351,

the enhanced handgun carry permit statute, or Tenn. Code Ann. §39-17-1366, the concealed handgun carry permit statute, are specifically excepted from application of the federal Gun-Free School Zones Act." Despite this and in knowing that putting such reasoning in written context would be illegal on Defendants part, Defendant remanded the plaintiff on an interim campus restriction since December 4, 2023 to present without providing reason as to their concern for the Plaintiffs "threat" as defined in the student handbook for justification of a interim campus restriction as it is defined.

45.    It is important to note this was the same focus of the Air Evac investigation, despite the fact that the Plaintiff provided evidence showing that text messages were altered by the Defendant to falsely demonstrate a conversation that was not reflective of the entire narrative. Furthermore, the firearm that was the subject of the conversation was not in the Plaintiffs possession as the Plaintiff was awaiting ATF approval as the firearm was an NFA item. Additionally, the text messaging of a firearm that was not in the Plaintiffs possession, and even if such firearms was in the Plaintiffs possession and the context and content of such communications were, non-threatening, non-harmful, and with no intention to inflict stress or burden to another. Thus, Plaintiff was within his constitutional and with the laws of the State of Tennessee to possess and communicate about such Firearm.

46.    On December 15, 2023, a representative from the School of Nursing, Mary Jesse, notified Plaintiff of a purported infraction for off-site access to patient charts and subsequently altered Plaintiff's academic grades from passing to failing without clear justification.

47.    Subsequently, on December 19, 2023, Plaintiff was dismissed from the School of Nursing, a decision that Plaintiff contends was made without adequate process

EFILED 03/30/24 07:37 AM CASE NO. 24C655 Joseph P. Day, Clerk

and was unjustified.

48.     In an interview with Plaintiff's fellow classmate at the School of Nursing, his classmate informed the investigator that she believed that Plaintiff was being subject to different treatment due to his disability and retaliation based on that disability.

49.     Plaintiff pursued internal university channels to appeal the academic dismissal and the retroactive grade changes, seeking to remedy the alleged wrongful actions.

50.     These appeals were systematically delayed and denied by the Defendant, hindering a timely resolution, and compounding the Plaintiff's distress.

51.     As a result, Plaintiff's anticipated graduation and subsequent entry into the professional job market have been detrimentally impacted.

52.     The Plaintiff's access to patient charts was conducted within the parameters of the Health Insurance Portability and Accountability Act in Tennessee's privacy laws and educational standards, which should negate the basis for dismissal.

53.     Any allegations of unauthorized access must be evaluated under Tennessee's statutes governing computer- related crimes, which would not typically characterize the educational access to patient information as unauthorized.

54.     Tennessee law provides for immunity under certain educational functions, suggesting that the plaintiff's adherence to privacy standards in an educational context should not constitute actionable misconduct.

55.     Tennessee law, particularly under the Tennessee Educational Records Statute (T.C.A. §49-50-801 et seq.), grants certain protections and immunities to educational institutions and their agents when handling educational records in compliance with established privacy standards.  Given this legal framework, the Plaintiff's access to patient charts,

EFILED 03/30/24 07:37 AM CASE NO. 24C655 Joseph P. Day, Clerk

provided it was within the scope of educational purposes and adhered to the confidentiality requirements as outlined in the Tennessee Code and any applicable institutional policies, should not be deemed actionable misconduct. This adherence to statutory privacy standards, in conjunction with the educational immunity provisions, underscores that the Plaintiff's actions, aimed at fulfilling educational objectives, fall within the ambit of legally protected activities under Tennessee Code Annotated §20-12-119.

56. Additionally, of significantly higher concern is the evidence of collusion and cooperation between Air Evac Lifeteam Inc. and Vanderbilt University. This partnership further implicates both entities in actions against the plaintiff, suggesting whistleblower retaliation. This collusion also highlights Vanderbilt University's active participation with Air Evac Lifeteam Inc., further demonstrating the defendants deliberate and intentional efforts to harm and damage the plaintiff as a result of Vanderbilt University is alleged to have accepted a donation from Air Evac Lifeteam Inc. as compensation for assisting in the termination of Lucas and supporting Air Evac Lifeteam Inc.'s efforts to discredit Lucas preemptively against any future defense in litigation.

