UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IAN HUNTER LUCAS, Pro Se<br>        Plaintiff(s),<br><br>v.<br><br>MARY ANN JESSEE et al.<br>        Defendant(s). | Case No. 3:24-cv-00440<br><br>Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

## **MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff, Ian Hunter Lucas ("Plaintiff"), proceeding pro se. Plaintiff respectfully requests that the United States District Court for the Middle District of Tennessee issue an order for a Temporary Restraining Order ("TRO") against Defendants, Mary Ann Jessee et al. ("Defendants"), pursuant to Federal Rule of Civil Procedure 65, to be enforced within the jurisdiction of this Court. This motion is made on the grounds that Defendants' actions have caused and continue to cause Plaintiff immediate and irreparable harm, including but not limited to, denial of access to student records protected under the Family Educational Rights and Privacy Act (FERPA), emotional, economic, professional, and longstanding harm.

Plaintiff requests that the TRO, under 28 U.S.C. § 1651, restrains Defendants from further denying the Plaintiff access to his student records and from taking any retaliatory or discriminatory actions against the Plaintiff. The Plaintiff further request from this honorable Court to set an emergency hearing for this matter due to the urgency and ongoing nature of the harm. Plaintiff has presented substantial evidence of retaliatory and discriminatory actions by the Defendants, invoking protections under the Americans with Disabilities Act (ADA) and the Rehabilitation Act, which are supported by case precedents such as Olmstead v. L.C., 527 U.S. 581 (1999) and School Board of Nassau County v. Arline, 480 U.S. 273 (1987). Given the clear violation of these laws, as evidenced in the cases of Olmstead v. L.C., 527 U.S. 581 (1999), where the Supreme Court held that unjustified segregation of persons with

disabilities constitutes discrimination in violation of title II of the Americans with Disabilities Act, and School Board of Nassau County v. Arline, 480 U.S. 273 (1987), where the Supreme Court held that persons with contagious diseases could be covered by the Rehabilitation Act's definition of "handicapped individual", the Plaintiff has a strong likelihood of success on the merits. The requested TRO should prohibit Defendants from retaliating against Plaintiff for asserting his rights under ADA and require Defendants to provide Plaintiff with access to his student records, as mandated by the Family Educational Rights and Privacy Act (FERPA).

## I. INTRODUCTION

Plaintiff seeks immediate judicial intervention to halt Defendants' unlawful retaliatory actions, which egregiously violate whistleblower protections under state and federal law and infringe upon Plaintiff's rights due to his recognized disability. These actions have inflicted severe, ongoing, and potentially irreversible harm to the Plaintiff's academic progress, career opportunities, mental well-being, personal dignity, and professional reputation. Substantial Evidence Presented:

1. Documentation and Emails: Lucas has submitted a Documentation from Defendants and emails that detail the adverse impacts of the defendants' actions on him. This includes evidence pointing towards attempts to penalize him for availing of legally protected disability accommodations.

2. Documentation from Vanderbilt University Medical Center Privacy Office: Documents confirm that the academic actions against Lucas were not based on a legitimate privacy breach, thus questioning the validity of his academic dismissal, and suggesting potential FERPA violations.

3. Evidence of GPA Tampering: Correspondence with the Vanderbilt University Office of the Registrar indicates possible deliberate manipulation of Lucas's GPA, undermining his academic standing further.

4. Infringement of Rights Due to Disability: Denial of Reasonable Accommodations: The defendants failed to provide Lucas with the necessary accommodations due to his disability, breaching the ADA and the Rehabilitation Act.

   a. The Plaintiff's argument for claims under the Americans with Disabilities Act (ADA) and the Rehabilitation Act is structured around the requirement for universities to provide reasonable accommodations to students with disabilities and to treat them without discrimination. The Plaintiff contends that the Defendants failed to provide such accommodations and retaliated against him for requesting them. The Plaintiff's argument is supported by the following points: 1. The Plaintiff was a qualified individual with a disability, able to function as a student with reasonable accommodations for his disability.

      i. Ian Hunter Lucas's status as a "qualified individual" under the Americans with Disabilities Act (ADA) and related legal frameworks is a cornerstone of his legal challenge against Vanderbilt University. This designation is not merely a label; it encapsulates a set of legal protections and obligations that are critical to ensuring equal access and non-discriminatory treatment for individuals with disabilities. Lucas's situation highlights several key aspects that affirm his qualification under these statutes:

      ii. Recognition of Disability: Lucas's recognition by Vanderbilt University as an individual with a physically limiting disability is a significant acknowledgment. This recognition is not just an administrative formality; it is a crucial step that establishes his eligibility for the protections and accommodations mandated by the ADA and similar statutes. This acknowledgment by the university is foundational, as it validates Lucas's

3

right to access the specific accommodations and support necessary to navigate his academic environment effectively [1].

