UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |
|---|---|
| IAN HUNTER LUCAS, Pro Se<br>Plaintiff(s),<br><br>v.<br><br>MARY ANN JESSEE et al.<br>Defendant(s). | Case No. 3:24-cv-00440<br><br>Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

## MOTION FOR EMERGENCY TEMPORARY RESTRAINING ORDER

### I.        Introduction

Plaintiff, Ian Hunter Lucas ("Plaintiff"), proceeding pro se, respectfully urges that the United States District Court for the Middle District of Tennessee issue an urgent order for a Temporary Restraining Order ("TRO") against Defendants, Mary Ann Jessee et al. ("Defendants"), under Federal Rule of Civil Procedure 65, to be executed within the jurisdiction of this Court. This motion is made on the grounds that Defendants' actions have caused and continue to cause Plaintiff immediate and irreparable harm, including but not limited to, denial of access to student records protected under the Family Educational Rights and Privacy Act (FERPA), emotional, economic, professional, and longstanding harm.

Plaintiff insists that the TRO, under 28 U.S.C. § 1651, compels Defendants to instantaneously grant the Plaintiff access to his student records and halt any acts of retaliation or discrimination against the Plaintiff. The Plaintiff further requests from this honorable Court to set an emergency hearing for this matter due to the urgency and ongoing nature of the harm. Plaintiff has presented substantial evidence of retaliatory and discriminatory actions by the Defendants, invoking protections under the Americans with Disabilities Act (ADA) and the Rehabilitation Act,

which are supported by case precedents such as Olmstead v. L.C., 527 U.S. 581 (1999) and School Board of Nassau County v. Arline, 480 U.S. 273 (1987). Given the clear violation of these laws, as evidenced in the cases of Olmstead v. L.C., 527 U.S. 581 (1999), where the Supreme Court held that unjustified segregation of persons with disabilities constitutes discrimination in violation of title II of the Americans with Disabilities Act, and School Board of Nassau County v. Arline, 480 U.S. 273 (1987), where the Supreme Court held that persons with contagious diseases could be covered by the Rehabilitation Act's definition of "handicapped individual", the Plaintiff has a strong likelihood of success on the merits. The requested TRO should prohibit Defendants from retaliating against Plaintiff for asserting his rights under ADA and require Defendants to provide Plaintiff with access to his student records, as mandated by the Family Educational Rights and Privacy Act (FERPA).

## II.        Factual Background and Case Law

The Plaintiff, Ian Hunter Lucas, Pro Se, alleges significant disruptions to his academic and professional life following his participation as a federal witness in investigations under the Tennessee False Claims Act and its federal counterpart. These disruptions include suspension from Vanderbilt University and placement on administrative leave by his employer, Air Evac Lifeteam Inc., under circumstances that suggest retaliation and possibly discrimination due to his disability. Initially, the Vanderbilt School of Nursing made an unproven allegation that Lucas violated policies by "accessing the chart for educational purposes and not documentation purposes." This allegation, put forth by Defendant Schorn during Lucas's grade appeal, was proposed following Defendant Mary Ann Jessee's uncorroborated alteration of Lucas's course grades in NURS 5825 and NURSE 5815 from Pass (P) to Fail (F). Jessee's actions unjustly required Lucas to fail in two

courses to satisfy the School of Nursing's criteria for dismissal, despite only presenting allegations and proof against Lucas for a single course, NURS 5815.

The evidence submitted in court docket Doc No. 20 demonstrates contradictions in the allegations against Lucas, particularly regarding his ability to access patient charts remotely on specified dates. These dates, as alleged by Defendant Jessee, are impossible for Lucas to have accessed remotely due to the theft of his laptop. This theft is verified by Metro Nashville Police Report (23-002995) and Vanderbilt University Police Report (23-0610421), indicating Lucas could only use campus computers at Vanderbilt University Medical Center during clinicals for clinical documentation and rotations.

Dr. Schorn's statements and the subsequent actions taken against Lucas highlight procedural flaws and contradictions in the application of institutional policies and HIPAA regulations. These contradictions include a shift in accusation from a HIPAA violation to a violation of School of Nursing policies, despite an initial determination by the VUMC Privacy Office that no HIPAA violation occurred. The acknowledgment of Lucas's compliance with the 'minimum necessary' rule of HIPAA and the confirmation that his actions aligned with VUMC regulations invalidate the basis for the alleged violations of School of Nursing policies, rendering the allegations against Plaintiff void, and challenging the justification for his academic dismissal.

The internal policies of the Vanderbilt School of Nursing, when applied to Lucas's case, reveal discrepancies that significantly impacted the outcome of his academic standing and the disciplinary measures taken against him. These discrepancies illustrate procedural and substantive issues surrounding Plaintiffs academic dismissal and the actions taken by the institution, including a lack of definition for "Learning Contracts", an unjustified course grade change without evidence,

3

and the expulsion's dual purpose that suggests motivations beyond academic discipline, potentially indicating collusion that extends to federal witness and whistleblower intimidation.

