IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| IAN LUCAS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:24-cv-00440 |
| | ) | |
| v. | ) | Judge Waverly Crenshaw |
| | ) | |
| MARY ANN JESSEE et al., | ) | Magistrate Judge Newbern |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION
### FOR TEMPORARY RESTRAINING ORDER

Plaintiff Ian Lucas, a former student at Vanderbilt University School of Nursing, has asserted a host of claims against 20 Vanderbilt faculty members, staff members, and students. On April 15, 2024, Plaintiff filed a motion for preliminary injunction (Doc. Nos. 8), but, after the Court declined to seal that motion (Doc. No. 14), withdrew and filed a second motion for preliminary injunction on April 25 (Doc. No. 16). Plaintiff then filed a motion for temporary restraining order on May 2 (Doc. No. 21), only to move to withdraw that motion on May 7 (Doc. No. 25), filing a second motion for temporary restraining order later that same day (Doc. No. 26).

Plaintiff's most recent motion for temporary restraining order requests that the Court "prohibit Defendants from retaliating against Plaintiff for asserting his rights under [the] ADA and require Defendants to provide Plaintiff with access to his student records, as mandated by the Family Educational Rights and Privacy Act (FERPA)." (Doc. No. 26 at 2.) Plaintiff's motion, however, fails on multiple fronts. First, the relief requested is wholly unworkable, ranging from "ceas[ing] retaliatory and discriminatory actions against Plaintiff, with immediate enforcement measures such as fines, penalties, or other suitable sanctions for non compliance" to "restoration to his previous academic position" to "appointment of a

non school of nursing faculty mediator . . . ." (*Id.* at 5-7.) On this basis alone, the Court should deny Plaintiff's motion.

Substantively, Plaintiff's motion fails because he cannot establish a likelihood of success on the merits: (1) Title III of the Americans with Disabilities Act does not provide for individual liability, and Plaintiff has only sued individuals; and (2) FERPA does not provide a private right of action. Beyond that, as set forth below, Vanderbilt, in fact, provided Plaintiff with access to his student records and otherwise acted lawfully and appropriately.

In short, Plaintiff's motion for a temporary restraining order fails for multiple reasons:

- **Plaintiff's motion is procedurally deficient.** The relief requested is unworkable and insufficiently specific.

- **Plaintiff cannot show a likelihood of success on the merits.** Title III of the ADA does not provide for individual liability; FERPA does not provide a private right of action; and Vanderbilt, in fact, provided Plaintiff access to his student records and has otherwise acted lawfully and appropriately. Moreover, while Plaintiff appears to request various forms of relief from Vanderbilt, he has not sued Vanderbilt.

- **Plaintiff cannot show the threat of irreparable harm.** Plaintiff has offered no basis for turning Vanderbilt's academic progression requirements on their head so he can have extraordinary relief on an expedited basis.

- **The balance of harms favors Defendants.** Vanderbilt has the right and duty to make decisions regarding its student body. That is what it did here. The Court should defer to the considered judgment of the educational professionals who concluded that Plaintiff should be dismissed from Vanderbilt's nursing program.

For these reasons, and as discussed in more detail below, Defendants respectfully request that the Court deny Plaintiff's request for extraordinary relief.

## FACTUAL BACKGROUND

### I. The Parties.

Plaintiff is a former student at Vanderbilt's School of Nursing. He began at the School of Nursing in January 2023. On December 4, 2023, Plaintiff was subject to an interim suspension from campus for a mental health assessment pursuant to the University's Welfare Panel policy. (Doc. No. 1, Ex. B ¶ 49.) On December 19, 2023, Plaintiff was dismissed

from the School of Nursing.[1] (*Id.* ¶ 60.) Plaintiff appealed that decision, and his appeal is currently before the Office of the Provost, consistent with Vanderbilt's student complaint and grievance policy.

In addition, on March 4, 2024, Plaintiff was informed he had been expelled from Vanderbilt for policy violations. (Doc. No. 1, Ex. B ¶ 71.) Plaintiff also appealed this decision, and the university's Appellate Review Board dismissed his appeal on March 27, 2024, at which point his expulsion became final.

