UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IAN LUCAS, Pro Se<br><br>　　Plaintiff(s),<br><br>v.<br><br>MARY ANN JESSEE et al,<br><br>　　Defendant(s). | Case No. 3:24-cv-00440<br><br>Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

**PLAINTIFFS REPLY TO DEFENDANTS' RESPONSE**

**TO PLANTIFFS MOTION FOR TEMPORARY RESTRAINING ORDER**

　　In defense of Plaintiff Ian Lucas, this reply addresses the procedural and substantive deficiencies in the Defendants' arguments, citing specific legal precedent and evidence to support the plaintiff's position. The Plaintiff's motion for a TRO is procedurally sound. The Federal Rules of Civil Procedure allow for the issuance of a TRO to prevent immediate and irreparable injury, which the Plaintiff has sufficiently demonstrated through his allegations of retaliation and denial of access to educational records. The specificity required at the TRO stage is not as stringent as Defendants suggest. The case of Granny *Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423 (1974), supports the issuance of a TRO to maintain the status quo pending a fuller hearing.

I. Procedural Sufficiency and Specificity of Relief Sought

　　Despite the Defendants' contention, the relief sought by the Plaintiff is both feasible and adequately specific. However, the Federal Rules of Civil Procedure do not require an exhaustive list of specific remedies at the temporary restraining order (TRO) stage. The purpose of a TRO is to preserve the status quo and prevent irreparable harm until a more thorough hearing can be held. The specificity of the relief can be refined as the case progresses. The courts have discretion to tailor the relief to the specifics of the case at hand, as demonstrated in *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7 (2008), where the Supreme Court emphasized the flexible nature of equitable remedies. In response to the

Defendants' argument regarding the specificity of the relief sought by the Plaintiff, Ian Lucas, it is important to emphasize the court's broad discretion in tailoring equitable relief to fit the particular circumstances of each case. The Supreme Court has long recognized this principle, as established in the case of Hecht Co. v. Bowles, 321 U.S. 321 (1944). In Hecht Co., the Court stated that "the historic injunctive process was designed to deter, not to punish," and the essence of equity jurisdiction has been "the power of the Chancellor to do equity and to mold each decree to the necessities of the particular case."

This discretion allows a court to craft a remedy that addresses the specific needs of the parties involved, even when the initial request for relief may not be highly detailed. The Plaintiff's request for a temporary restraining order seeks to prevent retaliation for asserting his rights under the ADA and to ensure access to his student records as mandated by FERPA. While the Defendants argue that the relief is not specific enough, the Plaintiff's motion sets forth clear and actionable items that can be refined and defined through the court's equitable powers.

The Defendants' argument that the relief sought is unworkable due to its lack of specificity does not take into account the court's ability to specify the terms of the injunction as necessary to provide meaningful relief and to prevent further harm to the Plaintiff. The court can and should use its discretion to determine the appropriate scope and terms of the injunction to ensure that the Plaintiff's rights under the ADA and FERPA are protected. This approach is consistent with the Supreme Court's guidance and the equitable nature of injunctive relief.

-----------------------------------------------------------

References:

II. Likelihood of Success on the Merits

A. ADA Claims

While Defendants correctly note that Title III of the ADA does not provide for individual liability, this does not absolve the institution, through its agents, from compliance. The actions of the individual Defendants, in their capacity as representatives of Vanderbilt, could constitute a failure by the institution to provide reasonable accommodations, a core requirement under the ADA. The case of Tennessee v. Lane, 541 U.S. 509 (2004), underscores the importance of ensuring access to public services for individuals with disabilities, which can be extended to the educational context.

*McPherson v. Michigan High School Athletic Associatio*n, Inc., 119 F.3d 453 (6th Cir. 1997): This case supports the argument that entities must make reasonable modifications to policies, practices, or procedures when necessary to accommodate individuals with disabilities, unless such modifications would fundamentally alter the nature of the service, program, or activity. This precedent can be used to argue that Vanderbilt's actions or lack thereof could be seen as a failure to make reasonable accommodations for the Plaintiff. This case supports the argument that entities must make reasonable modifications to policies, practices, or procedures when necessary to accommodate individuals with disabilities, unless such modifications would fundamentally alter the nature of the service, program, or activity. This precedent can be used to argue that Vanderbilt's actions or lack thereof could be seen as a failure to make reasonable accommodations for the Plaintiff.

