UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IAN HUNTER LUCAS, Pro Se<br><br>    Plaintiff(s),<br><br>v.<br><br>MARY ANN JESSEE et al.,<br><br>    Defendant(s). | Case No. 3:24-cv-00440<br><br>Judge Waverly D. Crenshaw, Jr<br>Magistrate Judge Alistair E. Newbern |

**PLAINTIFF'S ASSERTIVE REQUEST FOR RECONSIDERATION OF MEMORANDUM OPINION AND ORDER THAT DENIED THE EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

Ian Hunter Lucas ("Plaintiff"), proceeding pro se, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and Local Rule 7.01(g) of the United States District Court for the Middle District of Tennessee, respectfully moves this Honorable Court to reconsider its Memorandum Opinion and Order dated May 9, 2024, denying Plaintiff's Emergency Motion for Temporary Restraining Order (the "Order," Docket No. 26). Plaintiff respectfully submits to this Court that the prior Order should be vacated and reconsidered, owing to a significant error of law that fundamentally influenced the Court's decision and denied the Plaintiff the protection he reasonably sought. In support of this motion for reconsideration, Plaintiff submits the following arguments and authorities.

I. BACKGROUND

We shall now provide a comprehensive overview of the factual and procedural background that is pertinent to this motion, in order to better illustrate the solid foundations upon which this motion is built.

On May 8, 2024, Plaintiff urgently filed an Emergency Motion for Temporary Restraining Order, necessitated by the continuous harm he was enduring because of the egregious actions of Defendants, who were acting as representatives and agents of Vanderbilt University and its associated entities

(collectively referred to as "Defendants"). This Court, after due consideration, issued a Memorandum Opinion and Order on May 9, 2024, in which the Court denied the Plaintiff's motion. The Court concluded, among other things, that Plaintiff had not sufficiently demonstrated a likelihood of irreparable harm in the absence of such injunctive relief.

Suspension or expulsion from a university or other institution of higher learning can have far-reaching consequences on a student's life. Students suspended or expelled from state schools of higher learning, or facing suspension or expulsion, have sought to enforce their asserted constitutional right to continued enrollment in federal actions brought under 42 U.S.C.A. § 1983, claiming violations of due process under U.S. Const. Amend. XIV, as well as allegations of other forms of discrimination or retaliation. 85 A.L.R. Fed. 3d Art. 4 (Originally published in 2023).

Success in a college or university program can significantly impact a student's life, such as access to more advanced learning or certain occupations. Thus, expulsion or suspension of a student is a serious matter. Students of higher education may be expelled or suspended on disciplinary grounds for misconduct or for failing to satisfy academic requirements. A student facing suspension or expelled, or a student already suspended or expelled, may bring an action under 42 U.S.C.A. § 1983 seeking to enforce an asserted right to continued enrollment.

Such actions typically allege violations of procedural or substantive due process rights under U.S. Const. Amend. XIV. <u>Martinson v. Regents of the University of Michigan</u>, 2011 WL 13124122 (E.D. Mich. 2011), affirmed on other grounds, 562 Fed. Appx. 365, 306 Ed. Law Rep. 46 (6th Cir. 2014) (applying federal and Michigan law). In this landmark case, the court firmly established that an expelled nursing student possessed a protected property interest in their education, thus creating a bedrock for a procedural due process claim under U.S. Const. Amend. XIV. This observation is noteworthy as it confirms that state courts, such as those in Michigan, have recognized the constitutional protection warranted to the right to continue a course of higher education. noting that the Michigan courts rely on <u>Goss v. Lopez</u>, 419 U.S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975) , in recognizing that university students have a property interest in their continued education.

The federal courts in the following cases hold that a student has a constitutionally protected generalized property interest in continued enrollment at a university or other institution of higher education. Sixth Circuit:

i. J. Endres v. Northeast Ohio Medical University, 938 F.3d 281, 369 Ed. Law Rep. 617 (6th Cir. 2019)

ii. Doe v. Miami University, 882 F.3d 579, 351 Ed. Law Rep. 704 (6th Cir. 2018)

iii. Doe v. University of Cincinnati, 872 F.3d 393, 347 Ed. Law Rep. 705 (6th Cir. 2017)

iv. Doe v. Cummins, 662 Fed. Appx. 437, 339 Ed. Law Rep. 84 (6th Cir. 2016)

v. Averett v. Hardy, 2023 WL 2471361 (W.D. Ky. 2023)

vi. Clark v. University of Louisville, 2022 WL 16756390 (W.D. Ky. 2022), *summarily aff'd, 2023 WL 4747477 (6th Cir. 2023)*

vii. Doe v. Baum, 227 F. Supp. 3d 784, 344 Ed. Law Rep. 281 (E.D. Mich. 2017) , *rev'd and remanded on other grounds, 903 F.3d 575, 358 Ed. Law Rep. 50 (6th Cir. 2018)*

viii. Doe v. Northern Michigan University, 393 F. Supp. 3d 683, 369 Ed. Law Rep. 790 (W.D. Mich. 2019)

