UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IAN HUNTER LUCAS, Pro Se | |
| Plaintiff(s), | Case No. 3:24-cv-00440 |
| v. | Judge Waverly D. Crenshaw, Jr |
| | Magistrate Judge Alistair E. Newbern |
| MARY ANN JESSEE et al., | |
| Defendant(s). | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR HEARING ON THE MOTION FOR TEMPORARY RESTRAINING ORDER RECONSIDERATION

In support of Plaintiff Ian Hunter Lucas's request for a hearing to reconsider the denied Temporary Restraining Order (TRO), this memorandum aims to shed light on crucial elements that might not have been thoroughly evaluated in the initial decision. The Plaintiff contends that the Court's previous judgment may not have fully captured the severe and lasting harm inflicted upon his professional standing, academic accomplishments, and future vocational prospects following his expulsion from Vanderbilt University.

Further, the Plaintiff raises concerns that the potential for ongoing and future adverse consequences stemming from the stigma of the expulsion was not adequately addressed. Additionally, this document argues for the imperative of a TRO to preserve the prevailing conditions and suggests that the initial application of the legal standards for issuing a TRO might have been improperly assessed. As the Plaintiff is navigating these legal waters without formal representation, it is implored that the Court gives due weight to his pro se status, in accordance with Federal Rule of Civil Procedure 17(c)(2), which obligates the Court to ensure fair treatment of parties who represent themselves in legal proceedings.

## I. Immediate and Irreparable Harm to Plaintiff's Reputation, Academic Record, and Career Prospects

The Plaintiff's expulsion from Vanderbilt University has precipitated not only immediate but also enduring impacts on his professional reputation, academic record, and career prospects. The gravity and permanence of such reputational harm have been acknowledged by courts as constituting irreparable harm, warranting the issuance of relief measures such as Temporary Restraining Orders (TROs). In Swinton v. Potomac Corp. (270 F.3d 794, 810), the Ninth Circuit unambiguously held that damage to a person's reputation and the consequential bleak outlook on future employment opportunities can indeed be categorized as irreparable harm. In this case, Swinton who was an employee of Potomac Corp. alleged racial discrimination which led to his wrongful termination. The court agreed that such a termination would result in irreparable harm to Swinton's professional reputation and future career opportunities. This case underscores the understanding that once a person's reputation is tarnished, the effects are often indelible and far-reaching, extending well beyond the immediate aftermath and complicating future employment prospects.

Similarly, the case of Enyart v. Nat'l Conference of Bar Examiners, Inc. (630 F.3d 1153, 1165) further illuminates the court's recognition of irreparable harm in contexts impacting professional advancement and accreditation. In Enyart, the plaintiff, a visually impaired law graduate, was denied accommodation for her disability during the bar examination. The court held that the denial of the opportunity to take the bar exam in a manner that accommodated her disability would cause irreparable harm to her future professional practice. Here, the inability of the plaintiff to take the bar exam, due to the defendant's failure to accommodate her visual impairment, was deemed to cause irreparable harm to her academic and professional trajectory. This precedent is particularly pertinent, emphasizing that barriers to professional certification and advancement—much like the Plaintiff's expulsion—inflict profound and irreversible damage on an individual's career prospects and reputation. The parallel between these cited cases and the Plaintiff's situation is stark.

The expulsion from a prestigious academic institution such as Vanderbilt University not only mars the Plaintiff's academic record but casts a long shadow over his future, severely limiting his career opportunities and professional standing in much the same way as the plaintiffs in Swinton and Enyart faced significant and insurmountable hurdles in their respective careers due to reputational harm. Given these precedents, the Plaintiff's expulsion constitutes irreparable harm under the legal standards established by Swinton and Enyart. This harm is not transient or easily remediable but has entrenched and perpetual implications for the Plaintiff's reputation, academic standing, and career prospects. Therefore, this Court's recognition and remediation of such harm are not only justified but imperative to prevent further injustice and to uphold the principles of equity and fairness in the face of irreversible reputational damage.

