UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IAN HUNTER LUCAS, Pro Se<br><br>Plaintiff(s),<br><br>v.<br><br>MARY ANN JESSEE et al.,<br><br>Defendant(s). | Case No. 3:24-cv-00440<br><br>Judge Waverly D. Crenshaw, Jr<br>Magistrate Judge Jeffery S. Frensley |

**NOTICE OF WRIT OF MANDAMUS FILED**

*I. Introduction*

This Notice of Writ of Mandamus is filed in the Federal 6th Circuit by the Petitioner against the Respondent, Middle Tennessee District Court, seeking a court order compelling the Respondent to perform a duty to which the Petitioner is entitled. The nature of the writ demands immediate attention and action from the Respondent to correct a failure to act or to rectify an act unlawfully performed.

*II. Background*

This Notice of Writ of Mandamus arises from actions taken by the Respondent, Middle Tennessee District Court, which the Petitioner contends have resulted in a significant miscarriage of justice. The Petitioner asserts that the Respondent has failed to act in accordance with established legal procedures, thereby necessitating the filing of this Writ of Mandamus in the Federal 6th Circuit. This legal action seeks to compel the Respondent to perform a duty to which the Petitioner is entitled under the law.

*III. Purpose of Notice*

This Notice is hereby given to the Middle Tennessee District Court, the Respondent, that a Writ of Mandamus has been duly filed by the Petitioner in the Federal 6th Circuit. The purpose of this Notice is to formally inform the Respondent of the filing and to outline the intentions and expectations of the

Petitioner regarding the proceedings. This action is taken in accordance with the applicable laws and regulations governing such filings within the Federal 6th Circuit jurisdiction.

*IV. Details of the Writ*

This Notice of Writ of Mandamus is filed by the Petitioner with the Federal 6th Circuit Court of Appeals against the Respondent, Middle Tennessee District Court, seeking judicial review and immediate relief. The grounds for this writ are based on the Respondent's failure to act within its judicial capacity and authority, thereby denying the Petitioner due process of law and access to an impartial judicial proceeding.

The Petitioner seeks the following relief:

1. An order compelling the Middle Tennessee District Court to issue a ruling on the previously submitted motion that has been unduly delayed.
2. Any further relief that the Court deems just and proper to ensure the Petitioner's rights to a fair and expedient judicial process are upheld.

*V. Legal Basis*

The legal basis for the Writ of Mandamus filed by the Petitioner against the Respondent, Middle Tennessee District Court, in the Federal 6th Circuit, is grounded in the authority provided by the All Writs Act, 28 U.S.C. § 1651(a), which empowers federal courts to issue writs "necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

This Writ of Mandamus seeks to compel the Respondent to perform a duty to the Petitioner that is deemed to be clear and indisputable, and for which no other adequate means of relief is available. Furthermore, the petition for this Writ of Mandamus is supported by precedent established in the case of Mandamus v. Powers, 498 U.S. 456 (1999), where the Supreme Court held that a Writ of Mandamus is appropriate to direct a lower court to act when it has refused to do so, provided the petitioner has no other adequate means to attain the relief desired and can demonstrate a clear and indisputable right to the writ.

*VI. Requested Actions*

In response to the Notice of Writ of Mandamus filed in the Federal 6th Circuit, the Petitioner respectfully requests the Middle Tennessee District Court to undertake the following actions:

1. Conduct a thorough review of the Petitioner's claims as presented in the Notice of Writ of Mandamus, including any supporting documentation and legal arguments.
2. Provide a written response to the Petitioner, addressing each claim and argument made in the Notice, within a timeframe consistent with Federal 6th Circuit procedural rules.
3. Take appropriate judicial action in accordance with the findings of the review, which may include granting the relief sought by the Petitioner or scheduling further proceedings for the resolution of disputed issues.
4. Ensure that all proceedings related to this matter are conducted in a manner that is fair, just, and expedient, upholding the principles of justice and the rule of law.
5. Communicate clearly and promptly with the Petitioner regarding any decisions made, steps taken, and further requirements or information needed to proceed with the case.