57. This arrangement also aimed to shield against any claims of wrongful termination. Additionally, Vanderbilt University is accused of not providing legal representation for certain student defendants but exploiting these students in bad faith actions, fulfilling commitments made in exchange for receiving the donation funds.

58. The direct link between the defendants and a federal case involving three students previously unrelated to Air Evac Lifeteam Inc., a subsidiary of Global Medical Response, owned by KKR & Co., establishes a clear legal connection. This association further implicates Vanderbilt University in the retaliatory measures taken by my former employer against me for

Case 3:24-cv-00440    Document 1-2    Filed 04/10/24    Page 13 of 32 PageID #: 236

reporting False Claims Act violations. Vanderbilt University implicated, the involvement of these students in specific activities related to a donation agreement from KKR & Co., evidencing the collaboration among Air Evac Lifeteam Inc., Global Medical Response, and KKR & Co. in providing legal support to the defendants.

59. Financial transactions via the Conway Whelch Foundation, as revealed in their 990 PF filing on October 31, 2023, along with a $1.25 million donation to Vanderbilt on November 17, 2023, highlight this engagement. The reported gross sales of assets totaling $1,349,149.00, as shown in line 6b of the 990-PF filing, indicate a deliberate financial strategy, presumably to facilitate the donation through the sale of assets. This suggests a structured plan to direct funds towards Vanderbilt with the aim of justifying my wrongful termination and expulsion based on unfounded claims.

## COUNT ONE:
## DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

60. Plaintiff incorporates all the foregoing paragraphs above as if fully set forth herein.

61. Mr. Lucas is, and at all times relevant hereto, was a qualified individual with a disability as that term is defined under the ADA, 42 U.S.C. §12102(1), because he suffers from Crohn's disease, which substantially limits one or more of his major life activities, has a record of such disability, and/or was regarded by Defendant as a person with such impairments.

62. At all relevant times, Mr. Lucas was able to be a functional student with a reasonable accommodation for his Crohn's disease.

63. Defendant, by and through its agents, representatives, and employees, intentionally discriminated against Mr. Lucas by subjecting him to adverse actions, including

but not limited to, failing to provide for reasonable accommodations for his disability, which constitutes unlawful disability discrimination against Mr. Lucas in violation of the ADA.

64.     Defendants acted in bad faith, willfully and wantonly disregarded, and/or in reckless disregard of, Mr. Lucas' rights under the ADA.

65.     As a direct and proximate result of Defendants' intentional discrimination, Mr. Lucas has suffered out of pocket losses and has been deprived of his education, including loss of future economic benefits, including income in the form of wages and other benefits, all in an amount to be established at trial.

66.     Defendant's actions have caused and will continue to cause Mr. Lucas to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

67.     Pursuant to the ADA, Mr. Lucas is entitled to damages including lost compensation and lost benefits, compensatory damages, punitive damages, attorney's fees and costs of litigation, and all other relief recoverable under the ADA.

## COUNT TWO: RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

68.     Plaintiff incorporates all of the foregoing paragraphs above as if set forth fully herein.

69.     Mr. Lucas engaged in statutorily protected activity by requesting a reasonable accommodation for his disability and filing complaints with Vanderbilt University when his professors discriminated against him due to his disability and the reasonable accommodations to which he was afforded due to his disability.

70.    Defendant acted in bad faith, willfully and wantonly disregarded Mr. Lucas' rights under the ADA, and acted in reckless disregard for Mr. Lucas' rights under the ADA.

71.    As a result of Defendant's retaliatory conduct, Mr. Lucas has suffered lost future compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation and other indignities.