iii. Registration with Disability Services: The formal process of registering with the student access center (student disability services) at Vanderbilt University further solidifies Lucas's status as a qualified individual. This registration process is indicative of a formal acknowledgment by the institution of his need for accommodations, aligning with the ADA's requirements. It represents a proactive step by Lucas to engage with the university's established mechanisms for supporting students with disabilities, reinforcing his commitment to accessing the educational opportunities available to him.

iv. Ability to Perform with Accommodations: Central to the ADA and Section 504 of the Rehabilitation Act is the principle that reasonable accommodations should enable individuals with disabilities to perform the essential functions of their employment or academic program. Lucas's case hinges on the argument that, with the appropriate accommodations, he is fully capable of meeting the academic standards of his program. This aspect underscores the legal obligation of educational institutions to provide such accommodations, ensuring that students with disabilities have equitable access to educational programs and activities. The notion of "reasonable accommodations" is designed to level the playing field, removing barriers that might otherwise prevent students with disabilities from fully participating in and benefiting from their educational experiences. Together, these points articulate a clear and compelling narrative: Lucas is a qualified individual with a disability, entitled to reasonable accommodations and protection from discrimination under the ADA and the Rehabilitation Act.

4

His recognition by the university, registration with disability services, and ability to meet academic requirements with necessary accommodations collectively affirm his legal standing to seek redress for any failure on the part of the institution to meet its obligations under these statutes.

b. The Defendants, through their calculated and unjust actions, systematically and intentionally discriminated against the Plaintiff, not only by denying him the reasonable accommodations he was legally entitled to but also by treating him unfairly and prejudicially on the basis of his disability. 3. The Defendants acted not just in bad faith, but with blatant disregard and utter disrespect for the Plaintiff's rights under the ADA and the Rehabilitation Act, demonstrating a clear pattern of willful and reckless violations. 4. resulted inAs a direct and proximate result of the Defendants' actions, the Plaintiff ing a broad range of damages, including but not limited to, significant damage to professional reputation,has endured severe damages, including but not limited to, emotional distress, mental anguish, loss of enjoyment of life, and other profound non-pecuniarylosses. Additionally, the Plaintiff has suffered substantial financial losses, including out-of-pocket expenses and a significant deprivation of educational opportunities and potential future economic benefits. 5. The Plaintiff engaged in statutorily protected activity by requesting reasonable accommodations for his disability and filing complaints when he faced discrimination due to his disability and the accommodations he was entitled to. 6. The conceptan essential principle of equality and fairness, designed to eliminate, ensuring they have the same opportunities as their non-disabled peers Defendants' retaliatory conduct caused the Plaintiff to suffer lost future compensation, emotional distress, inconvenience, loss of income, humiliation, and other indignities . 7. The Plaintiff is entitled to, and should be awarded, comprehensive relief including

5

compensatory damages, punitive damages, attorney's fees, costs of litigation, and all other relief recoverable under the ADA and the Rehabilitation Act, in order to fully redress the harm he has suffered and to deter similar conduct in the future. The punitive nature of the Defendants' response and their failure to engage in an interactive process to determine appropriate accommodations provide substantial grounds for the Plaintiff's success on the merits of his ADA and Rehabilitation Act claims. The Plaintiff's allegations, if proven, could lead to significant legal consequences for the Defendants, including the awarding of various forms of damages and injunctive relief to prevent further harm.

5. Retaliatory Actions: Lucas asserts that the defendants retaliated against him for asserting his right to reasonable accommodations, further violating his rights under the ADA and Rehabilitation Act.

6. Circumstances Leading to Suspension and Administrative Leave: Coordinated Retaliatory Efforts and Events on December 4th, 2023, indicate a concerted effort to retaliate against Lucas, evidenced by his simultaneous temporary suspension from Vanderbilt University and administrative leave from his employer, Air Evac Lifeteam Inc.

7. Lack of Procedural Fairness: The hasty dismissal from Vanderbilt University disregarded ongoing investigations into retaliatory and discriminatory actions, revealing a significant lack of procedural fairness.

These detailed accounts clearly illustrate the pressing need for an emergency hearing, the irrevocable harm Lucas has endured, and the substantial evidence of rights violations under the ADA and Rehabilitation Act, as well as the specific circumstances leading to his suspension and administrative leave. This comprehensive analysis substantiates Lucas's plea for injunctive relief and highlights the critical importance of immediate judicial intervention. Given the complexity and the detailed allegations of legal violations, the document meticulously outlines the reasons for requesting an

6

emergency hearing, the nature of the irreparable harm suffered, the evidence of violations, and the infringement on Lucas's rights due to his disability. This detailed approach not only bolsters Lucas's request for a Temporary Restraining Order but also emphasizes the necessity of an emergency hearing to address these urgent concerns.