These issues underscore the need for a thorough review of the procedural and substantive fairness of the actions taken against Lucas, raising broader questions about institutional integrity, the fairness of disciplinary processes, and the protection of rights for individuals in academic settings.

### III.      Legal Standard

The issuance of a TRO within the jurisdiction of this court is regulated by Federal Rule of Civil Procedure 65(b). For a successful TRO application, the Plaintiff, Ian Hunter Lucas, Pro Se, is required to establish the following:

1. A likelihood of success on the merits of the case.

2. That they are likely to suffer irreparable harm in the absence of preliminary relief.

3. That the balance of equities tips in their favor; and

4. That an injunction is in the public interest.

This legal standard is applicable in actions where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party can be heard in opposition. The court may issue such orders without written or oral notice to the adverse party or their attorney if the plaintiff certifies in writing any efforts made to give notice and the reasons why it should not be required.

### IV.      Legal Argument

The Plaintiff, Ian Hunter Lucas, Pro Se., has laid out a comprehensive and compelling case, substantiated by substantial evidence, showcasing retaliatory and discriminatory actions by the

4

Defendants, Mary Ann Jessee et al. These actions are in clear violation of whistleblower protection laws and disability discrimination laws. The Plaintiff argues that the issuance of a Temporary Restraining Order (TRO) is both necessary and justified to prevent further irreparable harm that could result from the Defendants' ongoing violations. The Plaintiff further contends that these actions not only breach the laws but also violate the principles of the Health Insurance Portability and Accountability Act (HIPAA), thereby exacerbating the Plaintiff's vulnerability and the urgency for court intervention.

## V.    Request for Relief

The Plaintiff, Ian Hunter Lucas, through this motion, seeks immediate and necessary judicial intervention to address and rectify the series of wrongful actions perpetrated against him by the Defendants, associated with Vanderbilt University. The relief requested spans from immediate temporary measures to long-term corrective actions, all aimed at reinstaining the Plaintiff's rights, academic standing, and ensuring his safety and access to educational resources. Specifically, the Plaintiff requests:

1. Issue a TRO dictating that the Defendants, encompassing all pertinent agents, staff, administrators, affiliates, and officials of Vanderbilt University, furnish the Plaintiff with unhindered access to his student records, as stipulated by the Family Educational Rights and Privacy Act (FERPA). In the occurrence of any violation of this TRO, the parties reserve the right to solicit judicial intervention and enforcement.

2. Issue a TRO compelling Defendants to immediately cease their retaliatory and discriminatory actions against Plaintiff, with immediate enforcement measures such as fines, penalties, or other suitable sanctions for non-compliance.

5

3. Defendants ordered to remove the intermittent campus restriction, as evidenced in document 20 on the docket.

4. The Court retains jurisdiction to modify or dissolve this TRO as appropriate. In accordance with the standards set in Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008) Defendants actions upon defendant including previous academic dismissal and expulsion are ordered to be remanded and reversed or placed in a incomplete (neutral) status until a decision by the court is reached, to return to the status quo. This is a crucial step in preventing further harm and ensuring a fair resolution of the matter. Status quo would include:

   o Plaintiff Access to Student Records and Email: The TRO should also mandate that the Defendants provide the Plaintiff with unrestricted access to his student records, as protected under the Family Educational Rights and Privacy Act (FERPA) and restore access to his student email account. This access is vital for the Plaintiff's academic progression and participation in the Title IX process.

   o Removal of Campus Restrictions: Moreover, the TRO should demand the lifting of any unjust campus restrictions imposed on the Plaintiff. These restrictions, grounded on baseless allegations, have adversely impacted the Plaintiff's well-being, along with his access to medical care at the Vanderbilt University Medical Center.

5. Restoration to Academic Program: The Plaintiff, Ian Hunter Lucas, through this motion, seeks an immediate and mandatory injunction for restoration to his previous academic position within the Vanderbilt University School of Nursing's Master of Nursing Program. Reversal of Grade Alterations: The Defendants must be mandated to reverse all

unjust changes to the Plaintiff's academic grades, particularly alterations of NURS5825 and NURS5815 from 'Pass' to 'Fail' made as acts of retaliation. – and order these courses be changed from 'Fail' to 'Pass.''

6. Development of a Personalized Academic Plan: The Defendants should be required to formulate a personalized academic plan for the Plaintiff, ensuring he can complete his program without undue delay. And appointment of a non-school of nursing faculty mediator to be the point of contact for the entering of grades and to be the advisor and intermediary for the plaintiffs' academic matters. Plaintiff will have a significant say in the selection process of this faculty member.

7. Issuance of Acceptance Letter: The Defendants should be mandated to issue an acceptance letter for the Plaintiff for the Doctor of Nursing Practice (DNP) + Post Masters Adult-Gerontology Acute Care Nurse Practitioner (AGACNP) program for the intended semester, with accommodations for amendment to the affected start date.

8. In the event of any violation of the TRO, the Court may take appropriate enforcement actions, including but not limited to issuing sanctions, fines, or holding the violating party in contempt of court. Failure to comply with the terms of the TRO may result in civil or criminal penalties, including but not limited to fines, imprisonment, or other sanctions as determined by the Court. Any violations of this TRO shall be reported to the Court immediately, along with supporting evidence, for appropriate action.