Vanderbilt University, founded in 1873, is a world class private research institution in Nashville, Tennessee. Plaintiff names 20 Defendants in his March 20, 2024, Amended Complaint. Those 20 Defendants are faculty members, staff members, and students at Vanderbilt. Faculty and staff members named as Defendants include Mary Ann Jessee, Michelle Tellock, Joel Newsome, Melissa Porter, G.L. Black, Neil Jamerson, Jeremy Bourgoin, Mavis Schorn, Pamela Jefferies, E. Jacob Cummings, Jill Harris, Heather Robbins, Cate Enstrom, Angela Weaver, Mary Roy, Michael Fazi, and Feylyn Lewis. (Doc. No. 1, Ex. B.) Students named as Defendants are Clairise Gamez, Crystal Ritchie, and Marissa Shulruff. (*Id.*)

## II. Plaintiff's FERPA Requests.

Vanderbilt's Office of the University Registrar ("Registrar's Office") maintains student academic records. (Quinet Declaration ¶ 3[2].) Bart P. Quinet serves as the University Registrar. (*Id.* ¶ 2.) In that capacity, Mr. Quinet serves as Vanderbilt's FERPA Officer, coordinating requests for student education records made pursuant to FERPA. (*Id.* ¶ 4-5.)

---

[1] On December 19, 2024**,** Mavis Schorn, Professor and Senior Associate Dean for Academics, sent Plaintiff a letter explaining the Master of Nursing Student Admissions and Academic Progression Committee's decision. That letter is being filed separately under seal.

[2] Mr. Quinet's Declaration is submitted contemporaneously herewith.

On March 6, 2024, Plaintiff made the following FERPA request to the Registrar's Office: "I, demand the immediate release of all my student records held by Vanderbilt University. This encompasses disciplinary, admissions, academic records, and all documents, recordings, or materials used in any action against me during my tenure as a student, including [Vanderbilt University Police Department ('VUPD')] records unrelated to criminal investigations." (Quinet Declaration ¶ 6.) The Registrar's Office assisted with coordinating Plaintiff's review of the records responsive to his March 6, 2024, request, including his admissions, academic, and disciplinary records. (*Id.* ¶ 7.)

The records responsive to Plaintiff's request for "materials used in any action against me during my tenure as a student" included all materials used by the Vanderbilt School of Nursing in its determination to academically dismiss him from the program and all materials used by the Vanderbilt Student Accountability Office in its determination to expel him from Vanderbilt. (Quinet Declaration ¶ 8.) To the extent any VUPD records were used in either Plaintiff's academic dismissal or expulsion proceedings, those records were provided for Plaintiff's review. Video recordings of Plaintiff's meetings with the Student Accountability Office were also provided for Plaintiff's review. (*Id.* ¶ 9-10.)

Vanderbilt's Senior Associate University Registrar Molly Thompson contacted Plaintiff on April 12, 2024, to schedule a two-hour session for Plaintiff to review the responsive records. (Quinet Declaration ¶ 11.) Ms. Thompson met with Plaintiff virtually on April 18, 2024, to allow him to review these records. Plaintiff did not utilize the full two hours allotted for his records review. (*Id.* 12-13.)

After his April 18, 2024, meeting with Ms. Thompson, Plaintiff made a second request to the Registrar's Office, seeking to review "Transcripts from Student Conduct and Accountability Hearings" and "Detailed Records of Anonymous Complaints and Student

Interviews" from VUPD. (Quinet Declaration ¶ 14.) Plaintiff also requested additional time to review the records he had already reviewed. (*Id.* at 15.)

On April 29, 2024, Ms. Thompson responded to Plaintiff's second FERPA request, informing Plaintiff that the Student Accountability Office does not transcribe its meetings, and that any additional VUPD records pertaining to Plaintiff that were not used in his academic dismissal or expulsion proceedings are law enforcement records rather than education records, and therefore, are not subject to FERPA. (Quinet Declaration ¶ 16.) Ms. Thompson also informed Plaintiff that the Registrar's Office was declining to schedule a second meeting for him to review the first set of records, since he did not use the full two hours allotted the first time around. (*Id.* at ¶ 17.)