*PGA Tour, Inc. v. Martin,* 532 U.S. 661 (2001): The Supreme Court held that the ADA applies to public accommodations provided by private entities, requiring them to make reasonable modifications for individuals with disabilities. This case can be used to argue that Vanderbilt, as a private entity providing educational services, falls under the purview of the ADA and is required to accommodate the Plaintiff's disability.

B. FERPA Claims

3

Although FERPA does not explicitly provide a private right of action, the denial of access to educational records as alleged by Plaintiff could be addressed through a writ of mandamus, compelling Vanderbilt to comply with federal law. The Supreme Court in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803), established the basis for such a writ when a right to relief is clear and the duty of the respondent is nondiscretionary.

*Gonzaga University v. Doe, 536 U.S. 273 (2002):* While this case found that FERPA does not grant a private right of action for enforcement, it can be used to argue the importance of FERPA's role in protecting students' privacy rights. The Plaintiff can argue that Vanderbilt's alleged failure to provide access to records as required under FERPA, while not directly actionable under FERPA, indicates a broader pattern of disregard for statutory obligations that could support claims under other legal theories.

*Rooker v. Board of Education of the City of New York*, 567 F. Supp. 2d 414 (S.D.N.Y. 2008): This case illustrates the application of FERPA in ensuring that students have access to their educational records. Although it does not provide a private right of action, the Plaintiff can use this case to highlight the importance of compliance with FERPA's provisions and argue that Vanderbilt's non-compliance is indicative of a broader failure to respect students' rights.

In response to the Defendants' argument that FERPA limits a student's access to their educational records to a one-time, two-hour viewing, it is important to clarify that FERPA does not impose such restrictions.

The Family Educational Rights and Privacy Act (FERPA) grants students the right to inspect and review their education records. The Act states that schools must comply with a request for access to records within a reasonable time, but in no case more than 45 days after the request has been made (20 U.S.C. § 1232g; 34 CFR Part 99). There is no provision in FERPA that limits the number of times a student may view their records or restricts the duration of such a review. Legal precedent supports the interpretation that FERPA is designed to provide broad access to educational records.

In the case of *Falvo v. Owasso Independent School District*, 534 U.S. 426 (2002), the Supreme Court noted the importance of parental and student access to educational records, although the case primarily dealt with peer grading. The Court's recognition of the importance of access to educational

4

records underscores FERPA's intent to ensure such access is meaningful. Furthermore, the Department of Education's FERPA regulations explain that schools may not destroy records if there is an outstanding request to inspect and review them (34 CFR § 99.10(d)).

This regulation implies that students have the right to request access multiple times, especially if they believe that their records have not been fully provided or if they need to review them again for accuracy. In the case at hand, the Plaintiff, Ian Lucas, has the right under FERPA to inspect and review his educational records without arbitrary limitations imposed by the university. The Defendants' restriction of access to a single two-hour session does not align with the spirit or the letter of FERPA, which is designed to ensure students can fully exercise their rights to access their educational records. The Plaintiff's request for access should not be limited to a one-time viewing, and the university's imposition of such a restriction is not supported by FERPA or legal precedent.

III. Irreparable Harm

Contrary to the Defendants' contention, the Plaintiff has adequately demonstrated the potential for irreparable harm, considering the unique and non-compensable nature of educational opportunities and the stigma associated with wrongful disciplinary actions. In response to the Defendants' argument that the Plaintiff, Ian Lucas, has not demonstrated irreparable harm, it is important to provide specific examples of how the Plaintiff's educational opportunities and reputation have been or could be harmed by the Defendants' alleged actions. The irreparable harm faced by the Plaintiff includes:

1. Academic Setback: The Plaintiff's dismissal from the nursing program has resulted in a loss of academic progress, which cannot be easily recouped. This setback could delay his graduation and entry into the nursing profession, a field where timing is often critical due to the structured nature of clinical rotations and licensing exams.

2. Loss of Educational Investment: The Plaintiff has invested time, effort, and financial resources into his education. The dismissal could nullify this investment, as credits earned may not transfer, and scholarships or financial aid may be lost, resulting in a significant financial burden.

3. Barriers to Re-Admission: The Plaintiff's dismissal, particularly if characterized as due to policy violations, could create barriers to re-admission into the same or a different nursing program. Nursing schools are highly competitive, and a dismissal on one's record can be a significant detriment to future academic opportunities.