ix. Hart v. Ferris State College, 557 F. Supp. 1379, 9 Ed. Law Rep. 1256 (W.D. Mich. 1983)

x. Mares v. Miami Valley Hospital, 2023 WL 3204678 (S.D. Ohio 2023)

xi. Junhe Qiu v. University of Cincinnati, 2019 WL 2396664 (S.D. Ohio 2019), *aff'd on other grounds, 803 Fed. Appx. 831, 376 Ed. Law Rep. 1017 (6th Cir. 2020)*

xii. Roe v. Director, Miami University, Office of Community Standards, 2019 WL 1439585 (S.D. Ohio 2019)

xiii. Roe v. University of Cincinnati, 2018 WL 9944938 (S.D. Ohio 2018)

xiv. Roe v. Adams-Gaston, 2018 WL 5306768 (S.D. Ohio 2018)

xv. Gischel v. University of Cincinnati, 302 F. Supp. 3d 961, 355 Ed. Law Rep. 232 (S.D. Ohio 2018) , *on reconsideration in part on other grounds, 2018 WL 9944971 (S.D. Ohio 2018)*

      xvi.     Doe v. Wright State University, 2017 WL 3671240 (S.D. Ohio 2017)

Doe v. The Ohio State University, 136 F. Supp. 3d 854, 329 Ed. Law Rep. 406 (S.D. Ohio 2016)

The Plaintiff, now, assertively moves for a reconsideration of the Order, fundamentally on the grounds of rectifying a significant and clear legal error in the application of the irreparable harm standard in this matter.

II. STANDARD FOR RECONSIDERATION

The Federal Rules of Civil Procedure permit a court to alter or amend a judgment upon motion and just terms, filed no later than 28 days after the entry of judgment. Fed. R. Civ. P. 59(e). A motion for reconsideration can be granted for several reasons, including the availability of new evidence that was previously unavailable, an intervening change in controlling law, or the need to correct a clear error or prevent manifest injustice. GenCorp, Inc. v. American Intern. Underwriters, 178 F.3d 804, 834 (6th Cir. 1999).

Moreover, there is persuasive evidence that satisfies the burden of proof by a preponderance of the evidence, insinuating that the Defendants, in collusion with the Plaintiff's former employer, executed retaliatory actions against the Plaintiff, who is identified as a whistleblower under the False Claims Act. These retaliatory actions are alleged to have been coordinated in exchange for substantial donations from Plaintiff's former employer to Vanderbilt's School of Nursing, including a significant donation of 1.25 million dollars to the exact program in which Plaintiff was enrolled prior to his unwarranted dismissal. It is well-established by federal courts that an employer could face liability under the False Claims Act for whistleblower retaliation when it terminates an employee at the behest of a third party due to the employee's protected conduct affecting that third party. 31 U.S.C.A. § 3730(h), this extension to a third party does not specify another employer and does not exempt Vanderbilt University.

Furthermore, even as such, Plaintiff was technically employed by Vanderbilt University as a Student thus even if the provision was understood to mean another employer the Plaintiff would still fall under this provision of the law. Nguyen v. City of Cleveland, 121 F. Supp. 2d 643 (N.D. Ohio 2000)

In adherence with these provisions and out of respect for the judicial process, The Plaintiff respectfully submits this Motion for Reconsideration, asserting in good faith that the grounds for reconsideration, as recognized by the Court and the relevant legal authorities, are wholly applicable to the present circumstances.

III. ARGUMENT

There Has Been a Clear Error in the Application of the Law Regarding Irreparable Harm Analysis

The mere occurrence of harm does not, in isolation, constitute the requisite legal standard for the issuance of the extraordinary relief of a temporary restraining order or preliminary injunction. Rather, the harm must be of such a character that it is irreparable; that it cannot be adequately remedied or compensated in damages. We firmly contend that the harm suffered by the Plaintiff, both tangible and intangible, cannot be adequately compensated in damages and thus fulfills this requirement. - Berridge v. Heiser, 993 F.2d 517, 519 (6th Cir. 1993).

Despite the comprehensiveness of the Court's Memorandum Opinion, it overlooked the ongoing effects of discrimination and retaliation the Plaintiff has been subjected to, as a result of the actions of the Defendants. The Plaintiff contends that the Court's analysis was heavily concentrated on past, isolated incidents, thereby overlooking the ongoing and cumulative harm being endured by the Plaintiff, especially concerning his reputation and future career prospects.

Existing precedent within the jurisdiction of the Sixth Circuit acknowledges that certain types of injuries, such as damage to reputation and the chilling effect on future employment opportunities, are categorically irreparable in nature. Kallstrom v. City of Columbus, 136 F.3d 1055, 1060 (6th Cir. 1998). Where a party can show that its reputation is being tarnished, and such tarnishment is likely to dissuade future employers or associates, relief may be warranted even if some time has elapsed since the initiation of the harmful conduct. In other words, continuing harm of this nature inherently extends beyond past actions and requires urgent judicial redress to prevent ongoing and future injury. Since December 4th, 2024, the Plaintiff has faced continuing and immediate injury, loss, or damage that is likely to ensue before the Defendants can adequately be heard in opposition. Such extraordinary circumstances

unequivocally mandate the issuance of a Temporary Restraining Order (TRO). While it is an indisputable requirement of the law for the Plaintiff to exhaust all internal administrative appeals, if such processes are being fraudulently influenced or manipulated by the Defendants, the perpetuation of these irreparable harms cannot be overlooked.