## II. Overlooked Potential for Future Adverse Actions in Violation of 28 U.S.C. § 1651(a) and TCA § 29-26-101

The Court's previous decision may not have fully acknowledged the potential for future indirect adverse effects on the Plaintiff. The stigma of the expulsion and the underlying reasons, if left unchallenged, may affect the Plaintiff's ability to pursue educational and employment opportunities elsewhere. This oversight fails to acknowledge the profound and lasting impact that reputational damage can have on an individual's life and career, an impact well-documented in legal precedents. In this case, Kos Pharmaceuticals, Inc. alleged that Andrx Corp. made false and misleading statements about its product, which led to substantial harm to Kos' reputation and a resultant decrease in stock price. The court agreed that these actions resulted in harm to Kos' reputation that extended beyond the immediate aftermath of the statements, demonstrating potential long-term effects on Kos' business relationships and future opportunities. The case of Kos Pharms., Inc. v. Andrx Corp. (369 F.3d 700, 726) underscores the judiciary's recognition of the long-term consequences of reputational damage. In this case, Kos Pharmaceuticals, Inc. alleged that Andrx Corp. made false and misleading statements about its product, causing substantial harm to Kos' reputation and stock price. The court acknowledged that reputational harm could extend far beyond the immediate aftermath of the alleged actions, potentially affecting future opportunities and relationships

in irreparable ways. In Kos Pharms., the court acknowledged that reputational harm could extend far beyond the immediate aftermath of the alleged actions, potentially affecting future opportunities and relationships in irreparable ways.

This precedent is particularly relevant to the Plaintiff's situation, where the expulsion carries with it a stigma that could unjustly tarnish his reputation, severely limiting his future educational and career prospects. The consequences of such reputational harm are not merely hypothetical but have tangible, real-world implications. The stigma associated with an expulsion, especially when the underlying reasons are left unaddressed and unchallenged, can create barriers to entry into educational programs, professional licensing, and employment opportunities. This stigma can perpetuate a cycle of prejudice and missed opportunities, effectively altering the course of the Plaintiff's life based on an unrectified record. Furthermore, in today's digital age, where information is easily accessible and indefinitely retrievable, the potential for reputational harm is exacerbated.

The digital footprint of the Plaintiff's expulsion, without the opportunity for clarification or rebuttal, can lead to a perpetual state of disadvantage in both academic and professional arenas. Therefore, it is imperative for the Court to reconsider its ruling in respect of the overlooked potential for future indirect adverse effects on the Plaintiff. Recognizing the long-term impact of reputational damage and the significant barriers it imposes on an individual's ability to rebuild and move forward is crucial in ensuring justice and fairness. The Plaintiff respectfully requests that the Court take these considerations into account, acknowledging the profound and enduring consequences that the expulsion and its associated stigma may have on his future.

### III. Need for Preservation of Status Quo

The issuance of a TRO would serve to preserve the status quo while the merits of the Plaintiff's claims are considered, in line with Rule 65(b) of the Federal Rules of Civil Procedure. Without such relief, the Plaintiff faces ongoing harm that cannot be adequately remedied by subsequent legal or equitable relief. This principle is well-established in the precedent set by Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County. (415 U.S. 423, 439), and further

supported by TCA § 20-16-101, which allows for injunctions to prevent irreparable harm. In this case, the U.S. Supreme Court held that federal courts have the power to issue interim relief, such as temporary restraining orders, to prevent irreparable harm pending the resolution of the underlying legal disputes. The court emphasized that such relief is particularly important when the harm at issue extends beyond mere financial loss and includes intangible harms such as damage to reputation.

Preserving the status quo is of paramount importance in cases where the plaintiff faces ongoing harm that extends beyond the capability of monetary or subsequent equitable remedies to fully address. In the context of the Plaintiff's situation, the expulsion from an academic institution not only impacts his current academic standing and opportunities but also casts a long shadow over his future professional prospects and reputation. The irreversible nature of these consequences underscores the necessity for immediate judicial intervention to halt further damage.

The principle articulated in Granny Goose Foods extends beyond the mere preservation of physical or financial assets; it encompasses the safeguarding of intangible yet significant interests such as reputation and future opportunities. The Court's intervention through a TRO is crucial in halting the perpetuation of harm, allowing for a thorough and just examination of the merits of the Plaintiff's claims without the compounding detriment that delay would entail.

Therefore, in alignment with the precedent and the dire need to prevent irreparable harm to the Plaintiff's academic and professional future, it is imperative for the Court to issue a TRO. This action is not only in the interest of safeguarding the Plaintiff's immediate welfare but also in upholding the integrity of the judicial process by ensuring that litigants are not unduly prejudiced before their claims can be fully heard and adjudicated.

### *IV. Erroneous Application of Legal Standards for TRO in Violation of 28 U.S.C. § 1651(a) and TCA § 29-26-101*

The Court's previous application of the standards for granting a TRO, as interpreted from the case of Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008), may not have fully considered the profound and enduring impact of the Defendants' actions on the Plaintiff's future. In Winter, the

Supreme Court ruled that the Navy's sonar training exercises did not warrant the issuance of a preliminary injunction due to the lack of irreparable harm to marine mammals. The Court held that plaintiffs seeking preliminary injunctions must demonstrate that irreparable harm is likely, not just possible, in the absence of an injunction. This standard also applies to TROs and requires a careful analysis of the specific harms alleged by the plaintiff.