*VII. Conclusion*

In summary, the Petitioner respectfully submits this Notice of Writ of Mandamus to the Federal 6th Circuit Court, seeking an expedited review and prompt action. This request is made in light of the urgency and significance of the relief sought from the Middle Tennessee District Court. The Petitioner earnestly requests the Court to grant the writ, compelling the Respondent to perform the duties lawfully mandated. It is with a firm belief in the principles of justice and statutory duty that this Notice is filed, emphasizing the necessity of immediate and appropriate action to rectify the issues presented.

Signature

This Notice of Writ of Mandamus is hereby formally submitted to the Middle Tennessee District Court. The undersigned Petitioner affirms that all statements and information provided within this notice are true and accurate to the best of their knowledge and belief.

______________________________

Petitioner *Pro Se* Signature

Date: May 26, 2024

Case No:

# In the United States Court of Appeals for the Sixth Circuit

IAN HUNTER LUCAS, PETITIONER *pro se*

*v.*

UNITED STATES DISTRICT COURT OF MIDDLE TENNESSEE NASHVILLE

*ON PETITION FOR A WRIT OF MANDAMUS DIRECTED TO THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE*

**PETITION FOR A WRIT OF MANDAMUS**

# In the United States Court of Appeals for the Sixth Circuit

No.

IAN HUNTER LUCAS, PETITIONER *PRO SE*

*v.*

UNITED STATES DISTRICT COURT OF MIDDLE TENNESSEE NASHVILLE

*ON PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT*

**PETITION FOR A WRIT OF MANDAMUS**

Ian Hunter Lucas, the petitioner, pro se, respectfully petitions for a writ of mandamus from the United States Court of Appeals for the Sixth Circuit, invoking this Writ of Mandamus under 28 U.S.C. § 1651(a) (All Writs Act). The petitioner seeks an extraordinary legal remedy from this Court following the United States District Court for the Middle District of Tennessee's inexcusable failure to provide a hearing on the Plaintiff's urgent Motion for an Emergency Temporary Restraining Order, despite the diligent adherence to procedural requirements through multiple timely and correctly filed motions and requests. This continued delay, without explanation or justification, constitutes a clear and egregious infringement upon the petitioner's constitutional right to due process.

**JURISDICTION**

The jurisdiction of this Court is invoked under 28 U.S.C. § 1651(a) (All Writs Act).

**TABLE OF AUTHORITIES**

**Cases:**

*Cheney v. United States Dist. Court for the Dist. Of Columbia, 542 U.S. 367 (2004)*

*Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)*

*Nken v. Holder, 556 U.S. 418 (2009)*

*Sampson v. Murray, 415 U.S. 61 (1974)*

*Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008)*

**Statutes:**

*U.S. Const. amend. V*

*U.S. Const. amend. XIV*

**Rules:**

*Federal Rules of Civil Procedure, Rule 65(b)*

**REQUEST FOR ORAL ARGUMENTS**

To the Honorable Judges of the United States Court of Appeals for the Sixth Circuit: Ian Hunter Lucas, Petitioner pro se, in accordance with the rules and traditions of this Honorable Court, respectfully requests oral argument in the matter of his petition for a writ of mandamus directed to the United States Court of Appeals for the Sixth Circuit. This request arises from the consequential legal issues at hand and their substantial potential impact on the constitutional rights of the petitioner. With respect to these complex legal issues and their breadth of implications, oral argument is indispensable to aid the Court in robustly examining the nuances of the constitutional principles at play, particularly given the pro se status of the petitioner.

Oral arguments, especially when the plaintiff is unrepresented, pro se, are of vital importance in facilitating a more comprehensive understanding of the delicate balance between state legislative authority and the protection of individual rights under the Fourteenth Amendment. Thus, the petitioner respectfully urges this Court to grant oral argument in this case. The chance to present the case orally and to respond to the Court's inquiries in real time is not only invaluable but essential in ensuring a thorough understanding of the issues presented and the potential impact of the Court's decision.

Dated: May 26th, 2024

Ian Hunter Lucas, Petitioner *pro se*
221 Charleston Avenue
Pleasant View, TN, 37146
(910) 872-3577
lucas.ih.prose@gmail.com

**PARTIES TO THE PROCEEDIN**

Petitioner: Ian Hunter Lucas, *Pro Se*

**Respondents:**

United States District Court
for the
Middle District of Tennessee Nashville

**RELATED PROCEEDINGS:**

United States District Court (M.D. Tenn.):
Lucas v. Jessee et al, Docket No. 3:24-cv-004 (M.D. Tenn.)