72.    Pursuant to the ADA, Mr. Lucas is entitled to damages including compensatory damages, punitive damages, his attorney's fees and costs of litigation, and all other relief recoverable under the ADA.

## COUNT THREE: DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF THE TENNESSEE HUMAN RIGHTS ACT

73.    Plaintiff incorporates all the foregoing paragraphs above as if fully set forth herein.

74.    At all relevant times, Mr. Lucas was a qualified individual with a disability as that term is defined under the Tennessee Human Rights Act, because he suffers from Crohn's disease, which substantially limits one or more of his major life activities, has a record of such impairments, and/or was regarded by Defendant as a person with such impairments. T.C.A. §4-21-102.

75.    At all relevant times, Mr. Lucas was able to be a functional student with reasonable accommodations for his disability.

76.    Defendant, by and through its agents, representatives, and employees, intentionally discriminated against Mr. Lucas by subjecting him to adverse actions including but not limited to denying him reasonable accommodations and discriminating against him on

the basis of his disability.

77.    The above-pled discriminatory conduct toward Mr. Lucas constitutes unlawful disability discrimination against him in violation of the Tennessee Human Rights Act.

78.    Defendant acted in bad faith, willfully and wantonly disregarded, and/or in reckless disregard for, Mr. Lucas' rights under the Tennessee Human Rights Act.

79.    As a direct and proximate result of Defendant's intentional discrimination, Mr. Lucas has suffered out of pocket losses, been deprived of prospective economic benefits, including income in the form of wages and other benefits, all in an amount to be established at trial.

80.    Defendant's actions have caused and will continue to cause Mr. Lucas to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

81.    Pursuant to the Tennessee Human Rights Act, Mr. Lucas is entitled to damages including compensatory damages, his attorney's fees and cost of litigation, and all other relief recoverable under the Tennessee Human Rights Act.

## COUNT FOUR: RETALIATION
## IN VIOLATION OF THE TENNESSEE
## HUMAN RIGHTS ACT

82.    Plaintiff incorporates all of the foregoing paragraphs above as if set forth fully herein.

83.    Mr. Lucas engaged in statutorily protected activity by requesting a reasonable accommodation for his disability and filing complaints with Vanderbilt University when his Professors discriminated against him due to his disability and the reasonable accommodations to which he was afforded due to his disability.

84. Defendant acted in bad faith, willfully and wantonly disregarded Mr. Lucas' rights under the Tennessee Human Rights Act, and acted in reckless disregard for Mr. Lucas' rights under the Tennessee Human Rights Act.

85. As a result of Defendant's retaliatory conduct, Mr. Lucas has suffered lost future compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation and other indignities.

86. Pursuant to the ADA, Mr. Lucas is entitled to damages including compensatory damages, punitive damages, his attorney's fees and costs of litigation, and all other relief recoverable under the Tennessee Human Rights Act.

## COUNT FIVE: BREACH OF CONTRACT

87. Plaintiff incorporates and reasserts herein by reference all preceding paragraphs as if fully set forth herein.

88. Plaintiff applied to and enrolled in Defendant Vanderbilt's program and paid tuition in addition to other fees and expenses. Plaintiff did so in reliance on the understanding and expectation that Defendant Vanderbilt would implement and enforce the promises and policies made in it is official publications, including its Mission Statement, the Student Handbook, its policies and procedures, as well as other relevant documents, including those not mentioned in this complaint.

89. A contract implied in fact or in law was formed between Defendant Vanderbilt and the Plaintiff once the Plaintiff applied to and enrolled in the program. Specifically, Defendant Vanderbilt offered Plaintiff the ability to enroll in the university upon the condition that the Plaintiff paid for the necessary tuition and fees.

90.     Once Plaintiff paid for his tuition and fees, Plaintiff accepted Defendant Vanderbilt's offer.  In this contract, Defendant Vanderbilt expects Plaintiff to adhere to all of the policies set forth in the Student Handbook while attending the University.  In return, Defendant Vanderbilt receives the benefit of their policies being met, as well as Plaintiff's financial contribution to the University.  Likewise, Plaintiff expects Vanderbilt to follow the policies and procedures set out in its mission statement, Student Handbook, and other relevant documents.