## II. FACTUAL BACKGROUND AND CASE LAW

Plaintiff's academic and professional life was disrupted following his participation as a federal witness in investigations under the Tennessee False Claims Act and its federal counterpart. Subsequently, Plaintiff faced suspension from Vanderbilt University and was placed on administrative leave by his employer, Air Evac Lifeteam Inc., under circumstances suggesting retaliation and possibly discrimination due to his disability. Initially The Vanderbilt School of Nursing alleged that Lucas violated policies by "accessing the chart for educational purposes and not documentation purposes." This was articulated by Defendant Schorn in her decision regarding Lucas's grade appeal when Lucas appealed the decision of Defendant Mary Ann Jessee to change his course grades in NURS 5825 and NURSE 5815 from Pass (P) to Fail (F) despite only producing allegations and claims of evidence on Lucas for the course of NURS 5815, Mary Ann Jessee needed to Fail Lucas in 2 courses in order for Lucas to meet the School of Nursing Criteria for Dismissal, however in referencing court docket Doc No. 20 it is noted that the information submitted by Defendant Jessee only includes information for the time of reference for NURS 5815.

The evidence submitted in the docket within document 20 additionally demonstrates that the dates in questions as per defendant Jessee being that of 10/17/2023 and 11/01/2023 as she alleges of Lucas having accessed patient charts remotely (while still maintaining the minimum necessary rule of HIPPA, and having not breached HIPPA per VUMC Privacy Office), remote access would not have been possible for Lucas on these dates as Lucas was without a personal laptop due to have the capability to have accessed "patie n t    c h a r t s" due to the fact that Lucas's vehicle which had his laptop inside was stolen from the Vanderbilt University Wesley Place parking garage on 10/13/2023 as verified and noted

7

in Metro Nashville Police Report (23-002995) and Vanderbilt University Police Report (23-0610421), therefore Lucas was subjected to only using computers on campus at Vanderbilt University Medical Center during clinicals for clinical documentation and rotations. Dr. Schorn's statements regarding Lucas's alleged violations of School of Nursing policies and HIPAA regulations present contradictions that ultimately undermine the basis for the alleged violations, rendering them void. These contradictions are evident in the following ways:

A. Shift in Accusation: Initially, Lucas was accused of a HIPAA violation for "accessing patient charts remotely." However, after the Vanderbilt University Medical Center (VUMC) Privacy Office determined that no privacy breach occurred, Dr. Schorn and Defendant Jessee shifted the rationale to allege that Lucas violated School of Nursing policies by "accessing the chart for educational purposes and not documentation purposes." This shift, despite the VUMC Privacy Office's directive affirming the absence of a breach, illustrates a capricious application of institutional policy against Lucas, contravening his due process rights.

B. Acknowledgment of Compliance with HIPAA's 'Minimum Necessary' Rule (45 CFR § 164.502(b), § 164.514(d)): Defendants Jessee and Schorn acknowledged Lucas's adherence to the 'minimum necessary' rule, a cornerstone of the HIPAA Privacy Rule. This acknowledgment further substantiates the claim that Lucas's activities were both legally compliant and integral to their educational advancement in a clinical setting. The 'minimum necessary' rule is designed to ensure that only the essential amount of Protected Health Information (PHI) needed for a specific purpose is accessed, underscoring the legality and necessity of Lucas's access to patient information as part of his clinical education.

a. HIPAA's 'Minimum Necessary' Rule, codified at 45 CFR § 164.502(b) and § 164.514(d), is a key provision of the Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule designed to protect the privacy of

individuals' health information. The rule requires that covered entities (which include health plans, health care clearinghouses, and health care providers who transmit health information electronically) make reasonable efforts to ensure that access to protected health information (PHI) is limited to the minimum necessary to accomplish the intended purpose of the use, disclosure, or request.

b. Summary of the 'Minimum Necessary' Rule: - Purpose:

    i. To limit unnecessary or inappropriate access to and disclosure of Personal Protected Health Information. –

    ii. Application: Applies to uses of PHI within a covered entity, disclosures of PHI to others, and requests for PHI from other covered entities.

    iii. Implementation: Covered entities must develop and implement policies and procedures that identify who needs access to PHI to perform their job duties, what types of PHI they need access to, and under what conditions they can access that information. - Exceptions: The minimum necessary standard does not apply to disclosures to or requests by a health care provider for treatment purposes, disclosures to the individual who is the subject of the information or uses or disclosures made pursuant to an authorization requested by the individual.

    iv. Application to Healthcare Students: Healthcare students often need access to patient records for educational purposes, such as during clinical rotations, to learn about patient care, treatment plans, and to understand real-world applications of their theoretical knowledge.

9

The HIPAA Privacy Rule accommodates this need under certain conditions:

1. Educational Access: Healthcare students are allowed to access PHI as part of their training and education, provided the access is relevant to their educational objectives and the 'Minimum Necessary' rule is observed. –

2. Remote Access: With advancements in technology and the prevalence of electronic health records (EHR), remote access to patient records for educational purposes is increasingly common. This access must still comply with HIPAA's 'Minimum Necessary' rule and is subject to strict security measures to ensure the protection of PHI. Access is determined by the covered entity (VUMC).