9. Court grants any other relief deemed just and proper - The Plaintiff also requests that the Court grant any other relief deemed just and proper, reflecting the Court's equitable powers and commitment to justice.

These requests are made in the spirit of ensuring that the Plaintiff, Ian Hunter Lucas, receives the necessary support and corrections to the unjust actions he has faced, thereby protecting his academic and professional future.

## VI.        Request for Emergency Hearing

Due to the ongoing and immediate nature of the harm, Plaintiff respectfully requests that the Court schedule an emergency hearing to address this motion. Reasons for Emergency Hearing:

1. Immediate Risk of Irreparable Harm: Lucas is confronted with ongoing and immediate risks that monetary damages cannot adequately address, as established in *Elrod v. Burns*, 427 U.S. 347 (1976). This includes detrimental impacts on his academic progress, career opportunities, emotional well-being, and reputation, highlighting the necessity for swift judicial action.

2. Violation of Federal and State Laws: The defendants' actions likely contravene federal and state whistleblower protections, the Americans with Disabilities Act (ADA), and the Rehabilitation Act. In *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), the Supreme Court held that the anti-retaliation provision of Title VII of the Civil Rights Act of 1964, which is like whistleblower protections, does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace. Moreover, in *Olmstead v. L.C.*, 527 U.S. 581 (1999), the Supreme Court affirmed that unjustified segregation of persons with disabilities constitutes discrimination in violation of title II of the Americans with Disabilities Act. This situation demands urgent judicial intervention to halt further legal breaches.

3. Need for Swift Restoration of Rights: The allegations of discrimination and retaliation against Lucas necessitate an emergency hearing to promptly reinstate his rights under the

8

ADA and Rehabilitation Act, ensuring he receives the requisite accommodations and protection from further discriminatory practices.

In conclusion, the Plaintiff, Ian Hunter Lucas, has meticulously laid out a case that not only demands but necessitates immediate judicial intervention. Through detailed documentation, legal precedents, and a compelling narrative of ongoing harm and injustice, the Plaintiff has clearly demonstrated a pressing need for the issuance of a Temporary Restraining Order against the Defendants. This case transcends mere academic dispute; it touches upon fundamental rights, legal protections for individuals with disabilities, and the integrity of whistleblower protections. The Plaintiff's experiences, as presented, underscore a systemic issue of retaliation, discrimination, and a blatant disregard for federally mandated rights and protections.

## VII.        Conclusion

The granting of this Temporary Restraining Order (TRO) is not only a step towards rectifying the injustices faced by Ian Hunter Lucas but also serves as a critical measure to uphold the principles of fairness, justice, and equality under the law. It is imperative that this Court act swiftly to prevent further irreparable harm to the Plaintiff and to ensure that his rights, academic pursuits, and professional future are protected. This motion, grounded in substantive evidence and legal merit, underscores a clear and urgent call for relief that this Court has the power and moral duty to provide.

Respectfully submitted, this Court is implored to grant the Temporary Restraining Order, as detailed herein, to safeguard the Plaintiff's rights, restore his academic standing, and halt the ongoing and unjust actions perpetrated by the Defendants. This is not merely a request for interim relief; it is a plea for justice, equity, and the upholding of the rule of law.

9

Demanding immediate attention and action, this urgent plea is submitted to the Court on this.
7th of May 2024.

_____

Ian Hunter Lucas
*Plaintiff Pro Se*
221 Charleston Avenue
Pleasant View, TN, 37126
(Mobile) 910-872-3577
lucasianhunter@outlook.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I have served a copy of this <u>Motion for Temporary Restraining Order</u> on

Defendants and their counsel of record via CE/EFS in accordance with the Federal Rules of Civil

Procedure.

Mark A. Baugh, BPR No. 015779
Denmark J. Grant, BPR No. 036808
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203
Telephone (615) 726-5600
Facsimile (615) 744-5760

*Attorneys for All Other Defendants*

Kevin C. Klein (#23301)
Jeffrey W. Sheehan (#33534)
KLEIN SOLOMON MILLS, PLLC
1322 4th Avenue North
Nashville, Tennessee 37208
(615) 600-4780
kevin.klein@kleinpllc.com
jeff.sheehan@kleinpllc.com

*Attorneys for Defendants: Mary Ann Jessee, Michelle
Tellock, Joel Newsome, Melissa Porter, G.L. Black,
Neil Jamerson, Jeremy Bourgoin, Mavis Schorn,
Pamela Jefferies, E. Jacob Cummings, Jill Harris,
Heather Robbins, Cate Enstrom, Angela Weaver,
Mary Roy, Michael Fazi, and Feylyn Lewis*

Ian Hunter Lucas
*Plaintiff Pro Se*
221 Charleston Avenue
Pleasant View, Tennessee, 37146
(910) 872-3577
lucasianhunter@outlook.com

Date: May 7th, 2024

11