In the accompanying Declaration, Vanderbilt Registrar Bart Quinet attests that Vanderbilt's response to Plaintiff's FERPA requests complied with his understanding of and experience with FERPA. (Quinet Declaration ¶ 18.)

## PROCEDURAL POSTURE

Plaintiff filed a 12-page, 172-paragraph Complaint on March 17, 2024. (Doc. No. 4.) Plaintiff filed a 31-page, 137-paragraph Amended Complaint on March 30, 2024. (Doc. No. 1, Ex. B.) Plaintiff's March 30, 2024, Amended Complaint asserts 11 causes of action against 20 individual defendants.

On March 31, 2024, Plaintiff filed a 59-page, 209-paragraph document also entitled "Amended Complaint," but purporting to add 22 defendants. (Doc. No. 1, Ex. D at 2-60.) Plaintiff's March 31, 2024, Amended Complaint asserts 15 causes of action against 42 defendants.[3]

---

[3] Plaintiff contends that the March 31, 2024, Amended Complaint is the operative complaint. Defendants contend that the March 31, 2024, Amended Complaint is an improperly filed second amended complaint, filed without Defendants' consent or leave of court. Regardless,

On April 10, 2024, Defendants removed this case to this Court. (Doc. No. 1.) On April 15, 2024, Plaintiff moved for a preliminary injunction (Doc. No. 8), simultaneously requesting "an order to seal the records" in this case, including the motion for preliminary injunction. (Doc. No. 6.) On April 25, 2024, the Court denied Plaintiff's motion to seal, stating that Plaintiff "may move to withdraw his motion for a preliminary injunction by May 1, 2024," and "[i]f he does not do so, the Clerk's Office is DIRECTED to unseal the motion on that date." (Doc. No. 14 at 3.)

Later that day, Plaintiff moved to withdraw his motion for preliminary injunction (Doc. No. 15) and then filed another motion for preliminary injunction "urgently beseech[ing] the equitable auspices of this tribunal to enact an abrupt cessation to the wrongful and calculated reprisals undertaken by the Defendants . . . ." (Doc. No. 16 at 1.)

One week later, on May 2, 2024, Plaintiff filed a motion for temporary restraining order. (Doc. No. 21.) Five days later, on May 7, 2024, Plaintiff filed a motion to withdraw his temporary restraining order (Doc. No. 25), and then refiled a second motion for temporary restraining order later that same day (Doc. No. 26).

## STANDARD FOR GRANTING INJUNCTIVE RELIEF

Under Fed. R. Civ. P. 65(b), "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

*Id.*

---

Plaintiff has yet to serve the 22 new defendants in the March 31, 2024, Amended Complaint. Defendants are preparing a motion to determine the operative complaint.

"The same standard generally applies to the issuance of temporary restraining orders and preliminary injunctions." *Tolson v. Washburn*, No. 3:19-CV-00175, 2019 WL 1572931, at *6 (M.D. Tenn. Apr. 10, 2019) (citing *Ne. Ohio Coal. for Homeless & Serv. Emps Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)). "Generally, the plaintiff bears the burden of establishing his entitlement to a preliminary injunction [or temporary restraining order]." *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009).

"In evaluating a request for a preliminary injunction [or temporary restraining order], a district court should consider: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without a[n injunction]; (3) whether issuance of a[n injunction] would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a[n injunction]." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) (citations omitted). "[T]he four considerations applicable to preliminary injunctions [or temporary restraining orders] are factors to be balanced and not prerequisites that must be satisfied." *In re Eagle–Picher Indus., Inc.,* 963 F.2d 855, 859 (6th Cir. 1992). "These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *Id.*

Here, the relevant factors weigh against granting injunctive relief.

## LEGAL ANALYSIS

In his Motion, Plaintiff states: "The requested TRO should prohibit Defendants from retaliating against Plaintiff for asserting his rights under [the] ADA and require Defendants to provide Plaintiff with access to his student records, as mandated by the Family Educational Rights and Privacy Act (FERPA)." (Doc. No. 26 at 2.) Whether analyzed under FERPA, the ADA, or both, Plaintiff's claims are meritless, and his motion fails to justify the extraordinary relief requested.