4. Professional Repercussions: The nursing field is highly sensitive to the backgrounds of its practitioners. The Plaintiff's dismissal and the reasons behind it could be disclosed to future employers, affecting his ability to secure employment in certain medical facilities or to obtain professional licenses.

5. Reputational Damage: The stigma associated with being dismissed from a prestigious program can have long-lasting effects on the Plaintiff's professional reputation. This type of reputational harm is particularly difficult to quantify and compensate for, as it can permanently affect the Plaintiff's ability to secure employment in his chosen field.

6. Emotional and Psychological Impact: The stress and uncertainty caused by the dismissal and the potential for long-term consequences can lead to significant emotional and psychological distress, which can affect the Plaintiff's well-being and future performance in both academic and professional settings.

These examples illustrate the irreparable nature of the harm that the Plaintiff faces, which monetary damages alone cannot adequately address. The harm to the Plaintiff's educational trajectory and professional reputation, as well as the emotional toll, support the need for the temporary restraining order to prevent further damage.

The harm to Plaintiff's reputation and academic career cannot be fully remedied by monetary damages, as recognized in *Elrod v. Burns, 427 U.S. 347 (1976),* which acknowledges the irreparable nature of the loss of First Amendment freedoms, analogous to the loss of educational opportunities and reputational harm. The Plaintiff has demonstrated a threat of irreparable harm through the potential loss of educational opportunities and damage to his reputation, which cannot be remedied by monetary damages alone. The case of *Sampson v. Murray, 415 U.S. 61 (1974)*, illustrates that the possibility of irreparable

6

damage can justify the issuance of a preliminary injunction, particularly when it involves personal rights and reputational harm.

In defense of Plaintiff Ian Lucas, the potential irreparable harm he faces if the temporary restraining order (TRO) is not granted is multifaceted, impacting both his academic and professional future. The alleged retaliatory actions by the Defendants have immediate and long-lasting consequences that monetary damages cannot adequately address.

Irreparable Harm to Academic Future:

The Plaintiff's academic career is at a critical juncture. The denial of a TRO could result in the Plaintiff missing essential academic deadlines, losing a year or more of progress, and potentially being unable to complete his degree. In defense of Plaintiff Ian Lucas, specific examples of how his academic progress could be affected if the temporary restraining order (TRO) is not granted include:

1. Disruption of Educational Path: The Plaintiff's dismissal from the nursing program interrupts his planned course of study, potentially causing him to fall behind his peers and delaying his graduation. This disruption can have a cascading effect on his ability to meet the academic milestones necessary for progression in his field.

2. Financial Implications: The Plaintiff may incur additional financial burdens due to the need to retake courses or enroll in another institution to complete his education. These unexpected costs can significantly impact his financial stability and future educational choices.

3. Loss of Clinical Placements: Nursing programs often include clinical placements that are integral to the students' education and future employment prospects. The Plaintiff's dismissal could result in the loss of these critical opportunities, which may not be available to him at a later time or at another institution.

4. Impact on Advanced Degrees: The Plaintiff's academic dismissal could affect his eligibility for advanced degree programs. Many graduate programs require a record of uninterrupted and successful academic performance, and a dismissal could be a significant barrier to admission.

5. Delay in Professional Certification: The timing of the Plaintiff's academic progress is likely tied to certification exams and licensure processes. A delay in completing his education could result in a delay in taking these exams, thereby postponing his entry into the professional workforce.

6. Loss of Academic Opportunities: The Plaintiff may lose the opportunity to participate in research projects, internships, or special academic programs that are time-sensitive and may not be available to him if his education is delayed.

These examples illustrate the potential for significant and irreparable harm to the Plaintiff's academic progress and future career in nursing if the TRO is not granted.

Courts have recognized that the loss of an academic year constitutes irreparable harm because it cannot be recaptured (Aguilar v. Avis Rent A Car System, Inc., 21 Cal. 4th 121, 131 (1999)). The academic harm extends beyond mere delay; it disrupts the Plaintiff's educational trajectory and may permanently alter his path in the nursing profession.