The Plaintiff has indubitably sustained an irreparable injury by being forced to repay student loans exceeding $200,000, along with accruing interest, for an education unjustifiably denied and abruptly terminated — a scenario orchestrated by the Defendants. During his final semester, the Plaintiff was devoid of the expected educational outcome and the subsequent financial income necessary to repay these debts. This situation not only intensifies the severity of the inflicted harms but also underlines the crucial need for swift legal intervention.

Critical to the reconsideration of this matter is Exhibits, extracted from metadata, which unveils a communication from the Vanderbilt University Medical Center Privacy Office. This correspondence unmistakably attests that the academic measures wielded against Plaintiff were not engendered by any legitimate privacy breach, thus undermining the basis for Plaintiff's academic expulsion.

Moreover, transcripts from the interview with Defendant Newsome and the Plaintiff reveal that the Plaintiff did not make a false statement about firearms, and that the Student Accountability allegations were fabricated to orchestrate an expulsion. Notably, Defendant Neil Jamerson, who is an overseeing Dean of such process, submitted an "allegation" *ex parte* after Lucas requested Jamerson be recused from the process due to Jamerson's failure to provide Lucas with a reason for the ongoing campus restriction, a reason which has not been provided to Lucas to this date. This revelation strikes at the heart of Plaintiff's likelihood to prevail on the merits, demanding a rigorous reappraisal of the Court's prior judgment.

In the previous judgment rendered by this esteemed Court, there seems to have been an oversight in fully considering the widespread retaliatory strategies employed by the Defendants, notably characterized by whistleblower retaliatory behavior, intimidation of witnesses, and the spreading of defamatory statements. The complex scheme of retaliation pursued by the Defendants began immediately on December 4th, 2023, with successive acts maintaining these questionable tactics, including an instance

amounting to a purported violation of not only the refusal to permit the Plaintiff to access his educational records as mandated by the Family Educational Rights and Privacy Act (FERPA) but also the Defendants' refusal to provide the Plaintiff with mandated provisions as required under Title III and Title IX. These orchestrated reprisals, as evidenced by a detailed timeline of events, underscore the gravity of the Plaintiff's case, and necessitate a thorough examination by the Court, an aspect which was seemingly absent in the previous ruling.

It is on this pivotal point that Plaintiff urges the Court to reconsider its application of the irreparable harm analysis. The Plaintiff asserts that the Respondent Court, in issuing the Order, did not fully consider the ongoing and potential harm being imposed on him as a likely consequence of the Defendants' actions. The Plaintiff firmly submits that this constitutes a material error of law, which, in the interest of justice and equity, necessitates a comprehensive reassessment of the circumstances under the correct legal standard.

WHEREFORE, for the foregoing reasons, The Plaintiff respectfully requests the Court to grant this Motion for Reconsideration, rescind the previous order, and issue a fresh order providing relief that is commensurate with the Plaintiff's present circumstances and founded on both law and equity.

Respectfully submitted, this 13th day of May 2024

*/s/ Ian Lucas*

Ian Hunter Lucas
*Plaintiff Pro Se*
221 Charleston Avenue
Pleasant View, Tennessee, 37146
910-872-3577 (Mobile)
lucasianhunter@outlook.com

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing MOTION on the Court's CM/ECF system on this 13th of MAY 2024

which forwarded a copy to:

Mark A. Baugh, BPR No. 015779
Denmark J. Grant, BPR No. 036808
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203
Telephone (615) 726-5600
Facsimile (615) 744-5760
*Attorneys for Defendants Clairise Gamez, Crystal Ritchie, and Marissa Shulruff*

Kevin C. Klein (#23301)
Jeffrey W. Sheehan (#33534)
KLEIN SOLOMON MILLS, PLLC
1322 4th Avenue North
Nashville, Tennessee 37208
(615) 600-4780
*Attorneys for Defendants: Mary Ann Jessee, Michelle Tellock, Joel Newsome, Melissa Porter, G.L. Black, Neil Jamerson, Jeremy Bourgoin, Mavis Schorn, Pamela Jefferies, E. Jacob Cummings, Jill Harris, Heather Robbins, Cate Enstrom, Angela Weaver, Mary Roy, Michael Fazi, and Feylyn Lewis*

Submitted May 13, 2024

_____

Ian Hunter Lucas
*Plaintiff Pro Se*
221 Charleston Avenue
Pleasant View, Tennessee, 37146
910-872-3577 (Mobile)
lucasianhunter@outlook.com