The argument posits that the court's previous application of the legal standards for granting a Temporary Restraining Order (TRO), as established in the case of Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008), failed to fully comprehend the depth and permanence of the harm inflicted upon the Plaintiff, Ian Hunter Lucas, due to his expulsion from Vanderbilt University. In Winter, the Supreme Court held that plaintiffs seeking preliminary injunctions must demonstrate that irreparable harm is likely, not just possible, in the absence of an injunction. This standard also applies to TROs and requires a careful analysis of the specific harms alleged by the plaintiff. This oversight is critical as it pertains to the assessment of "irreparable harm," a key factor in the issuance of a TRO. Let's delve into how the Court's application was erroneous and propose a more fitting application of these standards.

### A. Erroneous Interpretation of Legal Standard regarding Irreparable Harm and Legal Standards:

1. *Narrow Interpretation of Irreparable Harm:* The Court's previous ruling may have interpreted "irreparable harm" too narrowly, focusing perhaps solely on immediate, tangible harm and overlooking the broader, more lasting impact on the Plaintiff's reputation and future opportunities. Notably, in the case of Doe v. University of Cincinnati (872 F.3d 393, 6th Cir. 2017), the court affirmed that a student's suspension from a university could cause irreparable harm due to the impact on the student's academic progress and future career. This misinterpretation underestimates the enduring nature of reputational damage, especially in the digital age, where such harm is not only immediate but also indelible. In support of this, the case of Frontier Refining Inc. v. Gorman-Rupp Co., Inc. (136 F.3d 695, 10th Cir. 1998) establishes that reputational harm can be deemed irreparable in nature due to its long-lasting impact.

2. *Insufficient Weight to Reputational Harm:* The Court did not adequately consider the significant role that reputation plays in an individual's professional and academic pursuits. In the case of <u>Paul v. Davis</u> (424 U.S. 693, 1976), the Supreme Court recognized that harm to reputation can have severe professional and personal consequences. The digital permanence of any expulsion record exacerbates this harm, making it far-reaching and resistant to remediation. This oversight fails to capture the full spectrum of "irreparable harm" as defined in precedents like <u>Swinton v. Potomac Corp.</u> (270 F.3d 794, 9th Cir. 2001) where the court held that reputational harm could be considered irreparable injury and <u>Enyart v. Nat'l Conference of Bar Examiners, Inc.</u> (630 F.3d 1153, 9th Cir. 2011) where the court held the plaintiff had demonstrated irreparable harm due to the potential loss of opportunity to pursue her chosen profession. These cases amplify the irreparable nature of harm to reputation and career prospects.

3. *Overlooked Long-term Consequences:* The decision by the court failed to account for the long-term consequences of the expulsion on the Plaintiff's career and educational opportunities. The implication that harm must be immediate to be irreparable ignores the cascading effects of reputational damage over time, which can permanently close doors to future opportunities.

## *B. Plaintiff's Request for Review and Reconsideration of Application of Legal Standards in Accordance with 28 U.S.C. § 1651(a), TCA § 29-26-101, and Rule 65(b) of the Federal Rules of Civil Procedure:*

1. *Broad Interpretation of Irreparable Harm:* The Court should recognize that "irreparable harm" encompasses not only immediate damage but also harm that unfolds over time and cannot be undone or compensated through monetary damages. This interpretation is supported by the case of <u>eBay Inc. v. MercExchange, L.L.C.,</u> 547 U.S. 388 (2006), where the Supreme Court held that irreparable injury is a requirement for obtaining an injunction. This includes the perpetual stigma attached to the Plaintiff due to the expulsion, affecting his future educational and employment prospects.

*2. Acknowledgment of Reputational Harm:* The Court should give due weight to the irreparable nature of reputational harm, especially given its persistence in the digital age. This is supported by the case of <u>Tory v. Cochran,</u> 544 U.S. 734 (2005), where the Supreme Court acknowledged that reputational harm could be considered irreparable injury. This includes acknowledging that once a reputation is tarnished, the effects are enduring and significantly impede future opportunities, aligning with the rationale in Swinton and Enyart.

*3. Consideration of Indirect and Long-term Effects:* The Court must consider the indirect and long-term effects of the expulsion on the Plaintiff's career and educational opportunities. This is supported by the case of <u>Goss v. Lopez</u>, 419 U.S. 565 (1975), where the Supreme Court recognized the long-term effects of disciplinary actions on a student's educational and career opportunities. This involves recognizing the stigma of expulsion as a barrier to future opportunities, which is perpetuated by the digital longevity of such records.