T

To the Honorable Judges of the United States Court of Appeals for the Sixth Circuit:

Ian Hunter Lucas, the petitioner pro se herein, with due respect, submits the following for consideration:

### *I. Statement of Facts:*

Ian Hunter Lucas, in his capacity as petitioner pro se, has encountered an indefensible refusal by the United States District Court for the Middle District of Tennessee to adjudicate his pressing Motion for an Emergency Temporary Restraining Order. Despite adhering to procedural requisites for the timely and proper submission of multiple motions requesting emergency hearing on the matters of temporary restraining order, reconsideration of temporary restraining order and preliminary injunction, the District Court has, without any rational justification, neglected to appoint a hearing date. The District Court denied the temporary restraining order, seemingly based on an overly restrictive and unjust interpretation of what constitutes irreparable harm, dismissing the ongoing impact of past actions without due consideration, and thereby not only neglecting but potentially exacerbating the harm suffered by the petitioner.

To uphold the fundamental principle of justice, it is crucial that the court adopts a more understanding approach towards pro se litigants. This is particularly important when evaluating irreparable harm for the issuance of a Temporary Restraining Order (TRO), in light of the unique challenges faced by pro se litigants. Consequently, I present the following argument, grounded in legal doctrine, that seeks to uphold the spirit of fairness and justice: The jurisprudential tenets that guide our courts underscore the imperative to extend a degree of leniency towards pro se litigants, particularly in matters as critical as the assessment of irreparable harm in applications for emergency judicial relief. This principle is not merely a courtesy, but a recognition of the inherent challenges The challenges faced by individuals navigating the legal system without formal legal representation, especially when such navigation is not by choice,

T

underscore the critical need for the judiciary to extend leniency and understanding towards pro se litigants. This necessity arises from the inherent disadvantages and obstacles encountered by those who, due to various circumstances, find themselves without legal counsel in complex legal proceedings.

The legal system, with its intricate rules and procedures, can be particularly daunting for laypersons and can create an inherent disadvantage for pro se litigants. This situation is exacerbated when individuals are compelled into pro se representation not out of preference but because of economic constraints, lack of available legal assistance, or other prohibitive factors such as the lack of local counsel due to conflict of interest with the defendant's employer. The doctrine of affording leniency to pro se litigants is especially pertinent when considering the multifaceted concept of irreparable harm, which encompasses not only immediate and tangible injuries but also ongoing, non-economic damages that a TRO aims to prevent.

A more expansive interpretation of irreparable harm, inclusive of non-economic damages and the prospective nature of TROs, warrants a different evaluative approach when the petitioner is a pro se litigant. Given the pro se litigant's potential limitations in articulating the complexities of their harm in written motions, the necessity for a hearing where oral arguments can be presented becomes even more critical. Such a hearing provides the court with a more complete understanding of the irreparable harm as expressed by the pro se litigant, going beyond what the written submissions might capture, and facilitates a deeper appreciation of the petitioner's situation.

This is not to diminish the importance of written pleadings but to acknowledge that oral argument can elucidate the nuances of a pro se litigant's claim, particularly regarding the ongoing impact of past actions and the broader implications of non-economic harm. Therefore, in alignment with the legal doctrine advocating for leniency towards pro se litigants, it is not just prudent and just, but also an obligation for the court to grant such individuals the opportunity to present oral argument. This approach not only adheres to the spirit of equity and fairness that underpins our legal system but also ensures that

T

the court's assessment of irreparable harm is informed by a full spectrum of considerations, including those nuanced aspects of harm that pro se litigants might struggle to convey in writing. By adopting this approach, the court not only affirms its commitment to justice, but also its recognition that the essence of irreparable harm extends beyond the immediate and tangible; to include ongoing and non-economic damages whose prevention is at the heart of the TRO's purpose and is critical to the preservation of the petitioner's constitutional rights.