91.     Moreover, the contract contained an implied covenant of good faith and fair dealing.  Defendant Vanderbilt's Student Handbook for the 2023-2024 school year states that Vanderbilt University is committed to equal access for people with disabilities. In compliance with Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990 (ADA), and the ADA Amendments Act of 2008, Vanderbilt does not exclude otherwise qualified persons with disabilities, solely by reason of the disability, from participating in University programs and activities, nor are persons with disabilities denied the benefits of these programs or subjected to discrimination.

92.     It also states:

Vanderbilt University is committed to encouraging and sustaining a learning and work community that is free from prohibited discrimination, harassment, and retaliation. Vanderbilt University does not discriminate against individuals on the basis of their race, color, national or ethnic origin, religion, sex, sexual orientation, gender identity, gender expression, parental status, age, disability, military service, veteran status, genetic information, or any other classification protected by law in its administration of educational policies, programs, or

EFILED 03/30/24 07:37 AM CASE NO. 24C655 Joseph P. Day, Clerk

activities; admissions policies; scholarship and loan programs; athletic or other University- administered programs; or employment.

93.    Vanderbilt's Student Handbook made specific representations that it would ensure an environment that was free of discrimination on the basis of disability, and free from retaliation against students who made complaints regarding being discriminated against on the basis of disability.

94.    Defendants repeatedly and materially breached their contractual obligations owed to Plaintiff, by failing to prevent his Professors from discriminating against him on the basis of his disability or preventing them from retaliating against him for his disability, use of reasonable accommodations, and complaints that he was being wrongfully discriminated against on the basis of his disability.

95.    As explained above, Vanderbilt failed to prevent Plaintiff from being retaliated against for his use of reasonable accommodations for which he was approved to accommodate his Crohn's disease.

96.    Following Plaintiff's complaints regarding his lack of accommodation, Plaintiff was subject to additional adverse treatment, including being subjected to adverse grading decisions, based on unsubstantiated allegations that he accessed patients' records while not in clinic although he had been requested to do so by his own professor.

97.    Plaintiff was then wrongfully dismissed from the School of Nursing. Furthermore, Plaintiff was denied the ability to redress his retaliation and discrimination as he was refused the remedy of his grades being changed to incomplete from failing as a remedy for

the discrimination and retaliation he experienced from his Professors that caused him to wrongfully receive a failing grade in two of his courses for the Fall 2023 academic semester.

98.     As a direct and foreseeable result of these breaches of contract, the Plaintiff sustained, and will continue to sustain substantial injury, damages, and loss, including but not limited to past and future economic loss, loss of wages, deprivation of due process, loss of future career prospects, severe emotional distress, defamation to his character, and mental anguish.

## COUNT SIX: PROMISSORY ESTOPPEL

99.     The Plaintiff incorporates and reasserts all previous allegations as if copied verbatim herein.

100.    As described above, the anti-discrimination and anti-retaliation policies detailed in the Vanderbilt University Student Handbook constitutes a promise that Defendant Vanderbilt will act in a manner described in the publications. Defendant Vanderbilt should have expected Plaintiff to rely on the policies stated in the handbook when he re-enrolled in Vanderbilt. Plaintiff reasonably expected Defendant Vanderbilt would honor its express and implied promises, including that of fundamental fairness and the implied covenant of good faith and fair dealing.

101.    Injustice can only be avoided by enforcement of Defendant Vanderbilt's representations.

102.    As a direct and foreseeable result of Defendant Vanderbilt's failure to honor its promises, the Plaintiff has suffered severe emotional distress, injury to reputation, past and future economic loss, deprivation of due process, and loss of career prospects.

## COUNT SEVEN: DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE

COPY

## REHABILITATION ACT OF 1973

103.    The Plaintiff incorporates and reasserts all previous allegations as if copied

verbatim herein.