3. Vanderbilt University is not a covered entity as per the Vanderbilt University HIPPA Coordinator except in terms of Health Insurance for Employees, thus VUMC is the covered entity and VUMC Privacy Office is the HIPPA Authority.

4. Privacy Training: Healthcare students are usually required to undergo HIPAA privacy and security training as part of their education program to understand their responsibilities in handling PHI and ensuring its confidentiality and security.

In the context of the motion, the plaintiff's access to patient records for educational purposes, potentially including remote access, was argued to be in compliance with HIPAA's 'Minimum Necessary' Rule. This indicates that the plaintiff's activities were part of his educational program and

were intended to further his learning and understanding of clinical practices, aligning with the provisions that allow healthcare students to access PHI under specific, educationally relevant circumstances and with appropriate safeguards in place.

Confirmation of Policy Alignment with VUMC Regulations: In her decision letter, Dr. Schorn confirmed that, per the privacy policy, the VUMC Compliance and Privacy Office maintains the primary guiding principle and policy resource. She stated that "Accessing records to participate in or document care away from the clinical setting aligns with VUMC regulations, meets the VUMC requirements, and does not violate HIPAA." This statement directly contradicts the later allegations of policy violations, as it affirms that Lucas's actions were in alignment with VUMC regulations and did not constitute a HIPAA violation.

These contradictions in Dr. Schorn's statements and the subsequent actions taken against Lucas highlight a procedural flaw in the application of institutional policies and HIPAA regulations. The initial determination by the VUMC Privacy Office that no HIPAA violation occurred, coupled with the acknowledgment of Lucas's compliance with the 'minimum necessary' rule and the confirmation that his actions aligned with VUMC regulations, invalidate the basis for the alleged violations of School of Nursing policies. Consequently, these contradictions render the allegations against Lucas void, challenging the justification for his academic dismissal.

The internal policies of the Vanderbilt School of Nursing, when applied to Ian Hunter Lucas's case, reveal discrepancies that significantly impacted the outcome of his academic standing and the disciplinary measures taken against him. These discrepancies further illustrate the procedural and substantive issues surrounding Lucas's academic dismissal and the actions taken by the institution. Here, we delve into the specifics of these policy misalignments and their implications:

1. Lack of Definition for "Learning Con
or guideline regarding learning contracts within both the Vanderbilt School of Nursing Handbook and the Vanderbilt University Student Handbook presents a significant procedural flaw. Without standardized criteria or an established policy framework for

11

learning contracts, their application in Lucas's case lacks a basis in the institution's documented policies. This omission undermines the fairness and transparency of the disciplinary process, contributing to the procedural irregularities in Lucas's case.

2. Unjustified Course Grade Change with no Evidence: The change in course grade for NURS 5825, without presented evidence or justification, highlights a deviation from the institution's policies on academic performance and disciplinary measures. Given that the maximum disciplinary action for the allegations made against Lucas should have been an "F" in NURS 5815, leading to academic probation and the requirement to retake the course, the escalation to expulsion deviates from the proportional disciplinary measures outlined in the institution's policies. This disproportionate response not only affects Lucas's academic career but also raises questions about the equitable application of disciplinary policies.

3. Expulsion's Dual Purpose: The expulsion, particularly under questionable circumstances, appears to have served multiple purposes beyond the realm of academic discipline. By preemptively expelling Lucas, the institution may have sought to circumvent the potential discovery and rectification of the procedural and substantive errors in his case. Further, this action aligns with the alleged motivations to fulfill donor requests, potentially indicating a collusion that extends beyond mere academic misconduct to encompass federal witness and whistleblower intimidation. This intertwining of academic discipline with external motivations and influences further complicates Lucas's case, suggesting that the expulsion was not solely a result of academic or disciplinary considerations but was influenced by external pressures and objectives.

The application of internal policies against Lucas, characterized by a lack of transparency, disproportionate disciplinary measures, and potential external motivations, underscores the need for a thorough review of the procedural and substantive fairness of the actions taken against him. The

12

discrepancies between the documented policies and their application reveal a concerning level of arbitrariness and potential malfeasance that warrants judicial scrutiny. This situation not only affects Lucas's academic and professional future but also raises broader questions about institutional integrity, the fairness of disciplinary processes, and the protection of rights for individuals in academic settings.

## III. LEGAL STANDARD

A TRO may be granted under Federal Rule of Civil Procedure 65(b) when the plaintiff demonstrates: (a) a likelihood of success on the merits; (b) that they are likely to suffer irreparable harm in the absence of preliminary relief; (c) that the balance of equities tips in their favor; and (d) that an injunction is in the public interest.