## I. Plaintiff's Motion Fails Procedurally.

A temporary restraining order is an "extraordinary remedy," *Hacker v. Fed. Bureau of Prisons*, 450 F. Supp. 2d 705, 710 (E.D. Mich. 2006), and the movant must establish that "the circumstances clearly demand it," *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted). "TRO motions are subject to several procedural requirements under Rule 65(b) of the Federal Rules of Civil Procedure and Rule 65.01 of this Court's Local Rules." *Taylor v. Iadicicco*, No. 1:24-CV-00004, 2024 WL 766048, at *2 (M.D. Tenn. Jan. 29, 2024).

The Court recently concluded that a pro se plaintiff's motion for a temporary restraining order was procedurally deficient where the "Plaintiff did not submit the proposed order required by Local Rule 65.01(b), and his TRO Motions fail to specify the relief he seeks with any particularity beyond the prevention of 'further retaliatory actions, unjustifiable harassment, threats and[/]or unreasonable transfer in retaliation.'" *Taylor*, 2024 WL 766048, at *2. As the court explained, "[t]hese terms are too subjective to sustain any viable injunctive order." *Id.*

Here, Plaintiff filed a proposed order with his second motion for temporary restraining order, but the relief requested is wholly unworkable, ranging from "ceas[ing] retaliatory and discriminatory actions against Plaintiff, with immediate enforcement measures such as fines, penalties, or other suitable sanctions for non compliance" to "restoration to his previous academic position" to "appointment of a non school of nursing faculty mediator . . . ." (*Id.* at 5-7.) As in *Taylor*, "[t]hese terms are too subjective to sustain any viable injunctive order." 2024 WL 766048, at *2.

**II.	Defendants Have a High Probability of Success on the Merits.**

"In order to establish a likelihood of success on the merits of a claim, a plaintiff must show more than a mere possibility of success." *Six Clinics Holding Corp. II v. CAFCOMP Sys.*, 119 F.3d 393, 402 (6th Cir. 1997). Here, the individual Defendants, not Plaintiff, have a high probability of success on the merits.

### A.	*Plaintiff's Motion Fails Because FERPA Does Not Provide a Private Right of Action and, Even if it Did, Plaintiff Was Granted Appropriate Access to His Student Records.*

Plaintiff's principal request appears to be that the Court require Vanderbilt to provide further access to his student records under FERPA. Specifically, Plaintiff states: "This motion is made on the grounds that Defendants' actions have caused and continue to cause Plaintiff immediate and irreparable harm, including but not limited to, denial of access to student records protected under the Family Educational Rights and Privacy Act (FERPA), emotional, economic, professional, and longstanding harm." (Doc. No. 26 at 1.)

As an initial matter, Vanderbilt is not a Defendant. Therefore, any request that the Court order Vanderbilt to take or not take certain action is a non sequitur. Beyond that, "there is no private right of action under the FERPA." *Bevington v. Ohio Univ.*, 93 F. App'x 748, 750 (6th Cir. 2004) *(*quoting *Gonzaga Univ. v. Doe,* 536 U.S. 273, 287, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002); *United States v. Miami Univ.,* 294 F.3d 797, 809 n. 11 (6th Cir. 2002)). Thus, even if Vanderbilt were a Defendant, FERPA provides no legal basis for Plaintiff's request.

Substantively, Vanderbilt, in fact, provided Plaintiff with access to his student records in accordance with FERPA. As explained in the accompanying Declaration of Vanderbilt Registrar Brad Quinet, Vanderbilt provided Plaintiff with access to his admissions, academic, and disciplinary records. (Quinet Declaration ¶ 7.) Plaintiff was permitted two hours to review these records, and he did not utilize the full two hours. (Quinet Declaration ¶ 11-13.)

Plaintiff then made a second FERPA request to the Registrar's Office, seeking to review "Transcripts from Student Conduct and Accountability Hearings" and "Detailed Records of Anonymous Complaints and Student Interviews" from the Vanderbilt University Police Department ("VUPD"). (Quinet Declaration ¶ 14.) But the Student Accountability Office does not transcribe its meetings, and any additional VUPD records pertaining to Plaintiff that were not used in his academic dismissal or expulsion proceedings are law enforcement records, rather than education records. (*Id.* ¶ 16.) Finally, Vanderbilt declined Plaintiff's request for additional time to review the records he had already reviewed because he did not use the full time allotted during the first meeting. (*Id.* at 15-17.)