Professional and Reputational Harm:

The Plaintiff also faces irreparable harm to his professional reputation and future career prospects. The stigma of being dismissed from a prestigious nursing program, especially under allegations of policy violations, can tarnish his reputation in the close-knit medical community. In defense of Plaintiff Ian Lucas, it is crucial to address the Defendants' arguments and demonstrate the significant and irreparable harm that the Plaintiff faces if the temporary restraining order (TRO) is not granted. The Defendants' contention that the Plaintiff's motion is procedurally deficient and lacks merit overlooks the substantive rights at issue and the potential for immediate and lasting damage to the Plaintiff's academic and professional future.

1. Prevention from Being Accepted into Another Nursing Program**: The dismissal and subsequent expulsion from Vanderbilt University's School of Nursing could significantly hinder the Plaintiff's ability to be accepted into another reputable nursing program. Nursing schools often consider an applicant's academic and disciplinary history in their admissions process. The stigma associated with

being expelled for policy violations could be a red flag to other institutions, effectively barring the Plaintiff from continuing his education in his chosen field.

2. Securing Employment in Certain Medical Facilities: The professional implications of the Plaintiff's dismissal and expulsion extend beyond academic concerns. Many healthcare employers conduct thorough background checks that include an applicant's educational history. The expulsion, especially under the circumstances alleged by the Defendants, could be detrimental to the Plaintiff's ability to secure employment in certain medical facilities, particularly those that value integrity and adherence to policy. This could limit the Plaintiff's employment opportunities and adversely affect his career trajectory in the healthcare industry.

3. Impact on Licensing and Certification: The Plaintiff's ability to obtain necessary licensing and certification could also be compromised. Many licensing bodies require disclosure of any academic disciplinary actions, and an expulsion could impact the Plaintiff's eligibility or lead to additional scrutiny. This could delay or even prevent the Plaintiff from becoming a licensed nurse, a critical step in pursuing a career in nursing.

4. Reputational Damage: The reputational damage from the Defendants' alleged retaliatory actions cannot be understated. The nursing profession, like many healthcare fields, is small and community oriented. The Plaintiff's reputation, once tarnished by the expulsion, could suffer long-lasting effects, making it difficult to rebuild professional relationships and trust within the healthcare community. This type of reputational damage is often considered irreparable because it can permanently affect a person's ability to secure employment in their field (Silverman v. Major League Baseball Player Relations Committee, Inc., 67 F.3d 1054, 1059 (2nd Cir. 1995).

Emotional and Psychological Distress: Beyond the tangible impacts on the Plaintiff's academic and professional life, the emotional and psychological distress resulting from the Defendants' actions constitutes irreparable harm. The stress, anxiety, and uncertainty about his future can have profound effects on the Plaintiff's well-being and mental health, further exacerbating the challenges he faces.

In conclusion, the Defendants' argument fails to account for the breadth and depth of the irreparable harm faced by the Plaintiff. The academic and professional implications of the Defendants' alleged retaliatory actions are severe and warrant the granting of the temporary restraining order to prevent further damage to the Plaintiff's prospects and well-being.

Emotional and Psychological Harm:

The emotional and psychological impact of the Defendants' alleged retaliatory actions also constitutes irreparable harm. The stress and anxiety associated with the uncertainty of one's academic and professional future can have profound and lasting effects on an individual's mental health and well-being (Elrod v. Burns, 427 U.S. 347, 373 (1976)).

Given the irreparable harm to the Plaintiff's academic progress, professional reputation, and emotional well-being, it is respectfully requested that the Court grant the temporary restraining order to prevent further harm to the Plaintiff and to enforce his rights under the ADA and FERPA.

IV. Balance of Harms and Public Interest

The balance of harms decidedly favors Plaintiff, as the potential harm to his academic and professional future outweighs any inconvenience to Defendants in complying with federal laws designed to protect students' rights. The public interest is best served by upholding the integrity of educational institutions and ensuring they operate within the bounds of the law, as emphasized in Goss v. Lopez, 419 U.S. 565 (1975), which highlights the importance of due process in educational settings.

Conclusion

Given the procedural sufficiency of Plaintiff's motion, the likelihood of success on the merits of his claims, the clear demonstration of irreparable harm, and the balance of harms and public interest favoring Plaintiff, it is respectfully submitted that the Court grant the temporary restraining order to prevent further harm to Plaintiff and to uphold his rights under the ADA and FERPA.