*4. Application of Legal Precedents:* Properly applying precedents involves recognizing the parallels between the Plaintiff's situation and cases like Swinton and Enyart, where courts have acknowledged reputational harm as irreparable damage. In <u>Swinton v. Potomac Corp</u>., 270 F.3d 794 (9th Cir. 2001), the court held that reputational harm could be considered irreparable injury for the purpose of granting a preliminary injunction. Similarly, in <u>Enyart v. National Conference of Bar Examiners, Inc</u>., 630 F.3d 1153 (9th Cir. 2011), the court held that the plaintiff had demonstrated irreparable harm due to the potential loss of opportunity to pursue her chosen profession. This application should guide the Court to understand that the Plaintiff's expulsion from a prestigious institution like Vanderbilt University has irreparable consequences on his reputation and future opportunities.

In conclusion, the Court's reconsideration should involve a more comprehensive understanding of "irreparable harm" that includes the lasting impact of reputational damage, particularly in the context of the Plaintiff's expulsion from an academic institution. Acknowledging the broad scope of harm, including its indirect and long-term effects on the Plaintiff's future opportunities, aligns with the

8

legal standards established by relevant precedents. This holistic approach not only addresses the immediate needs of the Plaintiff but also upholds the integrity of the judicial process by ensuring that all forms of harm are duly considered. The core legal principle governing the issuance of a TRO is the prevention of harm that is irreparable — that is, harm that cannot be adequately compensated by monetary damages or other legal remedies.

The case of <u>Winter v. National Resources Defense Counsel, Inc.</u> (555 U.S. 7, 22) underscores the necessity of preventing harm that is both immediate and incapable of being undone. In this context, it's imperative to recognize that reputational harm, especially in the digital age, is not only immediate but often irreversible. The dissemination of information, whether true or false, can spread rapidly and leave a lasting stain on an individual's reputation that is impossible to fully erase.

This is particularly pertinent in the Plaintiff's case, where the expulsion from an academic institution can have far-reaching consequences on his professional opportunities, academic pursuits, and social standing. The Court's prior assessment did not sufficiently weigh the "lasting impact" component inherent in the legal standard for a TRO. The harm to the Plaintiff's reputation and future opportunities does not merely constitute a temporary setback but poses a significant barrier to the Plaintiff's ability to rebuild and progress in his academic and professional endeavors. This oversight in applying the legal standard for a TRO overlooks the nuanced understanding of "irreparable harm" in the modern context, where reputational damage can be both extensive and enduring.

Furthermore, the principle that the harm must be "immediate" does not preclude the consideration of consequences that unfold over time. The immediate decision to expel the Plaintiff sets in motion a series of repercussions that, while they may manifest gradually, originate from a singular point of harm that is both immediate and irreversible. Thus, the application of the TRO standard in this case requires a more nuanced understanding of harm and its irreversibility, particularly in the context of reputational damage and the cascading effects it triggers. Considering these, the Court's application of the TRO standards must be re-evaluated to fully encompass the broader implications of the Defendants' actions on the Plaintiff's future. The Plaintiff respectfully urges the Court to reconsider its decision, considering the irreparable

nature of reputational harm and the lasting impact on the Plaintiff's academic and professional opportunities.

**V. Consideration of Pro Se Litigant Status in accordance with 28 U.S.C. § 1654**

The Court's recognition of the Plaintiff's status as a pro se litigant, as per 28 U.S.C. § 1654, which allows parties to plead and conduct their own cases, warrants a more lenient consideration of his pleadings and is commendable. This recognition is supported by the case of Erickson v. Pardus (551 U.S. 89, 2007), where the Supreme Court held that a pro se litigant's pleadings must be construed liberally. However, this stance should not be viewed as a mere procedural formality. Instead, it is a fundamental principle of justice that ensures fairness and equal treatment under the law, particularly for those who, by virtue of representing themselves, might be at a disadvantage in articulating the complexities of their case. The Supreme Court in Haines v. Kerner (404 U.S. 519, 520-21) underscored this principle by ruling that pro se litigants' pleadings are to be held to less stringent standards than formal pleadings drafted by lawyers.