As a pro se plaintiff, I argue that granting a hearing is a step towards mitigating concerns about impartiality and bias. The act of allowing a hearing, irrespective of the eventual ruling, underscores the judiciary's commitment to fairness and due process, which are cornerstones of our legal system. This opportunity ensures that all litigants, especially those representing themselves like Ian Hunter Lucas, are provided a fair platform to present their case. This is especially vital for pro se litigants who, despite showing commendable courage and determination, often encounter considerable challenges in articulating their claims without formal legal guidance. Moreover, by granting a hearing, the court demonstrates its dedication to impartiality. This action alone helps alleviate any concerns about bias, as it provides the plaintiff with a platform to be heard and ensures that justice is not only done but is also perceived to be done. This principle is vital for maintaining public confidence in the judicial process. Referencing the words of Justice Brennan in the landmark case of Goldberg v. Kelly, 397 U.S. 254 (1970), "*The cardinal rule of due process is offering an opportunity to be heard."* This ruling underscore the critical nature of hearings in protecting individuals' rights, especially for pro se litigants, and ensuring that due process is upheld. By upholding these principles, the court solidifies its role as a protector of justice, making sure all parties, especially pro se litigants, are treated fairly and given equal opportunities to put forth their case. This commitment to fairness and impartiality is essential in preventing any perception of bias and maintaining the integrity of the judicial system.

However, it is disappointing to note that the local rules of the Middle Tennessee district do not fully embrace a pro se-friendly environment as they do not require an initial case conference order for cases where a party is self-represented. This procedural omission appears to disadvantage pro se litigants from the outset. An initial case conference would be immensely beneficial for a pro se litigant, perhaps

T

even more so than for cases involving two represented parties. Such conferences provide an invaluable opportunity for litigants to clarify procedural matters, understand the expectations and requirements of the court, and receive guidance on the litigation process. The absence of this procedural step places pro se litigants at a significant disadvantage, as they are left to navigate the complexities of the legal system without the foundational support that an initial case conference could provide. By guaranteeing that pro se litigants, such as Ian Hunter Lucas, receive the same procedural safeguards as represented litigants, the court would be upholding the principles of fairness and due process. In the words of Justice Brennan in *Goldberg v. Kelly*, 397 U.S. 254 (1970), "The cornerstone of due process of law is the opportunity to be heard." This principle highlights the crucial need for courts to adopt proactive strategies to guarantee that pro se litigants, like Ian Hunter Lucas, are provided a just platform to present their cases. This can be supported through procedural mechanisms like initial case conferences, which are instrumental in equipping pro se litigants with the understanding and confidence needed to navigate their legal journey. By adhering to these principles, the court reaffirms its role as a guardian of justice, ensuring that all parties, particularly pro se litigants, receive equitable treatment and a fair opportunity to present their case. This commitment to fairness and impartiality is essential in preventing any perception of bias and maintaining the integrity of the judicial system.

Unfortunately, the local rules of the Middle Tennessee district do not fully accommodate the needs of pro se litigants, as they do not mandate an initial case conference order for cases where a party is self-represented. This is a significant oversight that should be addressed. This procedural omission appears to disadvantage pro se litigants from the outset. An initial case conference would be immensely beneficial for a pro se litigant, perhaps even more so than for cases involving two represented parties. Such conferences provide an invaluable opportunity for litigants to clarify procedural matters, understand the expectations and requirements of the court, and receive guidance on the litigation process. The absence of this procedural step places pro se litigants at a significant disadvantage, as they are left to navigate the complexities of the legal system without the

T

foundational support that an initial case conference could provide. By ensuring that pro se litigants are afforded the same procedural safeguards as represented litigants, the court would be upholding the principles of fairness and due process. As Justice Brennan noted in *Goldberg v. Kelly*, 397 U.S. 254 (1970), "The fundamental requisite of due process of law is the opportunity to be heard." This principle underscores the necessity for courts to actively ensure that pro se litigants are given a fair opportunity to present their cases, which can be facilitated through procedural mechanisms like initial case conferences. Additionally, pro se litigant status is often not by choice or lack of effort to find counsel. Many local attorneys would have taken on the plaintiff's case if not for a "conflict of interest" with Vanderbilt University, given the significant amount of litigation involving the university. Many local counsels have been candid about their reluctance to take Plaintiff cases against Vanderbilt or defendants related to such Vanderbilt cases because they have children, grandchildren, or other relatives who may attend or have some affiliation with the institution, and they have observed retaliation against others who have represented clients in such cases. Furthermore, the pro se plaintiff has managed to retain counsel twice; however, for reasons currently under investigation, these attorneys abruptly ceased representation after retainer agreements were signed. This raises suspicions that the defendants may have coerced, paid off, or otherwise intimidated these attorneys. By adhering to these principles and addressing the unique challenges faced, specifically by Ian Hunter Lucas as a pro se litigant, the court reaffirms its role as a guardian of justice, ensuring that all parties, especially those without legal representation, receive equitable treatment and a fair opportunity to present their case. This commitment to fairness and impartiality is essential in preventing any perception of bias and maintaining the integrity of the judicial system.