104.    Section 504 of the Rehabilitation Act of 1973 states that "no qualified

individual with a disability in the United States shall be excluded from, denied the benefits

of, or be subjected to discrimination under" any program or activity that either receives

Federal financial assistance.

105.    Upon information and belief, Defendant Vanderbilt receives substantial

monies in federal funding for research and development.

106.    Plaintiff is a qualified individual with a disability under the definition of Section

504 of the Rehabilitation Act of 1973.

107.    Mr. Lucas was a qualified individual with a disability as that term is defined

under the Rehabilitation Act because he suffers from Crohn's disease, which substantially

limits one or more of his major life activities, has a record of such impairments, and/or was

regarded by Defendant as a person with such impairments.

108.    At all relevant times, Mr. Lucas was able to be a functional student with

reasonable accommodations for his disability.

109.    Defendant, by and through its agents, representatives, and employees,

intentionally discriminated against Mr. Lucas by subjecting him to adverse actions including

but not limited to denying him reasonable accommodations and discriminating against him

on the basis of his disability.

110.    The above-pled discriminatory conduct toward Mr. Lucas constitutes unlawful

disability discrimination against him in violation of Section 504 of the Rehabilitation Act.

111.     Defendant acted in bad faith, willfully and wantonly disregarded, and/or in reckless disregard for, Mr. Lucas' rights under Section 504 of the Rehabilitation Act.

112.     As a direct and proximate result of Defendant's intentional discrimination, Mr. Lucas has suffered out of pocket losses, been deprived of prospective economic benefits, including income in the form of wages and other benefits, all in an amount to be established at trial.

113.     Defendant's actions have caused and will continue to cause Mr. Lucas to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

114.     Pursuant to the Rehabilitation Act, Mr. Lucas is entitled to damages including compensatory damages, his attorney's fees and cost of litigation, and all other relief recoverable under the Rehabilitation Act.

## COUNT EIGHT: DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE REHABILITATION ACT OF 1973

115.     Plaintiff incorporates all of the foregoing paragraphs above as if set forth fully herein.

116.     Mr. Lucas engaged in statutorily protected activity by requesting a reasonable accommodation for his disability and filing complaints with Vanderbilt University when his Professors discriminated against him due to his disability and the reasonable accommodations to which he was afforded due to his disability.

117.     Defendant acted in bad faith, willfully and wantonly disregarded Mr. Lucas' rights under Section 504 of the Rehabilitation Act, and acted in reckless disregard for Mr. Lucas' rights under Section 504 of the Rehabilitation Act.

118.     As a result of Defendant's retaliatory conduct, Mr. Lucas has suffered lost future

compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation and other indignities.

119.   Pursuant to Section 504 of the Rehabilitation Act, Mr. Lucas is entitled to damages including compensatory damages, punitive damages, his attorney's fees and costs of litigation, and all other relief recoverable under Section 504 of the Rehabilitation Act.

## COUNT NINE: NEGLIGENCE

120.   The Plaintiff incorporates and reasserts all previous allegations as if copied verbatim herein.

121.   When Defendant Vanderbilt accepted Plaintiff's enrollment as a student, they entered into a duty of care relationship with Plaintiff to conduct themselves in a manner consistent with the Student Handbook and with a non-negligent manner.

122.   Defendant Vanderbilt breached its duty of care toward Plaintiff when it failed to prevent Plaintiff from being discriminated against on the basis of his disability, Crohn's disease, as well as being retaliated against for complaints regarding his Professors failure to reasonably accommodate his disability.

123.   Due to Defendant Vanderbilt's negligent conduct the Plaintiff has suffered severe emotional distress, injury to reputation, past and future economic loss, deprivation of due process, and loss of career prospects.