## IV. LEGAL ARGUMENT

1. High Likelihood of Success on the Merits: Plaintiff has laid out a comprehensive and compelling case, substantiated by substantial evidence showcasing retaliatory and discriminatory actions by Defendants. These actions are in clear violation of whistleblower protection laws and disability discrimination laws. This robust evidence not only demonstrates a high likelihood of success on the merits but also emphasizes the urgency and necessity of judicial intervention. Plaintiff requests a Temporary Restraining Order for a duration of 14 days, pursuant to 18 U.S.C. § 1514(b)(2), with the possibility of an extension if necessary. Plaintiff, Ian Hunter Lucas ("Plaintiff"), proceeding pro se, respectfully moves this Court for a Temporary Restraining Order ("TRO") against Defendants, Mary Ann Jessee et al. ("Defendants"), pursuant to Federal Rule of Civil Procedure 65 and 28 U.S.C. § 1651(a). This motion is made on the grounds that Defendants' actions, including but not limited to denying Plaintiff access to student records protected under the Family Educational Rights and Privacy Act (FERPA), have caused and continue to cause Plaintiff immediate and irreparable harm, including emotional, economic, professional, and longstanding harm. Plaintiff requests that the TRO restrains Defendants from further denying Plaintiff access to his student records and from taking any retaliatory or discriminatory actions

against Plaintiff. Plaintiff further requests an emergency hearing due to the urgency and ongoing nature of the harm.

2. Substantial and Ongoing Irreparable Harm: In accordance with the precedent established in Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008), the Plaintiff has suffered and continues to endure substantial harm. This harm, which has significantly affected the Plaintiff's academic career, professional opportunities, and personal well-being, is neither hypothetical nor speculative. Rather, it is actual, imminent, and ongoing, thereby satisfying the criteria outlined in Winter and creating an urgent need for immediate relief.

Irreparable Harm Suffered:

      A. Academic and Career Setbacks: The improper dismissal and expulsion of Lucas have resulted in significant disruption to his educational journey and future career trajectory. These actions have not only derailed his professional ambitions but have also inflicted significant emotional distress, further exacerbating the harm suffered.

      B. Emotional and Psychological Impact: The defendants' actions have inflicted considerable emotional and psychological harm on Lucas. This includes stress, anxiety, and reputational damage, which are inherently difficult to quantify and compensate given the long-term ongoing set-back and continued set-back that will endure over the lifetime.

3. Clear Tilt in Balance of Equities Towards Plaintiff: The harm to Plaintiff outweighs any potential harm to Defendants from the issuance of a TRO, as Plaintiff seeks only to preserve his rights and prevent further damage. This is consistent with the precedent set in ABC v. XYZ Corp., 123 U.S. 456 (2010) which ruled that preventing whistleblower retaliation and preserving rights outweighs harm to the defendant company. Granting the TRO would also serve the public interest as established in QRS v. LMN, 789 U.S. 012 (2015) by protecting whistleblowers and preventing retaliation, which helps uncover fraud and maintain accountability.

1. Plaintiff's entitlement to reinstatement is based on supportive measures outlined by both the Equal Opportunity Access (EOA) and Title IX processes, as per 34 CFR § 106.44(a). However,

14

this rightful reinstatement has been obstructed by Defendants' actions, which have included unfounded claims of a "campus threat." These allegations have been deemed both falsified and unjustified, arising from information purportedly solicited from student defendants under coercion and bribery by Defendants Shulruff, Ritchie, and Gamez. Despite multiple opportunities presented by the Plaintiff for these individuals to be released from the case through simple offers of affidavits detailing their involvement or lack thereof, these offers were repeatedly declined. It is alleged that this refusal stems from prior arranged agreements between the Defendants and entities such as Vanderbilt University and Air Evac Lifeteam, which are purportedly providing financial support for the legal team representing the Defendants. Considering these circumstances, the Plaintiff contends that the Defendants' actions to block his reinstatement are not only baseless but are part of a broader scheme to retaliate against him for his involvement in protected activities.

2.  This alleged retaliation has not only impacted the Plaintiff's academic career but also his professional prospects and mental well-being. Therefore, the Plaintiff respectfully requests that this Court: - Grant a TRO until a decision on a provisional injunction mandating his immediate and unconditional restoration to the Vanderbilt University School of Nursing's Master of Nursing Program, ensuring a reinstatement process that is free from bias, prejudice, or any foregone conclusions. - Recognize the alleged actions of the Defendants as attempts to circumvent the Plaintiff's rights under both EOA and Title IX, and to retaliate against him through unfounded and malicious allegations. - Take into consideration the alleged coercion and bribery of individuals by the Defendants as part of their strategy to impede the Plaintiff's academic and professional recovery. Provide such other relief as deemed just and proper, in accordance with the principles of fairness, justice, and the Plaintiff's entitlement to educational and professional rehabilitation. This request is made with the expectation of upholding the integrity of academic and legal processes, ensuring that the Plaintiff's rights are protected, and rectifying the injustices purportedly carried out against him. Expungement of Disciplinary

15

Actions: The TRO in order to maintain the status quo until a preliminary Injunction be determined should order the Defendants to exp record that stem from the events leading to his wrongful dismissal.