As stated in the accompanying Declaration, Vanderbilt's response to Plaintiff's FERPA requests complied with Mr. Quinet's understanding of and experience with FERPA. (Quinet Declaration ¶ 18.) Thus, in addition to invoking a statute that does not provide a private right of action, Plaintiff's request is substantively unfounded because Vanderbilt, in fact, permitted Plaintiff to review his student records.

### B. *Plaintiff's ADA Claim Fails Because the ADA Does Not Establish Individual Liability and, Even if it Did, the Vanderbilt Defendants Acted Lawfully and Appropriately.*

Plaintiff also argues that "[t]he requested TRO should prohibit Defendants from retaliating against Plaintiff for asserting his rights under [the] ADA . . . ." (Doc. No. 21 at 2.) "Since Vanderbilt is a private institution, the claim falls under Title III of the ADA rather than Title II." *Michael Deangelo v. The Vanderbilt University*, No. 17-CV-153, 2019 WL 13490435, at *5 (M.D. Tenn. Aug. 28, 2019), *aff'd sub nom. DeAngelo v. Vanderbilt Univ.*, 821 F. App'x 471 (6th Cir. 2020).

Title III of the ADA states:

> [n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). But "[i]ndividual officers of institutions that operate public accommodations are not individually liable as 'operators' under Title III of the ADA." *Lasko v. Mobile Hyperbaric Centers, LLC*, No. 1:19-CV-542, 2021 WL 733768, at *29 (N.D. Ohio Feb. 25, 2021). Rather, "Title III of the ADA applies to a private entity that owns, leases, or operates a place of public accommodation . . . ." *Abeyta v. StoneCrest Med. Ctr.*, No. 3:18-CV-00386, 2020 WL 3716121, at *5 (M.D. Tenn. June 9, 2020), report and recommendation adopted, No. 3:18-CV-00386, 2020 WL 3642486 (M.D. Tenn. July 6, 2020). It is "not applicable to individuals." *Id.* (citing 42 U.S.C. § 12181(7)(F); 29 U.S.C. § 794).

As discussed above, Plaintiff has sued 20 individual Defendants. But Plaintiff cannot maintain a Title III claim against individual Defendants. *See Emerson v. Thiel Coll.,* 296 F.3d 184, 189 (3d Cir. 2002) (holding that individual officers and faculty members of a university could not be held liable under Title III of the ADA). Thus, Plaintiff's ADA claim stumbles from the gate.

Moreover, Plaintiff's claim fails substantively. To establish that an individual was dismissed from an academic program in violation of the ADA or Rehabilitation Act, a plaintiff must show: "(1) [he] is handicapped or disabled as defined in each statute, (2) [he] is 'otherwise qualified' to continue in the program, and (3) [he] was dismissed from the program on the basis of his handicap or disability." *Kaltenberger v. Ohio Coll. Of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998) (*quoted in DeAngelo v. Vanderbilt Univ.*, 821 F. App'x 471, 476 (6th Cir. 2020)).

Here, Plaintiff has not and cannot demonstrate an ADA violation. The Student Admissions and Academic Progression Committee reviewed Plaintiff's record and concluded

that dismissal was warranted. (*See* Letter dated December 19, 2023, filed separately under seal.) A university is "not required to lower or to effect substantial modifications of standards to accommodate a handicapped person." *Kaltenberger*, 162 F.3d at 436. And "[d]istrict courts are instructed, when reviewing the substance of academic decisions, to 'show great respect' for the faculty's professional judgment,' and 'only reluctantly intervene in academic decisions.'" *Shaikh v. Lincoln Mem'l Univ.*, 46 F. Supp. 3d 775, 787 (E.D. Tenn. 2014) (quoting *Kaltenberger*, 162 F.3d at 437); *see also id.* at 788 (stating that "the court will defer to LMU's considered academic judgment"); *Sifuna v. S. Coll. of Tenn.*, 2017 WL 2062878, at *5 (E.D. Tenn. May 12, 2017) ("Generally, a court should not disturb a university's academic decisions unless the university acted in an arbitrary and capricious manner."); *Doherty*, 862 F.2d at 577 ("[W]e are of the opinion that implicit in the university's general 'contract' with its students is a right to change the university's academic degree requirements if such changes are not arbitrary or capricious.").