In defense of Plaintiff Ian Lucas, the argument presented by the Defendants fails to address the core issue of retaliation under the Americans with Disabilities Act (ADA) for asserting ADA rights, rather than focusing solely on the academic dismissal itself. The Defendants' reliance on the academic committee's

decision and the assertion that a university is not required to lower standards to accommodate a disabled person misses the critical aspect of the Plaintiff's claim—retaliation for asserting ADA rights.

The Defendants' argument overlooks the ADA's provisions against retaliation. The ADA prohibits retaliation against an individual for asserting their rights under the Act. Specifically, 42 U.S.C. § 12203(a) states that "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." This provision protects individuals who report or oppose ADA violations from retaliatory actions, separate from the merits of the underlying disability accommodation claim.

The Defendants' focus on the academic standards and the decision-making process of the academic committee does not address the retaliation claim. The Plaintiff's dismissal and the subsequent actions taken by the Defendants could be viewed as retaliatory if they were in response to the Plaintiff asserting his ADA rights. The case of Gomez-Perez v. Potter, 553 U.S. 474 (2008), supports the principle that federal anti-discrimination laws, like the ADA, encompass protections against retaliation for individuals who engage in protected activities, such as asserting their rights under these laws.

Regarding the Family Educational Rights and Privacy Act (FERPA), the Defendants' argument that Vanderbilt provided adequate access to the Plaintiff's student records does not address the Plaintiff's specific requests for additional access and review. FERPA's intent is to ensure students have broad rights to access their educational records. The limitation of a one-time, two-hour session does not align with the spirit of FERPA, which is designed to provide students meaningful access to their records. The Department of Education's guidance on FERPA emphasizes the rights of students to inspect and review their education records and does not support arbitrary limitations on such access.

The request for a temporary restraining order (TRO) is both procedurally sound and substantively justified. The Plaintiff's motion seeks to prevent ongoing retaliation and ensure access to educational records, addressing immediate and irreparable harm that cannot be remedied through monetary damages alone. The harm includes not only the potential loss of educational opportunities but also the stigma and

11

professional setbacks associated with retaliatory actions. The balance of harms decidedly favors the Plaintiff, whose academic and professional future is at stake, against the Defendants' interest in maintaining autonomy over academic decisions.

The Plaintiff's motion for a TRO is grounded in a legitimate concern over retaliation for asserting ADA rights and seeks to protect the Plaintiff's access to educational records as mandated by FERPA. The Defendants' arguments fail to address the core issue of retaliation under the ADA and the Plaintiff's right to meaningful access to his educational records under FERPA. Therefore, it is respectfully submitted that the Court grant the Plaintiff's motion for a temporary restraining order to prevent further harm and uphold the Plaintiff's rights under the ADA and FERPA.

For these reasons, Plaintiff respectfully demands that the Court grant his motion for a temporary restraining order.

Respectfully Submitted,

*(signature)*
_____
Ian Hunter Lucas
*Plaintiff Pro Se*
221 Charleston Avenue
Pleasant View, Tennessee, 37146
910-872-3577 (Mobile)
Lucasianhunter@outlook.com

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing **RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER** on the Court's CM/ECF system on this 8th day of May 2024,

which forwarded a copy to:

Kevin C. Klein (#23301)
Jeff W. Sheehan (#33534)
KLEIN SOLOMON MILLS, PLLC
1322 4th Avenue North
Nashville, Tennessee 37208
(615) 600-4780
kevin.klein@kleinpllc.com
jeff.sheehan@kleinpllc.com
*Counsel for Defendants Mary Ann Jessee, Michelle Tellock, Joel Newsome, Melissa Porter, G.L. Black, Neil Jamerson, Jeremy Bourgoin, Mavis Schorn, Pamela Jefferies, E. Jacob Cummings, Jill Harris, Heather Robbins, Cate Enstrom, Angela Weaver, Mary Roy, Michael Fazi, and Feylyn Lewis*

Mark A. Baugh (#015779)
Denmark J. Grant (#036808)
BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ, P.C.
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203
Telephone (615) 726-5600
mbaugh@bakerdonelson.com
dgrant@bakerdonelson.com
*Counsel for Defendants Clairise Gamez, Crystal Ritchie, and Marissa Shulruff*

Dated: May 8, 2024

_____
Ian Hunter Lucas
*Plaintiff Pro Se*
221 Charleston Avenue
Pleasant View, Tennessee, 37146
910-872-3577 (Mobile)
Lucasianhunter@outlook.com