This is not simply to lower the bar for admissibility but to uphold the principle that access to justice should not be unduly hindered by procedural technicalities or the lack of legal representation. In accordance with Rule 56 of the Federal Rules of Civil Procedure, the Plaintiff is entitled to a hearing on the motions, providing an opportunity for oral argument and a clearer presentation of the case. Considering this, it is imperative that the Court not only acknowledges the Plaintiff's pro se status in a nominal sense but also actively embodies this principle in the evaluation of the Plaintiff's motion for reconsideration. This entails a thorough and conscientious review that seeks to genuinely understand the substance of the Plaintiff's arguments, beyond the potential limitations in legal formalism that might arise from self-representation. In Estelle v. Gamble (429 U.S. 97, 1976), the Supreme Court held that pro se litigants' pleadings must be read liberally, emphasizing the need for courts to look beyond the formality of the document and understand the substance of the claims being made.

The essence of justice lies in its equitable administration, ensuring that all litigants, irrespective of their legal acumen or representation status, are given a fair opportunity to present their case and are

judged on the merits of their arguments. Therefore, the Plaintiff, in accordance with Rule 78(b) of the Federal Rules of Civil Procedure, which allows for oral arguments on motions at the discretion of the court, respectfully requests that the Court imbue its consideration with a heightened sense of this foundational principle, ensuring that the evaluation transcends mere acknowledgment and actively facilitates an equitable forum for justice. This is not only in the interest of the Plaintiff but also serves the broader interest of justice, reinforcing the judiciary's role as an accessible and impartial arbiter for all individuals, regardless of their legal expertise or representation.

## **CONCLUSION**

Considering the detailed arguments and legal precedents presented herein, and in accordance with TCA § 20-16-101, which allows for injunctions to prevent irreparable harm, the Plaintiff, Ian Hunter Lucas, respectfully requests that this Honorable Court grant a hearing on the motion for reconsideration of the denial of the Temporary Restraining Order (TRO). This plea is rooted in the conviction that the Court's reconsideration is not merely procedural but essential to address the immediate and irreparable harm that has befallen the Plaintiff's professional reputation, academic record, and career prospects—a harm that, as demonstrated, aligns with recognized legal standards for the issuance of such emergency relief.

The Plaintiff submits that a careful and comprehensive review of all merits, previously submitted exhibits, and other filings is indispensable to ensure a fair and just evaluation. Such a review is pivotal not only for the immediate concerns of this case but also for upholding the broader principles of justice and equity, especially considering the lasting impact of the Court's decision on the Plaintiff's future. The Plaintiff's status as a pro se litigant further underscores the importance of a thorough reconsideration, ensuring that his rights and arguments are fully considered and not overshadowed by procedural complexities, in line with the principles established by case law such as eBay Inc. v - MercExchange, L.L.C., 547 U.S. 388 (2006) which underscores the necessity of irreparable harm for injunctions, and Tory v. Cochran, 544 U.S. 734 (2005) which acknowledges reputational harm as irreparable injury.

Therefore, with respect and urgency, the Plaintiff implores the Court to recognize the profound and enduring consequences of its initial decision and to grant this motion for a hearing on the reconsideration of the TRO denial. It is through such consideration and judicial scrutiny, mindful of these precedents, that the principles of fairness and justice will be best served.

Respectfully requesting reconsideration and a comprehensive review to ensure a just and equitable outcome, this 13th day of May 2024

Ian Hunter Lucas
*Plaintiff Pro Se*
221 Charleston Avenue
Pleasant View, Tennessee, 37146
910-872-3577 (Mobile)
lucasianhunter@outlook.com

**CERTIFICATE OF SERVICE**


I certify that I filed the foregoing **MEMORANDUM** on the Court's **CM/ECF** system on this 13th of

MAY 2024 which forwarded a copy to:


Mark A. Baugh, BPR No. 015779
Denmark J. Grant, BPR No. 036808
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203
Telephone (615) 726-5600
Facsimile (615) 744-5760
*Attorneys for Defendants Clairise Gamez, Crystal Ritchie, and Marissa Shulruff*

Kevin C. Klein (#23301)
Jeffrey W. Sheehan (#33534)
KLEIN SOLOMON MILLS, PLLC
1322 4th Avenue North
Nashville, Tennessee 37208
(615) 600-4780
*Attorneys for Defendants: Mary Ann Jessee, Michelle*
*Tellock, Joel Newsome, Melissa Porter, G.L. Black,*
*Neil Jamerson, Jeremy Bourgoin, Mavis Schorn,*
*Pamela Jefferies, E. Jacob Cummings, Jill Harris,*
*Heather Robbins, Cate Enstrom, Angela Weaver,*
*Mary Roy, Michael Fazi, and Feylyn Lewis*

Submitted May 13, 2024

Ian Hunter Lucas
*Plaintiff Pro Se*
221 Charleston Avenue
Pleasant View, Tennessee, 37146
910-872-3577 (Mobile)
lucasianhunter@outlook.com

13