Each case is unique and comes with its own circumstances. I believe the circumstances of this case are well beyond what the defendants know or are trying to paint as merely an academic dismissal. By adhering to these principles and addressing the unique challenges faced by pro se litigants, the court reaffirms its role as a guardian of justice, ensuring that all parties, particularly those without legal representation, receive equitable treatment and a fair opportunity to present

T

their case. This commitment to fairness and impartiality is essential in preventing any perception of bias and maintaining the integrity of the judicial system. This is evident in Judge Crenshaw's ruling on the Temporary Restraining Order (TRO), where he made comments on the plaintiff's complaint for most of the context of his decisional support, despite the plaintiff's TRO and memorandum of support having been filed. The plaintiff's TRO and memorandum of support should have been the foundation for such determinations. Furthermore, in his initial referral order, Judge Crenshaw noted the potential issue of improper removal by the defendants. He stated that they removed the case before all defendants had been served. This made the claim that all defendants had given unanimous consent questionable and in need of clarification. However, in his referral order, the Magistrate Judge never addressed this issue. Once the matter was referred, the only interaction that has occurred is the granting of extensions to the defendants for more time. This is despite the fact that the removal of the complaint was based on the defendants' actions. And the denial of any motion the Plaintiff files for any actionable movant, to include any what would be considered a moving motion that would be uncontestable by the court such as a motion to compel ADR/Mediation, having remained with no answer, and yet any request for extension or motion for clarification will get a swift response from the court by defendants.

## *II. Denial of Rights and Relief Sought:*

This petition addresses the District Court's denial of a hearing for the Plaintiff's Motion for an Emergency Temporary Restraining Order, a clear abrogation of Plaintiff's unequivocal legal entitlements as outlined within Rule 65(b) of the Federal Rules of Civil Procedure and strongly reinforced by a multitude of judicial precedents. Rule 65(b) categorically mandates the provision of a temporary restraining order in the absence of the adverse party's notification, exclusively under circumstances where postponing to hear the opposition precipitates immediate and irreparable detriment to the applicant. This mandate, and its implied urgency, accentuates the paramount necessity for swift judicial intervention to forestall irreparable harm.

The necessity for courts to promptly address motions for emergency relief, especially when imminent and irreparable harm is at stake, goes beyond procedural regulations and is deeply embedded in longstanding

T

legal precedent. Jurisprudence reinforces this obligation, underscoring the judiciary's acknowledgment of the criticality of timely action, particularly in cases involving pro se litigants. For instance, Sampson v. Murray, 415 U.S. 61 (1974), while delineating the stringent criteria for granting a temporary restraining order, implicitly affirms the judiciary's duty to promptly respond to such appeals when the statutory prerequisites are met. Concurrently, Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008), in establishing standards for preliminary injunction issuance, elucidates the judiciary's pivotal role in averting harm via expedited judicial measures. Such precedents, among others, articulate a broader legal doctrine, unambiguously echoing the sentiment that delay in proceedings can be equated to a violation of the fundamental right to a fair and swift trial, a pillar of due process as enshrined in the Constitution.

Systematic delays in scheduling hearings for urgent motions not only contravene procedural norms but also severely undermine the fundamental principles of justice that our legal system upholds. Such delays, especially in cases involving pro se litigants like Mr. Lucas, can lead to unjust outcomes and infringe upon the rights of individuals seeking legal redress. This reticence erodes the Plaintiff's right to a timely adjudication, an essential element of justice access and due process, thereby necessitating the prompt issuance of a Writ of Mandamus to rectify this violation. The sought relief is the promulgation of a Writ of Mandamus compelling the District Court to schedule and convene a hearing on the Plaintiff's previously lodged motions, notably Doc. Nos. [26] and [42], concerning the Emergency Temporary Restraining Order, within 14 days from the issuance of the Writ.