## COUNT TEN: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

124.   The Plaintiff incorporates and reasserts all previous allegations as if copied verbatim herein.

125.   Defendant Vanderbilt's conduct toward Plaintiff in allowing him to be

EFILED 03/30/24 07:37 AM CASE NO. 24C655 Joseph P. Day, Clerk

discriminated against on the basis of his disability and retaliated against for making complaints regarding his Professors' discrimination against him and retaliation for his complaints regarding their failure to provide reasonable accommodations was so reckless and so outrageous as to not be tolerated by a civilized society.

126. Vanderbilt's conduct has and continues to cause serious mental injury to the Plaintiff and has significantly impaired Plaintiff's daily life.

## COUNT ELEVEN: DECLARATORY RELIEF

127. The Plaintiff incorporates and reasserts all previous allegations as if copied verbatim herein.

128. Section 504 of the Rehabilitation Act of 1973 states that "no qualified individual with a disability in the United States shall be excluded from, denied the benefits of, or be subjected to discrimination under" any program or activity that either receives Federal financial assistance.

129. Upon information and belief, Defendant Vanderbilt receives substantial monies in federal funding for research and development.

130. Plaintiff is a qualified individual with a disability under the definition of Section 504 of the Rehabilitation Act of 1973.

131. Mr. Lucas was a qualified individual with a disability as that term is defined under the Rehabilitation Act because he suffers from Crohn's disease, which substantially limits one or more of his major life activities, has a record of such impairments, and/or was regarded by Defendant as a person with such impairments.

132. At all relevant times, Mr. Lucas was able to be a functional student with reasonable accommodations for his disability.

EFILED 03/30/24 07:37 AM CASE NO. 24C655 Joseph P. Day, Clerk

133.    Defendant, by and through its agents, representatives, and employees, intentionally discriminated against Mr. Lucas by subjecting him to adverse actions including but not limited to denying him reasonable accommodations and discriminating against him on the basis of his disability.

134.    Based on the foregoing, Defendant Vanderbilt has deprived Plaintiff, on the basis of his disability, of his rights to due process and equal protection through the improper administration of Defendant Vanderbilt's anti-discrimination and anti- retaliation policies.

135.    Defendant Vanderbilt has violated Section 504 of the Rehabilitation Act, the Americans with Disabilities Act, and the Tennessee Human Rights Act by failing to provide Plaintiff with protection against discrimination on the basis of disability and failed to prevent his Professors from retaliating against Plaintiff due to his complaints about their failures to accommodate his disability.

136.    Based on the foregoing, Plaintiff's grades were wrongfully changed from passing grades to failing grades and he was wrongfully dismissed from the Master of Nursing Program due to his disability and in relation for his complaint regarding the discrimination that he suffered due to his disability.

137.    Plaintiff therefore requests that the Honorable Court issue: an order directing Defendant to immediately reinstate Plaintiff to the Vanderbilt School of Nursing Master of Nursing Program without prejudice and will all the rights and privileges appertaining thereto; an order mandating Defendant to expunge any academic disciplinary actions from Plaintiff's university records that arose from the alleged incidents leading to Plaintiff's dismissal; and an order requiring Defendant to implement comprehensive training programs for faculty and staff to prevent future incidents of discrimination and to promote awareness of the rights of students with


EFILED 03/30/24 07:37 AM CASE NO. 24C655 Joseph P. Day, Clerk

disabilities.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Ian Hunter Lucas, prays for judgment against Defendant

Vanderbilt University and further respectfully requests this Honor Court to:

1.      Issue a judgment declaring the following:

     a. order directing Defendant to immediately reinstate Plaintiff to the Vanderbilt

         School of Nursing Master of Nursing Program without prejudice and will all the

         rights and privileges be appertaining thereto;

     b. an order mandating Defendant to expunge any academic disciplinary actions

         from Plaintiff's university records that arose from the alleged incidents leading

         to Plaintiff's dismissal; and

     c. an order requiring Defendant to implement comprehensive training programs for

         faculty and staff to prevent future incidents of discrimination and to promote

         awareness of the rights of students with disabilities.