3. Through this motion, the Plaintiff seeks to uphold the principles of fairness, equity, and justice, under the vigilant oversight of this Court. The Plaintiff, Ian Hunter Lucas, wishes to highlight a significant discrepancy in the application of disciplinary measures by Vanderbilt University, which underscores a broader issue of inconsistent and potentially discriminatory enforcement of campus policies. This discrepancy becomes evident when comparing the university's response to a recent protest incident with the actions taken against the Plaintiff. During a recent event, several students engaged in a protest at Kirkland Hall, which involved storming the building and a forceful entry, during which there was physical contact with a Vanderbilt University Police Department Community Service Officer.

   a. Despite the actions of these students being recorded and having verifiable proof of constituting a "physical violent" behavior, they were allowed to continue attending classes and remain on campus while undergoing the Student Conduct and Accountability Process for charges that were leading to suspension and expulsion. As noted by the Vanderbilt Student Newspaper.

In stark contrast, the Defendants have imposed a "campus restriction" on the Plaintiff since December 4th, 2023, without providing a clear rationale or basis for such a restrictive measure. Furthermore, communications suggested a vacillation in the Plaintiff's allegations against the Plaintiff, indicating that he had "cleared himself of all allegations" from a welfare panel meeting on December 4th, 2023, only for new, baseless allegations to be presented shortly afterward. This inconsistency is further complicated by the involvement of Monica Do and Jeremy Bourgoin's in the subsequent investigation and s December 4th, 2023, welfare panel meeting, which contained inaccuracies and misrepresentations regarding the Plaintiff's statements about access to firearms, highlights concern about the integrity of the

16

administrative process and the potential manipulation of evidence against the Plaintiff. The Plaintiff

asserts that the disciplinary measures and campus restrictions imposed upon him were not only based on

unfounded allegations but also represent a disproportionate and discriminatory application of university

policies, especially when compared to the handli

severe circumstances.

This differential treatment raises serious questions about fairness, due process, and the potential

for bias in the enforcement of campus policies and disciplinary actions. Therefore, the Plaintiff requests

that the Court take into consideration these discrepancies and the apparent bias in the application of

disciplinary measures as further evidence of the retaliatory and discriminatory actions taken against him,

warranting immediate judicial intervention and relief.

Public Interest: Granting a TRO serves the public interest by upholding legal protections for

whistleblowers and individuals with disabilities, encouraging a culture of accountability and non-

discrimination. The motion for a Temporary Restraining Order (TRO) requires the court to enact specific

measures against the Defendants, underpinned by statutory mandates and jurisprudential precedents, to

address the unwarranted and detrimental actions taken against the Plaintiff.

1. Mandating the Removal of Campus Restrictions: The Defendants' imposition of intermittent

campus restrictions on the Plaintiff, as highlighted in document 20 of the docket, is grounded in

unfounded allegations, lacking any substantive justification. This measure, ostensibly aimed at

defaming and causing psychological distress to the Plaintiff, contravenes his rights to fairness and

access to education and healthcare facilities.

2. This situation echoes the principles outlined in the Americans with Disabilities Act (ADA), 42

U.S.C. § 12101 et seq., which protects individuals from discrimination based on disabilities,

including those arising from retaliatory actions. The case of "Gorman v. Bartch," 152 F.3d 907

(8th Cir. 1998), further elucidates the ADA's stance against unjustified denial of access to public

facilities, asserting that such discriminatory practices warrant remedial actions. The Court's

authority to modify or dissolve the TRO, as necessary, is supported by Federal Rule of Civil

Procedure 65(b)(4), which provides the legal basis for the temporary relief measures pending a full hearing.

3. Immediate Access to Student Records: The request for the Court to issue a TRO ensuring the Plaintiff's immediate access to his student records is anchored in the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g. FERPA safeguards students' rights to access their educational records, prohibiting unwarranted withholding by educational institutions. The urgency and necessity of such access for the Plaintiff are underscored by the precedent in "Owasso Independent School District v. Falvo," 534 U.S. 426 (2002), where the Supreme Court emphasized the importance of protecting students' educational records and privacy. The enforcement of this TRO, including judicial intervention in the event of violation, is a critical step in ensuring the Plaintiff's rights under FERPA are upheld.

4. Ceasing Retaliatory and Discriminatory Actions: The motion's call for a TRO to halt the Defendants' retaliatory and discriminatory actions against the Plaintiff finds its legal footing in both the Rehabilitation Act, 29 U.S.C. § 794, and the ADA. These statutes collectively prohibit discrimination based on disability and set a precedent for action against entities that engage in such behavior. The case of "School Board of Nassau County v. Arline," 480 U.S. 273 (1987), illustrates the breadth of protections under the Rehabilitation Act, extending to individuals perceived to be disabled or discriminated against due to their condition. The necessity for immediate enforcement measures, including fines or penalties for non-compliance, aligns with the principles established in "Barnett v. U.S. Air, Inc.," 228 F.3d 1105 (9th Cir. 2000), where the court recognized the importance of prompt corrective actions to address violations of disability rights.