Thus, even if Plaintiff had named the correct Defendant, he falls far short of establishing likelihood of success on the merits of an ADA claim.

### III. The Motion Should Be Denied Because Plaintiff Cannot "Clearly Show . . . Immediate and Irreparable Injury, Loss, or Damage."

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." Mary Kay Kane, *Grounds for Granting or Denying a Preliminary Injunction—Irreparable Harm*, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.). In determining whether the harm is irreparable, it is well settled that "[w]here there is a full, complete, and adequate remedy at law for an injury, it is not irreparable." *Fort v. Dixie Oil Co.*, 95 S.W.3d 931, 932 (Tenn. 1932).

This case involves a student at a private institution disputing the university's decision that dismissal is warranted. Plaintiff was provided with real and substantial procedural protections. These protections, and Vanderbilt's compliance with them, are objectively reasonable. *See, e.g., Geraldo v. Vanderbilt Univ.*, No. 01A01-9610-CH-00467, 1997 WL 718422 (Tenn. Ct. App. Nov. 19, 1997) (denying claim based on alleged right to "fundamental fairness" and breach of contract, finding that "the record establishes that the proceedings against Geraldo were conducted in a fair manner and that the discipline was appropriate to the offense.").

Moreover, separate from his academic dismissal, Plaintiff was expelled from Vanderbilt for violation of university policy contained in the Student Handbook; that expulsion is final, meaning that even if Plaintiff were academically eligible to return to the academic program in the School of Nursing, he would be prevented from enrolling because he is permanently expelled from the university as a whole. But even if the Court ordered that Vanderbilt lift the expulsion, insofar as Plaintiff argues that a delay in his education would constitute irreparable harm, that argument has been rejected by courts across the country. *See, e.g.*, *Doe v. Texas A&M Univ.*, No. CV H-20-4332, 2021 WL 257059, at *8 (S.D. Tex. Jan. 26, 2021) ("This court joins many other courts finding that a delay in education is not irreparable harm. Doe will likely suffer educational delay and resulting harm while this case is adjudicated on the merits, but that harm is compensable in damages. Doe has not shown that he will suffer an irreparable injury warranting a preliminary injunction."); *Hodges v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. CV 20-1456, 2020 WL 5017665, at *4 (E.D. La. Aug. 25, 2020) (collecting cases); *Doe v. Princeton Univ.*, 2020 WL 2097991, at *7 (D.N.J. May 1, 2020) (if the plaintiff prevails on the merits of his underlying claims and is reinstated to Princeton, he will have suffered a delay in his education, analogous to a suspension, which can be remedied through monetary compensation); *Madej*

*v. Yale Univ.*, 2020 WL 1614230, at *6–7 (D. Conn. Mar. 31, 2020) (academic withdrawal does not mean plaintiff will never be able to obtain his degree; rather, his ability to do so will be delayed, which can be remedied through monetary compensation; reputational harm assertions are "too speculative to warrant injunctive relief"); *Doe v. Vassar Coll.*, 2019 WL 6222918, at *6 (S.D.N.Y. Nov. 21, 2019) (finding no irreparable harm where the plaintiff claimed he would "lose the ability to play college soccer as well as his ability to graduate with his class this year"); *Montague v. Yale Univ.*, 2017 WL 4942772, at *3–4 (D. Conn. Mar. 8, 2017) (the harm from the plaintiff's delay in completing education, not graduating with contemporaries, and possibility of decreased employment opportunities are quantifiable and can be adequately remedied by money damages); *Knoch v. Univ. of Pittsburgh*, 2016 WL 4570755, at *8–9 (W.D. Pa. Aug. 31, 2016) (any interruption of education and delay in entering the workforce due to suspension can adequately be compensated by monetary damages should plaintiff succeed on the merits of his claims; it is speculative that plaintiff would lose any professional connections by virtue of his suspension); *Howe v. Pennsylvania State Univ. – Harrisburg*, 2016 WL 393717, at *6 (M.D. Pa. Feb. 2, 2016) *appeal dismissed* (Mar. 29, 2016) ("[T]he court finds that even if the plaintiff would experience a delay as a result of his suspension, this would not constitute irreparable harm which would not be compensated with monetary damages in the future, if warranted."); *Pierre v. University of Dayton*, 143 F. Supp. 3d 703, 714 (S.D. Ohio 2015) ("[C]ourts have also held that a suspension from school is not irreparable."); *Mahmood v. Nat'l Bd. of Med. Examiners*, 2012 WL 2368462, at *5 (E.D. Pa. June 21, 2012) (collecting cases stating that delays in education services do not constitute irreparable harm); *Phillips v. Marsh*, 687 F. 2d 620 (2d Cir. 1982) ("We can conceive of no irreparable harm that would accrue to [the plaintiff] in allowing her graduation to await the outcome of the trial on the merits; any damages to her from