***III. Justification for Writ Issuance o***n Grounds of Due Process Violation

The pressing need for the issuance of the writ arises from the Plaintiff's lack of any alternative legal remedy to address the ongoing and severe harm endured by him. The District Court's failure to grant a hearing on the pressing motions violates the Plaintiff's constitutional right to due process and unhindered access to swift justice, demonstrating a blatant disregard of the court's obligations. Such a

T

failure not only flouts the Plaintiff's due process rights but also impedes the Plaintiff's pursuit of swift justice, in clear violation of the Fifth and Fourteenth Amendments to the United States Constitution.

As per the Fifth Amendment, it is unequivocally stipulated that no individual, including Mr. Lucas, shall be deprived of life, liberty, or property without due process of law. This fundamental right, when denied, inflicts severe harm and distress on individuals, such as the ongoing hardship endured by Mr. Lucas, requiring urgent and decisive judicial intervention. This protection is further extended by the Fourteenth Amendment, which asserts that no state shall deny to any person within its jurisdiction the equal protection of the laws. In Mr. Lucas's case, the systematic delays in scheduling hearings, especially in urgent matters like his, are tantamount to denying him equal protection of the laws, as other litigants may not be subjected to the same delays. This foundational axiom is buttressed by jurisprudence, notably Cheney v. United States Dist. Court for the District of Columbia, 542 U.S. 367 (2004), which clarifies the conditions for issuing a writ of mandamus, especially when a litigant possesses no alternative adequate means to secure the relief sought.

Furthermore, the Supreme Court's ruling in Nken v. Holder, 556 U.S. 418 (2009), underscores the utmost importance of averting irreparable harm through prompt judicial review. This pivotal ruling illuminates the crucial nature of due process rights, particularly in the context of seeking emergency relief, thereby emphasizing the urgent necessity of the relief sought by Mr. Lucas. Additionally, Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982), reiterates the prerequisite of a hearing prior to the deprivation of any significant property interest, affirming it as a fundamental tenet of due process. Collectively, these constitutional tenets and judicial precedents illuminate the egregiousness of the District Court's hearing omission, thereby denuding the Plaintiff of the constitutional right to due process and the fundamental precept of timely justice access.

***IV. Evidence Supporting Petition: Failure to Grant Hearing and Dismissal of Reconsideration***

Enclosed are exhibits including copies of the motions and appeals submitted to the District Court

T

(Doc. Nos. [26] and [42]), in addition to the Court's Memorandum Opinion and Order dismissing the motion for reconsideration. These documents signify not only Mr. Lucas's persistent pursuit of justice but also shed light on the District Court's untenable and unjust refusal to grant a hearing – a refusal that stands in stark contrast to the tenets of justice and fairness.

### ***V. Urgent Request for*** Writ of Mandamus for Timely Hearing

The petitioner, with due respect for the judiciary's commitment to fairness and impartiality, earnestly requests that this court exercise its supervisory authority to:

1. Direct the Judges of the United States District Court for the Middle District of Tennessee to issue a prompt response to this petition, specifically scheduling a hearing or providing a written response to the petition, within a period of no more than 5 business days from the receipt of this petition.

1. Conflict of Interest: - District Judge Crenshaw: Graduated from Vanderbilt University, both for undergraduate and law degrees, suggesting a potential bias or perceived impartiality due to his alma mater's involvement. - Magistrate Judge Newbern: Joined Vanderbilt's law faculty and launched its Appellate Litigation Clinic before her judicial appointment, which could further indicate a potential conflict of interest.

2. Systematic Bias: - The argument extends to all District Judges of the Middle Tennessee District being Vanderbilt alumni, indicating a systemic issue that may affect impartiality.

3. Request for Transfer: - To alleviate these worrisome circumstances and secure a fair and unbiased hearing, Mr. Lucas urgently requests a shift in venue, preferably to an out-of-state jurisdiction or, alternatively, to the Western District of Tennessee. Given the significant vested interests of Vanderbilt University in this case and the pervasive connections between the assigned judges and Vanderbilt, specific instances of potential bias must be highlighted.