2.      Award Plaintiff Compensatory Damages for the economic losses incurred by

Plaintiff, including but not limited to tuition and fees paid for the period of enrollment during

which Plaintiff suffered discriminatory actions, the cost of academic materials, and living

expenses attributable to the expected duration of Plaintiff's academic program. Additionally,

Plaintiff seeks compensation for non-economic damages, including pain and suffering,

emotional distress, and loss of enjoyment of life, in an amount to be proven at trial, but no less

than $2,000,000.

3.      An award of punitive damages in an amount sufficient to punish Defendants

for their willful, malicious, and intentional conduct and to deter similar conduct in the future,

suggested to be no less than $19,700,000.00 reflecting the egregious nature of Defendants' actions against Plaintiff.

4.      An award of pre-judgment and post-judgment interest on all monetary awards at the maximum legal rate under Tennessee law, from the date of each loss until the date of judgment and continuing thereafter at the legal rate until all sums due to Plaintiff are fully paid.

5.      An award of all costs associated with bringing this action, including but not limited to court costs, expert witness fees, and reasonable attorney's fees, pursuant to Tennessee Code Annotated §20-12-110 and other applicable statutes.

6.      Such other and further relief as the Court deems just and proper, including but not limited to if needed:

     a. An award for the cost of obtaining alternative educational opportunities equivalent to the education Plaintiff would have received at Vanderbilt School of Nursing;

     b. An award for vocational and professional rehabilitation services to ameliorate the impact of the delayed entry into the nursing profession; and

     c. An order for a declaratory judgment that Defendants' actions violated specific rights of Plaintiff under federal and Tennessee law.

     d. Plaintiff to be allowed to walk and participate in Graduation activities and programing

     e. Plaintiff to be included in class composite photo

     f. Order the Defendants release the acceptance letter of Plaintiff into the previously applied for Doctor of Nursing Practice (DNP) + Post Masters

Adult-Gerontology Acute Care Nurse Practitioner (AGACNP) program for the Fall 2024 semester, with an adjusted commencement date set for Fall 2025.

    i. Plaintiff is amendable based on discussion with VUSN to changing the program to either DNP + Post Masters Psychiatric-Mental Health Nurse Practitioner (PMHNP) or DNP + Post Masters Pediatric Nurse Practitioner-Acute Care (PNP-AC) and or Pediatric Primary Care (PNP-PC) or the Family Nurse Practitioner Program (FNP), ensuring Plaintiff's career and educational goals are not derailed by Defendants' actions, and also in respect to plaintiff unaddressed and further harm caused by Defendants inappropriately manipulating the EOA and Title IX process by denying Plaintiff supportive measures and equal access to educational programs as required by law.

b. Plaintiff reserves the right to amend this prayer for relief to conform to the evidence presented at trial.

COPY

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted,

IAN H. LUCAS

Dated: March 30, 2024

Plaintiff Pro Se
221 Charleston Avenue
Pleasant View, TN, 37126
(910) 872-3577 (telephone)
lucasianhunter@outlook.com



## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30 day of March 2024, a true and correct copy of the foregoing Amended Complaint was furnished to the following party via email, which is permissible under TCA §20-1-119(c) concerning electronic service of documents:

Kevin C. Klein
Klein Solomon Mills, PLLC
1322 4th Ave North
Nashville, TN 37208
Phone: (615) 600-4802
kevin.klein@kleinpllc.com


Denmark J. Grant
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
1600 West End Avenue, Suite 2000
Nashville, TN, 37203
Phone: 615.726.5591
dgrant@bakerdonelson.com


I affirm that the method of service used herein is consistent with the provisions of the Tennessee Rules of Civil Procedure for service upon an attorney in a civil case.

Respectfully Submitted,

IAN H. LUCAS

Dated: March 30, 2024

Plaintiff Pro Se
221 Charleston Avenue
Pleasant View, TN, 37126
(910) 872-3577 (telephone)
lucasianhunter@outlook.com

EFILED 03/30/24 07:37 AM CASE NO. 24C655 Joseph P. Day, Clerk