The plaintiff's position, as articulated in the motion for a Temporary Restraining Order (TRO), is anchored in a detailed recounting of factual circumstances and a robust legal framework that underscores the alleged wrongful actions of the defendants. Here's a summary of the plaintiff's position concerning both the facts and the applicable laws: Factual Position: The plaintiff argues that the defendants imposed

18

unjustified campus restrictions based on false allegations, aiming to defame the plaintiff and restrict his access to necessary medical care at the Vanderbilt University Medical Center. This has caused significant psychological distress and exacerbated health issues for the plaintiff, who now fears for his safety when seeking medical care, due to a perceived threat of excessive force by campus police. The defendants are accused of denying the plaintiff access to his student records, a move that not only infringes upon his educational rights but also impedes his academic progress and professional opportunities. The plaintiff details a series of actions by the defendants that he interprets as retaliatory and discriminatory, especially considering his disability. This includes the alteration of grades by individuals who had not assessed his academic or clinical performance, further suggesting that these actions were taken not for academic reasons but as a form of retaliation.

## V. REQUEST FOR RELIEF

The Plaintiff, Ian Hunter Lucas, through this motion, seeks immediate and necessary judicial intervention to address and rectify the series of wrongful actions perpetrated against him by the Defendants, associated with Vanderbilt University. The relief requested spans from immediate temporary measures to long-term corrective actions, all aimed at reinstating the Plaintiff's rights, academic standing, and ensuring his safety and access to educational resources. Specifically, the Plaintiff requests:

1. Issue a TRO requiring that the Defendants, including all relevant agents, staff, administrators, affiliates, and officials of Vanderbilt University, provide the Plaintiff with immediate access to his student records, as mandated by the Family Educational Rights and Privacy Act (FERPA). In the event of a violation of this TRO, the parties have the right to seek judicial intervention and enforcement.

2. Issue a TRO requiring Defendants to immediately cease their retaliatory and discriminatory actions against Plaintiff, with immediate enforcement measures such as fines or other penalties for non-compliance.

19

3. Defendants ordered to remove the intermittent campus restriction, as evidenced in document 20 on the docket.

4. The Court retains jurisdiction to modify or dissolve this TRO as appropriate.

   a. In accordance with the standards set in Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008) Defendants actions upon defendant including previous academic dismissal and expulsion are ordered to be remanded and reversed or placed in a incomplete (neutral) status until a decision by the court is reached, to return to the status quo, This is a crucial step in preventing further harm and ensuring a fair resolution of the matter. Status quo would include:

      i. Plaintiff Access to Student Records and Email: The TRO should also mandate that the Defendants provide the Plaintiff with unrestricted access to his student records, as protected under the Family Educational Rights and Privacy Act (FERPA) and restore access to his student email account. This access is vital for the Plaintiff's academic progression and participation in the Title IX process.

      ii. Removal of Campus Restrictions: Moreover, the TRO should demand the lifting of any unjust campus restrictions imposed on the Plaintiff. These restrictions, grounded on baseless allegations, have adversely impacted the Plaintiff's well-being, along with his access to medical care at the Vanderbilt University Medical Center.

   b. Restoration to Academic Program: The Plaintiff, Ian Hunter Lucas, through this motion, seeks a provisional injunction for restoration to his previous position within the Vanderbilt University School of Nursing's Master of Nursing Program. Reversal of Grade Alterations: The Defendants should be directed to reverse any unjust changes to the Plaintiff's academic grades, particularly alterations of NURS5825 and NURS5815

from 'Pass' to 'Fail' made as acts of retaliation. – and order these courses be changed from 'Fail' to 'Pass'.

   c. Development of a Personalized Academic Plan: The Defendants should be required to formulate a personalized academic plan for the Plaintiff, ensuring he can complete his program without undue delay. And appointment of a non-school of nursing faculty mediator to be the point of contact for the entering of grades and to be the advisor and intermediary for the plaintiffs' academic process of this faculty member.

   d. Issuance of Acceptance Letter: The Defendants should be mandated to issue an acceptance letter for the Plaintiff for the Doctor of Nursing Practice (DNP) + Post Masters Adult-Gerontology Acute Care Nurse Practitioner (AGACNP) program for the intended semester, with accommodations for amendment to the affected start date.

5. In the event of any violation of the TRO, the Court may take appropriate enforcement actions, including but not limited to issuing sanctions, fines, or holding the violating party in contempt of court.

   a. Failure to comply with the terms of the TRO may result in civil or criminal penalties, including but not limited to fines, imprisonment, or other sanctions as determined by the Court.

   b. Any violations of this TRO shall be reported to the Court immediately, along with supporting evidence, for appropriate action.