deferring her career as a military officer in that period of time would surely be compensable by monetary damages.").

For these reasons, Plaintiff has failed to establish immediate and irreparable injury, loss, or damage, and his motion should be denied.

## IV.     The Balance of Harms and Public Interest.

Finally, Plaintiff has not shown that the injury to him from denying the injunction outweighs the harm to the individual Defendants and the public interest if it is granted. Like the plaintiff in *Taylor v. Iadicicco*, Plaintiff has presented an unworkable request that has the potential to derail the individual Defendants' ability to do their jobs. 2024 WL 766048, at *2. The Court should defer to the considered judgment of the educational professionals who concluded that Plaintiff should be dismissed from the Vanderbilt School of Nursing and expelled from Vanderbilt University.

## CONCLUSION

The Court should deny Plaintiff's request for a temporary restraining order for multiple reasons. First, Plaintiff's request is procedurally deficient, failing to describe the requested relief with the requisite specificity. Second, Plaintiff fails to establish the baseline criteria for the extraordinary relief requested: he cannot show a likelihood of success on the merits, irreparable harm, or that the balance of harms favors granting a temporary restraining order. Vanderbilt has the right and duty to make decisions regarding student enrollment. That is what it did here. While Plaintiff may disagree with Vanderbilt's decision, there is no basis for his assertion that it was unlawful.

For these reasons, Defendants respectfully request that the Court deny Plaintiff's motion for a temporary restraining order.

Respectfully submitted,

/s/ signature

Kevin C. Klein (#23301)
Jeff W. Sheehan (#33534)
KLEIN SOLOMON MILLS, PLLC
1322 4th Avenue North
Nashville, Tennessee 37208
(615) 600-4780
kevin.klein@kleinpllc.com
jeff.sheehan@kleinpllc.com

*Counsel for Defendants Mary Ann Jessee, Michelle Tellock, Joel Newsome, Melissa Porter, G.L. Black, Neil Jamerson, Jeremy Bourgoin, Mavis Schorn, Pamela Jefferies, E. Jacob Cummings, Jill Harris, Heather Robbins, Cate Enstrom, Angela Weaver, Mary Roy, Michael Fazi, and Feylyn Lewis*


s/ *Denmark J. Grant*
Mark A. Baugh (#015779)
Denmark J. Grant (#036808)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203
Telephone (615) 726-5600
mbaugh@bakerdonelson.com
dgrant@bakerdonelson.com

*Counsel for Defendants Clairise Gamez, Crystal Ritchie, and Marissa Shulruff*

16

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing **RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER** on the Court's CM/ECF system on this 8th day of May, 2024, which forwarded a copy to:

Mark A. Baugh
Denmark J. Grant

*Attorneys for Defendants Clairise Gamez,
Crystal Ritchie, and Marissa Shulruff*

I certify that the foregoing **RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER** is being sent via electronic mail on this 8th day of May, 2024, to:

Ian Lucas
221 Charleston Avenue
Pleasant View, TN, 37126
(910) 872-3577 (telephone)
lucasianhunter@outlook.com

*Plaintiff Pro Se*

Kevin C. Klein