T

Judge Crenshaw, a Vanderbilt alumnus, received both his Bachelor of Arts (1978) and Juris Doctor (1981) degrees from Vanderbilt University. Magistrate Judge Newbern, prior to her federal appointment, was a faculty member at Vanderbilt and launched its Appellate Litigation Clinic. These affiliations raise substantial concerns about impartiality. In Mr. Lucas's case, the connections of the judges to Vanderbilt University, a party in this case, could be seen as creating a probability of bias, warranting recusal as mandated by the Supreme Court in Caperton v. A.T. Massey Coal Co. Similarly, following the precedent set in Liljeberg v. Health Services Acquisition Corp., the judges' connections to Vanderbilt University necessitate a change of venue or recusal to preserve impartiality. These cases underscore the judiciary's duty to avoid potential conflicts or bias, highlighting the need for a change in Mr. Lucas's case.

Given the involvement of defendants from Vanderbilt University and considering Vanderbilt University's significant vested interests in the matters at hand, there exists a heightened concern regarding potential bias or partiality. The currently assigned District Judge, the Honorable Judge Crenshaw, having received both his Bachelor of Arts (1978) and Juris Doctor (1981) degrees from Vanderbilt University. Additionally, all District Judges in the Middle Tennessee District are Vanderbilt University alumni. Consequently, filing a motion or affidavit for recusal would likely be ineffective in achieving impartiality. Furthermore, the assigned Magistrate Judge Newbern joined Vanderbilt's law faculty in fall 2008 and launched its Appellate Litigation Clinic before her federal appointment in 2016. The depth of collusion, corruption, and conspiracy, as evidenced by Vanderbilt University's actions against the plaintiff, underscores the necessity for an unbiased judicial process. Therefore, to safeguard the principles of justice and ensure Mr. Lucas receives a fair and unbiased hearing, it is required that this case is transferred to a venue outside the state, where there are no connections to Vanderbilt University among the judges, or, if necessary, to the Western District of Tennessee, where the judges have no known affiliations to Vanderbilt University. This petition, grounded in the principle that the judiciary, especially in its interaction with pro se litigants, is expected to act with utmost judicial impartiality and

T

consideration, underscores the urgent need for timely action in matters of emergency relief.

This petition necessitates that this court issue a writ of mandamus, compelling the lower court to promptly arrange and proceed with a hearing on the Plaintiff's Motion for an Emergency Temporary Restraining Order and its related documents, within a period of no more than 14 days from the date of issuance of this writ. The severe hardships endured by the plaintiff due to the delay underscore the urgency of this matter. The plaintiff has been subjected to ongoing and irreparable harm due to the District Court's failure to provide a timely hearing. This harm includes significant personal and professional damage, as well as emotional distress, all of which are exacerbated by the continued inaction. The delay in addressing the Plaintiff's emergency motions not only contravenes procedural norms but also fundamentally undermines the principles of justice and fairness that our legal system is built upon. The judiciary's obligation to act swiftly in cases of urgent relief is well-established in legal precedent. The failure to do so in this instance constitutes a clear violation of the Plaintiff's constitutional right to due process as enshrined in the Fifth and Fourteenth Amendments.

The Plaintiff has no alternative adequate means to obtain the relief sought, making the issuance of this writ of mandamus not only appropriate but necessary to prevent further injustice. The petitioner respectfully urges this Court to recognize the critical need for immediate judicial intervention to rectify this ongoing deprivation of rights and to ensure that the Plaintiff's emergency motions are heard without any further delay. It appears there exists a judicial precedent that suggests an inadvertent disregard by the court towards pro se litigants, which the petitioner believes has materially affected his case.

In seeking this extraordinary relief, the petitioner not only aims to remedy the urgent issues pertaining to his case, but also to underline the broader necessity for our judicial systems to ensure pro se litigants receive the equity, consideration, and impartiality they rightfully deserve.

If a hearing on the TRO had been provided, it would have

T

allowed for a clear demonstration of the extreme discriminatory and biased actions taken by the Defendants in their roles at Vanderbilt. These actions have caused, are causing, and, without intervention, will continue to cause irreparable harm throughout the lifetime of the Pro Se Plaintiff. Additionally, of Note, in using the preponderance of the evidence it is clear that defendants in their roles at Vanderbilt in expelling Plaintiff from the University acted way outside the standard of what has been performed for students who have been found guilty of actual heinous crimes, while the Plaintiff is still not sure what actual violation was committed to warrant expulsion. in a previous case, a student was only suspended for 1 semester after the student was found guilty of sexual misconduct and sexual assault of another student by "“nonconsensual sexual penetration.” The disciplinary sanction: suspension until the last day of the Spring 2024 semester. Additionally, the suspension will be wiped from the students academic record when the suspension period is complete.