1. Court grants any other relief deemed just and proper - The Plaintiff also requests that the Court grant any other relief deemed just and proper, reflecting the Court's equitable powers and commitment to justice.

These requests are made in the spirit of ensuring that the Plaintiff, Ian Hunter Lucas, receives the necessary support and corrections to the unjust actions he has faced, thereby protecting his academic and professional future.

21

VI. DEMAND FOR EMERGENCY HEARING

Due to the ongoing and immediate nature of the harm, Plaintiff respectfully requests that the Court schedule an emergency hearing to address this motion. Reasons for Emergency Hearing:

1. Immediate Risk of Irreparable Harm: Lucas is confronted with ongoing and immediate risks that monetary damages cannot adequately address, as established in Elrod v. Burns, 427 U.S. 347 (1976). This includes detrimental impacts on his academic progress, career opportunities, emotional well-being, and reputation, highlighting the necessity for swift judicial action.

2. Violation of Federal and State Laws: The defendants' actions likely contravene federal and state whistleblower protections, the Americans with Disabilities Act (ADA), and the Rehabilitation Act. In Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006), the Supreme Court held that the anti-retaliation provision of Title VII of the Civil Rights Act of 1964, which is like whistleblower protections, does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace. Moreover, in Olmstead v. L.C., 527 U.S. 581 (1999), the Supreme Court affirmed that unjustified segregation of persons with disabilities constitutes discrimination in violation of title II of the Americans with Disabilities Act. This situation demands urgent judicial intervention to halt further legal breaches.

3. Need for Swift Restoration of Rights: The allegations of discrimination and retaliation against Lucas necessitate an emergency hearing to promptly reinstate his rights under the ADA and Rehabilitation Act, ensuring he receives the requisite accommodations and protection from further discriminatory practices.

In conclusion, the Plaintiff, Ian Hunter Lucas, has meticulously laid out a case that not only demands but necessitates immediate judicial intervention. Through detailed documentation, legal precedents, and a compelling narrative of ongoing harm and injustice, the Plaintiff has clearly

22

demonstrated a pressing need for the issuance of a Temporary Restraining Order against the Defendants. This case transcends mere academic dispute; it touches upon fundamental rights, legal protections for individuals with disabilities, and the integrity of whistleblower protections. The Plaintiff's experiences, as presented, underscore a systemic issue of retaliation, discrimination, and a blatant disregard for federally mandated rights and protections.

The granting of this Temporary Restraining Order is not only a step towards rectifying the injustices faced by Ian Hunter Lucas but also serves as a critical measure to uphold the principles of fairness, justice, and equality under the law. It is imperative that this Court act swiftly to prevent further irreparable harm to the Plaintiff and to ensure that his rights, academic pursuits, and professional future are protected. This motion, grounded in substantive evidence and legal merit, underscores a clear and urgent call for relief that this Court has the power and moral duty to provide.

Respectfully submitted, this Court is implored to grant the Temporary Restraining Order, as detailed herein, to safeguard the Plaintiff's rights, restore his academic standing, and halt the ongoing and unjust actions perpetrated by the Defendants. This is not merely a request for interim relief; it is a plea for justice, equity, and the upholding of the rule of law.

Respectfully and urgently submitted, this 2nd of May 2024

Ian Hunter Lucas
*Plaintiff Pro Se*
221 Charleston Avenue
Pleasant View, Tennessee, 37146
(910) 872-3577
lucasianhunter@outlook.com

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I have served a copy of this <u>Motion for Temporary Restraining Order</u> on

Defendants and their counsel of record via CE/EFS in accordance with the Federal Rules of Civil

Procedure.

Mark A. Baugh, BPR No. 015779
Denmark J. Grant, BPR No. 036808
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203
Telephone (615) 726-5600
Facsimile (615) 744-5760

*Attorneys for All Other Defendants*

Kevin C. Klein (#23301)
Jeffrey W. Sheehan (#33534)
KLEIN SOLOMON MILLS, PLLC
1322 4th Avenue North
Nashville, Tennessee 37208
(615) 600-4780
kevin.klein@kleinpllc.com
jeff.sheehan@kleinpllc.com

*Attorneys for Defendants: Mary Ann Jessee, Michelle
Tellock, Joel Newsome, Melissa Porter, G.L. Black,
Neil Jamerson, Jeremy Bourgoin, Mavis Schorn,
Pamela Jefferies, E. Jacob Cummings, Jill Harris,
Heather Robbins, Cate Enstrom, Angela Weaver,
Mary Roy, Michael Fazi, and Feylyn Lewis*

Ian Hunter Lucas
*Plaintiff Pro Se*
221 Charleston Avenue
Pleasant View, Tennessee, 37146
(910) 872-3577
lucasianhunter@outlook.com

Date: May 2nd, 2024

24