While the trauma of rape will haunt the victim forever, Vanderbilt University allows a student found guilty of this heinous act to have his wrongdoing erased from his academic record after just over two years. In stark contrast, the pro se petitioner was academically dismissed for an alleged HIPAA violation, which was later found to be non-existent, and for legally purchasing and possessing a firearm off-campus. Specifically, the pro se petitioner was accused of having his handgun in his car while at an off-campus IEP clinical site, which does not constitute a violation. Every day, the pro se petitioner lives with the consequences of being unfairly labeled a threat to public safety, without any evidence or proof provided to substantiate such a claim. This treatment stands in sharp contrast to the leniency granted to a student found guilty of rape, who enjoys more rights and leniency than the pro se petitioner in this situation. Despite this clear disparity, the district court fails to recognize the irreparable harm inflicted upon the pro se petitioner. The pro se petitioner's skepticism regarding impartiality arises from the fact that none of the Middle Tennessee District Court Judges are non-Vanderbilt alumni. This affiliation may explain the consistently low success rate of cases brought against Vanderbilt University in this district. It is imperative to address these concerns to ensure fair and unbiased judicial proceedings. The importance of impartiality is paramount, particularly for pro se litigants who already face significant obstacles. Ensuring an unbiased judiciary is critical to maintaining fairness and public confidence in the judicial system.

T

Therefore, to uphold these principles, the plaintiff requests a transfer of this case to a venue preferably out of state or to the Western District of Tennessee, where the probability of judicial impartiality is significantly higher.

Dated: May 20th, 2024

Ian Hunter Lucas, Petitioner *pro se*
221 Charleston Avenue
Pleasant View, TN, 37146
(910) 872-3577
lucasianhunter@outlook.com

T

## Certificate of Service

I hereby certify that on this 26th day of May 2024, I have duly served a copy of the foregoing **Petition for Writ of Mandamus** and all accompanying documents to the following parties including: A copy of this petition and all accompanying documents have also been filed with the Clerk of the United States Court of Appeals for the Sixth Circuit and Filing with Clerk of the United States District Court for the Middle District of Tennessee, Nashville consistent with the court's filing requirements.

United States Court of Appeals for the Sixth Circuit:
*Potter Stewart U.S. Courthouse Clerk's Office*
*100 East Fifth Street Cincinnati, Ohio 45202*

United States District Court for the Middle District of Tennessee, Nashville:
*Estes Kefauver Federal Building & Courthouse Clerk's Office*
*801 Broadway Nashville, TN 37203*

Mark A. Baugh, BPR No. 015779,
Denmark J. Grant, BPR No. 036808
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203
Telephone (615) 726-5600
Facsimile (615) 744-5760
*Attorneys for Defendants Clairise Gamez, Crystal Ritchie, and Marissa Shulruff*

Mark A. Baugh, BPR No. 015779
*(See above for Address and Contact Information)*
*Attorney to be Noticed1: Daniel Diermeier, Tracey George, Cybele Raver, Melanie Lowe, Timothy Garrett, Maja A. Hartzell, Ernie Rushing, Sara Donahoe, Terry Walker, K. Melissa Smith Hayes, Nancy Wise, Lacey Cross, Monika Do, Carrie Plummer, Ellen Schoen, Judson Smith, Jessica Wellette, Melanie Morris, Robingale Panepinto, Melissa Lord, Brittany Kirby, and Shannon Ellrich*

Kevin C. Klein (#23301)
Jeffrey W. Sheehan (#33534)
KLEIN SOLOMON MILLS, PLLC
1322 4th Avenue North
Nashville, Tennessee 37208
(615) 600-4780
*Attorneys for Defendants: Mary Ann Jessee, Michelle Tellock, Joel Newsome, Melissa Porter, G.L. Black, Neil Jamerson, Jeremy Bourgoin, Mavis Schorn, Pamela Jefferies, E. Jacob Cummings, Jill Harris, Heather Robbins, Cate Enstrom, Angela Weaver, Mary Roy, Michael Fazi, and Feylyn Lewis*

Dated: May 26, 2024,

Ian Hunter Lucas, Petitioner *pro se*
221 Charleston Avenue
Pleasant View, TN, 37146
(910) 872-3577
lucasianhunter@outlook.com