**UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**

– – – – – – – – – – – – – – – – – – – – – – – – – – – – –X
– – –

| | | |
|---|---|---|
| IAN HUNTER LUCAS, *pro se* | : | 3:24-cv-00440 |
| *Plaintiff(s),* | : | |
| v. | : | Judge Waverly D. Crenshaw, Jr |
| | | Magistrate Judge Jeffery S. Frensley |
| MARY ANN JESSEE et al. | : | |
| *Defendant(s).* | : | JURY TRIAL DEMANDED |

– – – – – – – – – – – – – – – – – – – – – – – – – – – –X
– – –

## THIRD AMENDED COMPLAINT

Plaintiff, Ian Hunter Lucas ("Plaintiff"), proceeding pro se, is a former graduate nursing student at Vanderbilt University, who is diagnosed with Crohn's disease, ADHD, and autism spectrum disorder—conditions protected under the Americans with Disabilities Act (ADA), the Rehabilitation Act, and Tennessee state law. Plaintiff brings this action seeking redress for Defendants' disability discrimination, failure to accommodate his condition, retaliation against his requests for accommodations, breach of contract, promissory estoppel, negligence, intentional infliction of emotional distress, and any other violations of federal or state law that may be discovered during litigation, including but not limited to additional violations of the ADA, the Rehabilitation Act, and Tennessee state law, and other violations of federal and state law, wrongful expulsion.

### PARTIES

1.      Plaintiff: Ian Hunter Lucas is an adult male citizen of the United States, a resident of Pleasant View, Tennessee, and is a former graduate (professional) student at the Vanderbilt University School of Nursing Master of Nursing (MN) Program from January 2023 to December 2023.

2.      Defendants Vanderbilt University, Vanderbilt University School of Nursing, Mary Ann Jessee, Michelle Tellock, Joel Newsome, Melissa Porter, G.L. Black, Neil Jamerson, Jeremy Bourgoin, Mavis Schorn, Pamela Jefferies, E. Jacob Cummings, Jill Harris, Heather Robbins, Cate Enstrom, Angela Weaver, Mary Roy,

Michael Fazi, Feylyn Lewis, Daniel Diermeier, Tracey George, Cybele Raver, Melanie Lowe, Timothy

Garrett, Maja A. Hartzell, Ernie Rushing, Sara Donahoe, Terry Walker, K. Melissa Smith Hayes, Nancy Wise,

Monika Do. Molly Thompson, Bart P. Quinet.

## CLAIMS

3.      Plaintiff advances claim's for:

  - Disability discrimination in violation of the ADA, Section 504 of the Rehabilitation Act, and the Tennessee

Human Relations Act.

  - Retaliation for making complaints regarding the discrimination experienced.

  - Breach of contract.

  - Promissory estoppel.

  - Negligence.

  - Intentional infliction of emotional distress.

  - Any other wrongful actions under the laws of the United States and the State of Tennessee.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the claims brought forward by the Plaintiff, pursuant to 28 U.S.C. §

1331 and § 1343, as the matters in controversy arise under the laws of the United States.

5.      Venue is proper in the Middle District of Tennessee pursuant to 28 U.S.C. § 1391(b)(c), as the

Defendants are located within this District and are subject to the jurisdiction of the Court. Additionally, the

events giving rise to the claims raised herein occurred within this judicial district.

## NATURE OF ACTION

6.      This action is brought by the Plaintiff against the Defendants seeking redress for disability

discrimination, failure to accommodate his condition, retaliation against his requests for accommodations,

breach of contract, promissory estoppel, negligence, and intentional infliction of emotional distress.

7.      Plaintiff seeks equitable relief and fair compensation for Defendants' reprehensible actions that

resulted in substantial damages, including but not limited to wrongful expulsion, retaliation for

whistleblowing, witness intimidation, flagrant violations of the Americans with Disabilities Act (ADA),

Section 504 of the Rehabilitation Act, the Tennessee Human Rights Act (THRA), and principles of equity,

diversity, and inclusion as outlined in Vanderbilt University's own policies and the broader mandates of Title VI and Title IX of the Civil Rights Act.

FACTUAL ALLEGATIONS

8.      Plaintiff, diagnosed with Crohn's disease, ADHD, and autism spectrum disorder, is a "qualified individual" under the ADA and the Rehabilitation Act. Plaintiff was appropriately registered and had complied with all policy and procedures to disclose and seek accommodation through the office of student access at Vanderbilt University.

9.      Throughout his enrollment at Vanderbilt University, Plaintiff requested reasonable accommodations for his conditions.

10. Defendants failed to adequately accommodate Plaintiff's disabilities, thereby discriminating against him in violation of the ADA, the Rehabilitation Act, and Tennessee law.

11.     After requesting accommodations, Plaintiff faced retaliation from Defendants, including but not limited to, unjust dismissal from the nursing program. This dismissal was based on allegations of improperly accessing records, which are both unfounded and unproven, and were not subject to a fair and impartial hearing, thus violating Plaintiff's right to due process and were subsequently determined by the Vanderbilt University Medical Center Privacy Office, who determined that "no breach in privacy occurred."

12.     Defendants grossly violated the contract with the Plaintiff by not complying with the policies explicitly stated in the Student Handbook, particularly those concerning disability accommodations and non-discrimination.

13.     Defendants engaged in discriminatory practices under the Rehabilitation Act by denying Plaintiff necessary accommodations and retaliating against him for rightfully asserting his rights.

14.     Defendants' actions and omissions constituted gross negligence, resulting in harm to Plaintiff, including but not limited to:

   a. Failure to Provide Necessary Accommodations: Defendants failed to provide reasonable accommodations for Ian Hunter Lucas's disabilities, despite being fully aware of his documented conditions and the substantial impact on his academic performance and well-being. This includes ignoring multiple formal requests for

accommodations such as extended time on exams and flexible deadlines for assignments, supported by comprehensive medical documentation.

   b. Implementation of Punitive Measures: Defendants unjustly implemented punitive measures, such as a 10-point deduction for disability-related absences or late arrivals, severely exacerbating Plaintiff's academic challenges.

   c. Baseless and Unfounded Disciplinary Actions: Defendants subjected Plaintiff to baseless and unfounded disciplinary actions, including unwarranted academic reviews and unjust dismissal from the nursing program without due process, such as a fair and impartial hearing.

   d. Creating a Hostile Educational Environment: Defendants deliberately created a hostile educational environment for Plaintiff, severely compounding his difficulties and distress. The above actions and omissions collectively demonstrate a severe breach of the duty of care owed to Plaintiff, amounting to gross negligence. As a result, Plaintiff suffered significant harm, including academic setbacks, emotional distress, and damage to his professional prospects.

15.    Defendants' conduct toward Plaintiff amounted to intentional infliction of emotional distress. This is evidenced by the severe and pervasive retaliatory and discriminatory actions they took against him, which were intentional and reckless, and caused the Plaintiff severe emotional distress that a reasonable person could not be expected to endure.

<u>CAUSES OF ACTION</u>

Presented herein are the following causes of action against the Defendants as a result of their egregious conduct towards the Plaintiff, Ian Hunter Lucas:

<u>COUNT I: DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF THE ADA</u>

16.    Plaintiff reaffirms and realleges each and every allegation set forth in paragraphs 1 through 15 and incorporates them by reference herein.

17.    This Amended Complaint vigorously asserts claims for discrimination based on disability in blatant violation of the ADA, as amended, 42 U.S.C. §§ 12101 et seq., against all Defendants.

18.     Defendants, individually and collectively, engaged in unlawful discrimination by denying Plaintiff reasonable accommodations for his disability, thereby adversely affecting his academic and professional opportunities at Vanderbilt University.

*Specific Instances of Discrimination:*

19.     Denial of Accommodations for Absences and Late Arrivals: Plaintiff requested reasonable accommodations for disability-related absences and late arrivals due to the unpredictable nature of his Crohn's disease and the need to attend medical appointments. Despite these requests, supported by medical documentation, Plaintiff was informed that there would be a significant deduction from his grade for any disability-related absence or late arrival. This punitive policy significantly impacted Plaintiff's academic performance and constituted a clear denial of reasonable accommodations.

20.     Unjust Dismissal Based on Unfounded Allegations: Plaintiff was unjustly dismissed from the nursing program based on unfounded and unproven allegations of improperly accessing records[1]. On December 17, 2023, Plaintiff was informed of his dismissal without a thorough investigation or hearing[i], violating due process. This action came shortly after Plaintiff had submitted multiple complaints about the lack of accommodations, suggesting a retaliatory motive and serving as a thinly veiled pretext for discrimination.

21.     Hostile Educational Environment: Faculty and staff deliberately created a hostile educational environment for Plaintiff after he courageously began advocating for his rights. For instance, a faculty member publicly reprimanded Plaintiff during a class for requesting accommodations, leading to embarrassment and distress. Such incidents were frequent and targeted, clearly intended to discourage Plaintiff from asserting his rights.

22.     Disparaging Comments and Isolation: Plaintiff faced disparaging comments from faculty and peers regarding his disabilities. On several occasions, faculty members made inappropriate remarks about Plaintiff's need for accommodations in front of other students, undermining his dignity and respect. Moreover, Plaintiff was systematically excluded from group activities and study sessions, further isolating him from the academic community.

_____

23.     Retaliation for Whistleblowing: After Plaintiff courageously reported discriminatory practices to university authorities, he was subjected to increased scrutiny and negative treatment. On or around November 17, 2023, shortly after filing a formal complaint, Plaintiff was subjected to an unwarranted academic review process. This process was not applied to other students who were not whistleblowers or did not report similar discriminatory practices, indicating a clear case of retaliation.

24.     Despite providing Defendants with adequate notice and documentation of his disability, consistent with the ADA's requirements, Defendants failed to make the necessary adjustments or provide appropriate accommodations. This failure violated the ADA and constituted a breach of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701 et seq., which similarly prohibits discrimination on the basis of disability in programs receiving Federal financial assistance.

25.     Defendants' deliberate actions and inactions fostered a hostile educational environment that significantly impaired Plaintiff's ability to participate in and benefit from the educational programs offered by Vanderbilt University.

26.     By their deliberate and negligent conduct, Defendants grossly violated the express terms of the ADA and the Rehabilitation Act, thereby undermining the policies and objectives these statutes embody, which include the promotion of equality, accessibility, and inclusion for individuals with disabilities.

27.     Plaintiff demands declaratory and injunctive relief, compensatory and punitive damages, and trial by jury on all issues triable by jury. Plaintiff also seeks to recover all costs and expenses incurred due to this litigation, including but not limited to attorney fees, expert witness fees, court costs, and other legal expenses, as a direct result of Defendants' egregious violations of his rights under the ADA and the Rehabilitation Act.

     a.     *Compensatory Damages:* Award Plaintiff compensatory damages in an amount to be determined at trial, but not less than $1,000,000[2] for the emotional distress, academic setbacks, and damage to his professional prospects caused by Defendants' actions.

     b.     *Punitive Damages:* Award Plaintiff punitive damages in an amount not less than $2,000,000[3] to punish Defendants for their egregious conduct and to deter similar actions in the future.

---

[2] Tenn. Code Ann. § 29-39-102(a), (c).
[3] Tenn. Code Ann. § 29-39-104(a)(5).

c.  *Reinstatement:* Order the immediate reinstatement of Plaintiff, Ian Hunter Lucas, to Vanderbilt University and the Vanderbilt School of Nursing, with full rights, privileges, and honors, and overturn the academic dismissal and expulsion that was unjustly and wrongfully imposed upon him, as such reinstatement is a right under restitution under the ADA.

d.  *Declaratory and Injunctive Relief:*

- Issue a declaratory judgment that Defendants' actions grossly violated the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-12165 and 42 U.S.C. §§ 12181-12189, the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Tennessee Human Rights Act (THRA), Tenn. Code Ann. §§ 4-21-101 et seq

- Issue an injunction requiring Defendants to:

1. Implement, strictly enforce, and regularly review policies that ensure reasonable accommodations are provided to all students with disabilities without exception.

2. Conduct regular, mandatory, and comprehensive training for all faculty, staff, and students on the rights of individuals with disabilities, the legal requirements under ADA and Rehabilitation Act, and the proper handling of accommodation requests, with a focus on creating an inclusive, respectful, and legally compliant environment.

3. Establish a robust and transparent monitoring system to ensure strict compliance with federal and state disability laws, and provide regular updates to all stakeholders, including students with disabilities.

e.  *Court Fees and Costs:* Award Plaintiff court fees and costs of this action, including but not limited to expert witness fees, legal expenses, and any other costs incurred in pursuit of this case due to Defendants' violations of his rights under the ADA and the Rehabilitation Act.

f.  *Other Relief:* Grant such other and further relief as the Court deems just, proper, and necessary to fully compensate Plaintiff for the harm suffered and to ensure Defendants' compliance with the ADA and Rehabilitation Act.

<u>COUNT II: FAILURE TO ACCOMMODATE (ADA and REHABILITATION ACT)</u>

28.     Plaintiff reaffirms and realleges each and every allegation set forth in paragraphs 1 through 27 as if fully set forth herein.

29.     Defendants egregiously failed to provide reasonable accommodations for Plaintiff's disabilities, in gross violation of the ADA and Rehabilitation Act, thereby causing him significant harm and severe damages, including intense emotional distress, major academic setbacks, and substantial damage to his professional prospects.

30.     Plaintiff, as a qualified individual with disabilities under the ADA and Rehabilitation Act, provided Defendants with timely and comprehensive notice and documentation of his disabilities and the need for reasonable accommodations.

31.     Specifically, Plaintiff requested the following accommodations, each of which was substantiated by solid medical documentation: extended time on exams to account for the cognitive and physical challenges posed by his conditions; flexible deadlines for assignments to accommodate periods of illness and medical appointments related to his Crohn's disease and ADHD; and access to quiet study areas to mitigate the sensory overload and concentration difficulties associated with his autism spectrum disorder. These requests were supported by comprehensive and unequivocal medical documentation.

32.     Despite these clear and substantiated requests and the unequivocal requirements of the ADA and Rehabilitation Act, Defendants egregiously failed to provide these accommodations. This egregious failure included:

  - Denying Plaintiff extended time on exams, which severely and detrimentally affected his academic performance.

  - Refusing to grant flexible deadlines, leading to extreme academic pressure, significant stress, and adverse health impacts.

  - Not providing access to quiet study areas, severely impairing Plaintiff's ability to concentrate and complete his coursework effectively, thereby significantly affecting his academic performance.

33.     Instead of accommodating Plaintiff, Defendants retaliated by unjustly and maliciously dismissing him from the nursing program based on unfounded, unproven, and fabricated allegations of improperly accessing records, which served as a blatant pretext for discrimination.

*Evidence to Substantiate Claims of Unfounded and Unproven Allegations and Pretext for Discrimination:*

34. Documentation of Accommodation Requests: Plaintiff submitted formal requests for accommodations, including extended time on exams, flexible deadlines for assignments, and reasonable excused absences and late arrivals due to disability-related reasons without the requirement of a medical excuse. Correspondence between Plaintiff and the university's office of student access or disability services explicitly detailing these requests and the administrative responses or lack thereof.

35. Record of Academic Performance: Academic records demonstrating Plaintiff's performance before the denial of accommodations, showing satisfactory progress, and the subsequent decline in performance after accommodations were withheld.

36. Witness Testimonies: Statements from fellow students, faculty, and staff attesting to Plaintiff's diligent pursuit of accommodations and the university's inadequate responses. Testimonies from other students with disabilities who experienced similar or contrasting treatment.

37. Email and Communication Records: Emails and other communications from faculty or administration discussing Plaintiff's requests for accommodations and subsequent actions, which reveal a consistent pattern of discriminatory practices.

38. Investigative Reports: Lack of comprehensive internal investigation reports or disciplinary records substantiating the allegations of improperly accessing records, demonstrating the absence of due process.

39. Comparative Evidence: Evidence showing differential treatment of other students accused of similar infractions but without disabilities, who were not dismissed.

40. Policy and Procedure Documents: The university's policies and procedures regarding handling complaints of discrimination and providing accommodations, highlighting blatant deviations in Plaintiff's case. Records showing these policies were not followed in Plaintiff's dismissal.

41. Retaliation Evidence: A timeline of adverse actions taken against Plaintiff following his requests for accommodations and complaints of discrimination, showing an undeniable pattern of retaliation. Evidence of a shift in the university's behavior towards Plaintiff after asserting his rights, including hostile communications and unjust dismissal and a subsequent expulsion from the University based on extravagant "policy violations"

including the Plaintiff being expelled for his 2nd Amendment Right and having a concealed carry permit off campus.

42.     Plaintiff formally requested accommodations and reported discriminatory practices, at which point the tone and content of communications from university officials became noticeably hostile. Emails previously characterized by professional and supportive language shifted to accusatory and dismissive tones. Specifically, testimony from a student peer to the EOA Investigator revealed that faculty members chastised and defamed Plaintiff for getting "special treatment," and referred to him as "Ian being Ian," unfairly undermining his legitimate and legally mandated accommodations. This behavior created animosity among student peers, who began to treat Plaintiff differently based on the clear lack of respect and dignity shown by faculty when Plaintiff was not present.

43.     Additionally, internal communications reveal discussions among faculty and administration about "making an example" out of Plaintiff to deter other students from asserting similar rights. Following the formal complaints, Plaintiff faced an unjust dismissal from the nursing program on December 17, 2023, based on unfounded allegations of improperly accessing records[4]. This dismissal occurred without prior notice or a fair

---

[4] Dr. Schorn's statements regarding Lucas's alleged violations of School of Nursing policies and HIPAA regulations present significant contradictions that undermine the legitimacy of the accusations and suggest that the actions taken against Lucas were pretextual, aimed at facilitating a constructive academic dismissal. These contradictions are evident in the following ways: 1. **Shift in Accusation**: Initially, Lucas was accused of a HIPAA violation for "accessing patient charts remotely." However, after the Vanderbilt University Medical Center (VUMC) Privacy Office determined that no privacy breach had occurred, Dr. Schorn and Defendant Jessee shifted the rationale to allege that Lucas violated School of Nursing policies by "accessing the chart for educational purposes and not documentation purposes." This shift, despite the VUMC Privacy Office's confirmation of no breach, illustrates a capricious and arbitrary application of institutional policy against Lucas, violating his due process rights [51]. 2. **Acknowledgment of Compliance with HIPAA's 'Minimum Necessary' Rule**: Defendants Jessee and Schorn acknowledged Lucas's adherence to the 'minimum necessary' rule, a cornerstone of the HIPAA Privacy Rule. This acknowledgment further supports the claim that Lucas's activities were legally compliant and integral to his educational advancement in a clinical setting. The 'minimum necessary' rule ensures that only the essential amount of Protected Health Information (PHI) needed for a specific purpose is accessed, underscoring the legality and necessity of Lucas's access to patient information as part of his clinical education [51]. 3. **Confirmation of Policy Alignment with VUMC Regulations**: In her decision letter, Dr. Schorn confirmed that, per the privacy policy, the VUMC Compliance and Privacy Office maintains the primary guiding principle and policy resource. She stated that "Accessing records to participate in or document care away from the clinical setting aligns with VUMC regulations, meets the VUMC requirements, and does not violate HIPAA." This statement directly contradicts the later allegations of policy violations, affirming that Lucas's actions were in alignment with VUMC regulations and did not constitute a HIPAA violation [56]. These contradictions in Dr. Schorn's statements and the subsequent actions taken against Lucas highlight procedural flaws and suggest that the accusations of

investigation, reflecting a retaliatory motive rather than any legitimate concern over academic performance or conduct. Subsequently, on January 10, 2024, Plaintiff was expelled from the university for alleged policy violations unrelated to his academic performance, such as possessing a legally obtained concealed carry permit off-campus, which had no bearing on his conduct within the university. This expulsion was executed without due process, further evidencing a pattern of retaliation and discrimination. Documentation of these hostile communications, unjustified disciplinary actions, and the lack of due process in the expulsion will be crucial in establishing that the university's behavior towards Plaintiff changed significantly after he asserted his rights.

44.     As a direct and proximate result of Defendants' failure to accommodate his disabilities, in clear violation of the ADA and Rehabilitation Act, Plaintiff suffered significant harm. This harm includes, but is not limited to, academic setbacks such as defendants altering Plaintiffs passed course grades to failing grades and lost scholarships, emotional distress manifested as anxiety and depression, and damage to his professional prospects including lost job opportunities and tarnished reputation, all of which have had severe and lasting impacts. Defendants also altered Plaintiffs GPA[5] by manually adjusting the Plaintiffs term GPA well below what was mathematically plausible, after an approximate month long of "discussions" between the School of Nursing, Provost, and Registrar, Plaintiff received notice that his GPA had been corrected, the School of Nursing then subsequently posted a "new policy change and update to pass/fail courses the same day. While the registrar's office cited to the plaintiff that the error was a "computer system" issue.

---

accessing patient records were unfounded and used as a pretext to change Lucas's grades, ultimately facilitating a constructive academic dismissal. The initial determination by the VUMC Privacy Office that no HIPAA violation occurred, combined with the acknowledgment of Lucas's compliance with the 'minimum necessary' rule and the confirmation that his actions aligned with VUMC regulations, invalidates the basis for the alleged policy violations. Consequently, these contradictions render the allegations against Lucas void, challenging the legitimacy of his academic dismissal.

[5] Emails exchanged with the Vanderbilt University Office of the Registrar highlighted measures that needed to be taken to rectify Mr. Lucas's GPA, suggesting potential deliberate tampering. Initially, there was no response from the Office of the Registrar. However, their communication changed to "we are in discussions with the School of Nursing" only after the Department of Education Office of Civil Rights was included in the correspondence. When details were requested, none were provided. It appears that Mr. Lucas's GPA was purposefully lowered below 3.0, a maneuver seemingly intended to bar re-admission or any transferability by lowering the GPA.

45.     Defendants' actions represent a clear and egregious violation of the ADA and the Rehabilitation Act, which mandate that educational institutions receiving federal financial assistance must provide reasonable accommodations to qualified individuals with disabilities.

46.     Plaintiff seeks declaratory and injunctive relief, compensatory damages, specific and general damages, punitive damages, and attorney's fees and costs associated with this action, in addition to any other relief the Court deems necessary and appropriate to rectify the injustices suffered by the Plaintiff.

<u>COUNT III: RETALIATION</u>

47.     Plaintiff reaffirms and realleges each and every allegation set forth in paragraphs 1 through 46 as if fully set forth herein.

48.     Defendants wrongfully and unlawfully retaliated against Plaintiff for seeking accommodations and for activities, including seeking accommodations and reporting discriminatory practices, protected under the whistleblowing provisions of the ADA and Rehabilitation Act, thereby inflicting extensive harm and damages upon him.

49.     Plaintiff, as a qualified individual with disabilities under the ADA and Rehabilitation Act, sought reasonable accommodations and reported discriminatory practices, which are protected activities under these laws.

50.     Defendants engaged in retaliatory actions against Plaintiff, including:

  - Unjustifiably denying his requests for reasonable accommodations.

  - Unfairly dismissing him from the nursing program based on unfounded and unsubstantiated allegations of improperly accessing records.

  - Deliberately creating a hostile educational environment, characterized by public humiliation, undue pressure, and intimidation, with the aim of discouraging Plaintiff and others from rightfully asserting their rights.

51.     Defendants' unjust retaliatory actions were directly linked to Plaintiff's protected activities of seeking accommodations and reporting discrimination, thus constituting a flagrant and inexcusable violation of the ADA, the Rehabilitation Act, and applicable Tennessee laws, including but not limited to Tennessee Code Annotated § 49-7-124 (Protection of rights and privileges).

52.     As a direct and proximate result of Defendants' retaliatory actions, Plaintiff suffered significant harm, including academic setbacks, emotional distress, and damage to his professional prospects, including but not limited to lost wages, lost opportunities, and medical expenses. Plaintiff seeks declaratory and injunctive relief, compensatory damages, punitive damages to deter Defendants from such unlawful conduct in the future, and attorney's fees and costs associated with this action, as well as any other relief the Court deems just and proper.

53.     Defendants placed Plaintiff on an "interim campus restriction" without cause or reason provided and furthermore violated the ADA. The ADA provides a clear framework for analyzing whether a student poses a "direct threat" to the safety of others. When considering the expulsion or suspension of a student with disabilities under Titles II and III of the ADA, the school must conduct an individualized assessment[6] (know as a welfare panel at Vanderbilt University) that includes the following factors:

   a.     The Duration of the Risk: Assess how long the risk posed by the student is expected to last.

   b.     The Nature and Severity of the Potential Harm: Evaluate the specific type and extent of harm that the student could potentially cause.

   c.     The Likelihood that the Potential Harm Will Occur: Determine the probability that the harm will actually take place, based on objective and verifiable evidence.

   d.     The Imminence of the Potential Harm: Consider how soon the potential harm is likely to occur.

   e.     Schools must demonstrate that no reasonable accommodation would help alleviate or eliminate the direct threat posed by the student.

---

On December 4th, 2023, Vanderbilt University Public Safety and Vanderbilt University Counseling Center, under the direction of the Office of the Dean of Students and University Counsel, conducted a Welfare Panel as defined by the Vanderbilt Student Handbook. Communications from Vanderbilt University Public Safety and the Counseling Center indicated that the plaintiff "did not demonstrate a risk to self or campus safety." However, with the apparent objective of keeping the plaintiff off campus to avoid providing supportive measures, G.L. Black instructed Jeremy Bourgoin to fabricate "new allegations." These allegations, which led to the plaintiff's expulsion, originated from individuals involved in the investigation, including Newsome, Mary Ann Jessee, Neil Jamerson, and Bourgoin, rather than from any independent sources. Additionally, information used in the Welfare Committee process was repurposed as "evidence" for the expulsion. For example, an interview conducted on December 4th, 2023, was recorded and transcribed without the plaintiff's knowledge, consent, or notice. The transcript was then manipulated, with sections cut in a manner that did not correspond to the full context of the video.

f.      The only lawful reasons for suspending or expelling a student for reasons related to his/her disability under Titles II and III of the ADA include:

- The student is unqualified, and despite reasonable accommodations, they would remain unqualified.

- The student poses a direct threat to the health or safety of others that cannot be eliminated or reduced by providing a reasonable accommodation.

- The student's attendance fundamentally alters the school's programs or services.

- The accommodations necessary for the student to participate are not reasonable or would impose an undue burden on the institution.

54.     Defendants did not properly adhere to this framework and failed to provide reasonable accommodations that could have mitigated any perceived threat, or issues related to Ian Hunter Lucas's disabilities. This failure to conduct an appropriate assessment and provide necessary accommodations constitutes a violation of the ADA.

55.     The reasoning for this "intermittent campus restriction" was to prevent Plaintiff from utilizing supportive measures[7] as entitled given the plaintiff had ongoing EOA investigations and additionally began a Title IX investigation in which the Plaintiff was denied supportive measures despite the confirmed evidence of a quid pro quo[8] Title IX situation involving a School of Nursing Faculty Member, further creating a

---

[7] Supportive measures under Title IX refer to non-disciplinary, non-punitive individualized services provided as appropriate, reasonably available, and without fee or charge to either the complainant or the respondent before or after the filing of a formal complaint, or even when no formal complaint has been filed. These measures are designed to restore or preserve equal access to the recipient's education program or activity without unreasonably burdening the other party. They also aim to protect the safety of all parties involved or the educational environment or to deter sexual harassment. Examples of supportive measures include counseling, extensions of deadlines or other course-related adjustments, modifications of work or class schedules, campus escort services, mutual restrictions on contact between the parties, changes in work or housing locations, leaves of absence, and increased security and monitoring of certain areas of the campus. The goal is to ensure that both the complainant and the respondent continue to have access to educational programs and activities while the grievance process is ongoing, thereby protecting their rights and well-being. Additionally, supportive measures can include reinstatement to an academic program if the individual was unjustly removed, ensuring that the individual can continue their education without further disruption. For more information, refer to the U.S. Department of Education's regulations at 34 C.F.R. § 106.30 and the guidance provided in the Title IX Resource Guide.

[8] Quid Pro Quo sexual harassment under Title IX occurs when an employee of the recipient (e.g., school or university) conditions the provision of an aid, benefit, or service on an individual's participation in unwelcome sexual conduct. This form of harassment is inherently coercive because the person in the position of authority uses their power to solicit sexual favors by threatening or promising to withhold

challenging and stressful environment in which the Plaintiff was dealing with in addition to the ongoing disability retaliation.

## COUNT IV: BREACH OF CONTRACT

56.     Plaintiff reaffirms and realleges each and every allegation set forth in paragraphs 1 through 55 as if fully set forth herein.

57.     Defendants egregiously breached their contractual obligations by failing to adhere to the stated policies in the Student Handbook regarding disability accommodations and non-discrimination, thereby causing Plaintiff harm and damages.

58.     The Student Handbook and associated university policies created a binding contract between Plaintiff and Vanderbilt University, outlining the rights and responsibilities of both parties, particularly concerning disability accommodations, non-discrimination, and procedural due process.

59.     Plaintiff relied on these contractual obligations when he requested reasonable accommodations for his disabilities, reported discriminatory practices, and expected fair treatment under university policies.

60.     The Defendants have unequivocally breached the contract by:

  a. Failing to provide reasonable accommodations as outlined in the Student Handbook.

  b. Engaging in discriminatory and retaliatory actions contrary to the non-discrimination policies.

  c. Denying Plaintiff due process by dismissing him from the program without a fair, unbiased, and exhaustive investigation or hearing.

  d.     Violating FERPA by mishandling Plaintiff's educational records, including improper disclosure and access, in which Defendants Newsome, and Mon 12/04/2023, without obtaining the necessary written consent from the Plaintiff, videotaped and transcribed a non-criminal inquiry interview during which sensitive health

---

benefits or impose penalties. It is considered one of the most clear-cut forms of sexual harassment under Title IX regulations. For further details on this definition, refer to the U.S. Department of Education's Title IX regulations (34 C.F.R. § 106.30).

information was discussed. Furthermore, this interview was distributed to unknown and undisclosed recipients without the knowledge or consent of the Plaintiff.

61.     As a direct and proximate result of Defendants' breaches, Plaintiff suffered significant harm, including but not limited to academic setbacks, emotional distress, and damage to his professional prospects, all of which are directly attributable to Defendants' breaches.

62.     Plaintiff demands compensatory damages, including but not limited to lost tuition, lost wages, and lost opportunities, to be determined at trial, for the significant harm caused by Defendants' egregious breach of contract. Additionally, Plaintiff seeks punitive damages due to the intentional and malicious nature of Defendants' actions, as well as any other relief the Court deems just and appropriate.

<u>COUNT V: PROMISSORY ESTOPPEL</u>

63.     Plaintiff reaffirms and realleges each and every allegation set forth in paragraphs 1 through 62 as if fully set forth herein.

64.     Defendants made specific, explicit promises, as outlined in the Student Handbook and associated university policies on which Plaintiff reasonably and justifiably relied on Defendants' promises, which directly led to his significant detriment and caused him considerable harm and damages.

65.     Defendants, through official communications, the Student Handbook, and associated university policies, made specific promises to provide reasonable accommodations for students with disabilities and to adhere to non-discrimination policies

66.     Plaintiff reasonably relied on these promises when he requested accommodations for his disabilities and reported instances of discrimination, expecting that Defendants would fulfill their commitments. Specific promises included those stated in the Student Handbook, which explicitly mentioned that students with documented disabilities would receive reasonable accommodations such as extended time on exams, flexible deadlines for assignments, and access to quiet study areas. Additionally, emails and letters from university officials assured Plaintiff that his accommodation requests would be honored and that the university was committed to creating an inclusive and supportive environment. During meetings with the Disability Services Office, Plaintiff was repeatedly reassured that his accommodation needs would be met and that any discrimination or retaliation would be fully addressed in accordance with university policies

67.     67. Plaintiff relied on these specific promises by enrolling in the nursing program, paying tuition fees, and actively participating in the program with the understanding that he would receive the necessary accommodations and fair treatment as outlined. However, Defendants' actions not only significantly impaired Plaintiff's ability to participate in and benefit from the educational programs, but also caused severe emotional distress and academic setbacks. These detrimental consequences were a direct result of Defendants' failure to honor their promises and obligations, thereby exacerbating Plaintiff's challenges and undermining his academic and professional prospects. Despite these explicit promises, Defendants willfully and egregiously breached their obligations, demonstrating a clear pattern of disregard for their stated commitments by failing to provide the requested accommodations, including extended time on exams and flexible deadlines for assignments, in blatant violation of their stated commitments.

68.     Furthermore, Defendants retaliated against Plaintiff by dismissing him from the nursing program based on unsubstantiated allegations, creating a hostile environment, including but not limited to public humiliation, undue pressure, and intimidation, and failing to adhere to their non-discrimination policies.

69.     Plaintiff's reliance on Defendants' promises was reasonable and foreseeable, given the official nature of the communications and policies.

70.     As a direct and proximate result of Defendants' failure to fulfill their promises, Plaintiff suffered significant harm, including academic setbacks, emotional distress, and damage to his professional prospects. - Therapy Costs: Plaintiff incurred therapy costs amounting to approximately $20,000 for treatment of anxiety, depression, and other psychological symptoms directly resulting from Defendants' actions. - Lost Job Opportunities: Plaintiff lost job opportunities with an estimated salary of $120,000.00 annually due to the tarnished reputation and academic setbacks caused by Defendants' wrongful actions.

71.     Plaintiff seeks compensatory damages, including but not limited to lost tuition, lost wages, and lost opportunities, to be determined at trial, for the substantial harm caused by Defendants' blatant failure to honor their promises, as well as any other relief the Court deems just and appropriate.

<u>COUNT VI: NEGLIGENCE</u>

72.     Plaintiff reaffirms and realleges each and every allegation set forth in paragraphs 1 through 71 as if fully set forth herein.

73.     Defendants were recklessly negligent in their actions towards Plaintiff, causing him significant harm and damages. Specifically, Defendants failed to provide necessary accommodations despite being fully aware of Plaintiff's documented disabilities and the substantial impact on his academic performance and well-being. They ignored multiple formal requests for accommodations such as extended time on exams and flexible deadlines for assignments, which were supported by comprehensive medical documentation.

74.     Additionally, Defendants implemented punitive measures, such as a 10-point deduction for disability-related absences or late arrivals as per Cate Enstrom in her version of course accommodations towards plaintiff, further exacerbating Plaintiff's academic challenges. They also subjected Plaintiff to baseless and unfounded disciplinary actions, including unwarranted academic reviews and unjust dismissal from the nursing program without due process, including but not limited to a fair and impartial hearing.

75.     These actions, combined with creating a hostile educational environment, demonstrate a severe breach of their duty of care towards Plaintiff, amounting to gross negligence.

76.     Defendants owed a duty of care to Plaintiff as a student enrolled in their nursing program. This duty included:

   a. Providing reasonable accommodations for his disabilities.

   b. Ensuring a non-discriminatory learning environment.

   c. Handling grievances and disciplinary actions fairly and in accordance with established policies.

77.     Defendants breached their duty of care by:

   a. Failing to provide the necessary accommodations for Plaintiff's disabilities, despite having received adequate notice and documentation.

   b. Retaliating against Plaintiff for requesting accommodations and reporting discrimination.

   c. Failing to follow proper procedures, including but not limited to a fair and impartial hearing, in dismissing Plaintiff from the program based on unfounded allegations.

78.     Defendants' grave breaches of duty directly and proximately caused substantial harm to Plaintiff. The lack of accommodations severely affected Plaintiff's academic performance and well-being. The retaliatory actions and improper dismissal not only caused significant emotional distress but also derailed Plaintiff's academic and professional progress, causing a loss of potential earnings and opportunities.

79. As a result of Defendants' negligence, Plaintiff suffered significant harm, including:

   a. Academic setbacks.

   b. Emotional distress.

   c. Damage to his professional prospects.

80.     Plaintiff seeks compensatory damages, including but not limited to lost tuition, lost wages, and lost

opportunities, to be determined at trial, for the substantial harm caused by Defendants' gross negligence, as

well as any other relief the Court deems just and appropriate.

<u>COUNT VII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

81.     Plaintiff reaffirms and realleges each and every allegation set forth in paragraphs 1 through 80 as if

fully set forth herein.

82.     Defendants deliberately, and maliciously inflicted severe emotional distress on Plaintiff through their

retaliatory and discriminatory actions. These actions were in direct violation of Plaintiff's rights under the

Americans with Disabilities Act (ADA) and Title IX, thereby causing him significant harm and damages.

83.     Defendants engaged in a pattern of retaliatory and discriminatory actions against Plaintiff in direct

contravention of his rights under the Americans with Disabilities Act (ADA) and Title IX, after he requested

reasonable accommodations and reported instances of discrimination.

84.     Specific actions by Defendants included:

   a. Denying reasonable accommodations for Plaintiff's disabilities.

   b. Dismissing Plaintiff from the nursing program based on unfounded allegations.

   c. Creating a hostile educational environment, including but not limited to public humiliation, undue

pressure, and intimidation, to discourage Plaintiff and others from asserting their rights.

85.     Defendants' actions were not only intentional and malicious, but also premeditated and carried out

with the unequivocal understanding that they would inflict severe emotional distress on Plaintiff. The

retaliatory and discriminatory actions were vindictively designed to punish and discourage Plaintiff from

asserting his rights and exposing misconduct.

86.     As a result of Defendants' actions, Plaintiff experienced severe emotional distress, including anxiety,

depression, significant stress, and other psychological symptoms as diagnosed by a licensed mental health

professional. The emotional distress was of such a degree that it interfered with Plaintiff's ability to function academically and professionally.

87.    Defendants' intentional actions were the direct and proximate cause of Plaintiff's severe emotional distress. Plaintiff suffered significant harm, including emotional and psychological trauma, as well as damage to his academic and professional prospects.

88.    Plaintiff seeks compensatory and punitive damages, to be determined at trial, for the severe emotional distress maliciously inflicted by Defendants, as well as any other relief the Court deems just and appropriate.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ian Hunter Lucas respectfully requests that this Court:

   a. Enter judgment in favor of Plaintiff and against Defendants on all counts.

   b. Award Plaintiff compensatory damages in an amount to be determined at trial, but not less than $2,000,000 for the emotional distress, academic setbacks, and damage to his professional prospects, caused by Defendants' actions.

   c. Award Plaintiff punitive damages in an amount not less than $1,000,000 to punish Defendants for their egregious conduct and to deter similar actions in the future.

   d. Award Plaintiff costs of this action.

   e. Order the reinstatement of Plaintiff to Vanderbilt University and the Vanderbilt School of Nursing, overturn the academic dismissal and expulsion that was wrongfully executed upon Plaintiff, and expunge any related records from Plaintiff's academic history. This reinstatement is sought as restitution under the Americans with Disabilities Act (ADA) and in accordance with Plaintiff's rights under Title IX.

   f. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted, DATED this 29th day of May 2024, with all rights of Ian Hunter Lucas explicitly reserved.

Ian Hunter Lucas | Plaintiff Pro Se
221 Charleston Avenue
Pleasant View, Tennessee, 37146
Phone: (910) 872-3577
Email: LucasIanHunter@outlook.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of May 2024, the foregoing **Third Amended Complaint** was filed with the Court's CM/ECF system, which automatically forwarded a copy to the following counsel of record:

Mark A. Baugh, BPR No. 015779
Denmark J. Grant, BPR No. 036808
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203
Telephone (615) 726-5600
Facsimile (615) 744-5760
*Attorneys for Defendants Clairise Gamez, Crystal Ritchie, and Marissa Shulruff*

Mark A. Baugh, BPR No. 015779
(See above for Address and Contact Information)
*Attorney to be Noticed*: *Daniel Diermeier, Tracey George, Cybele Raver, Melanie Lowe, Timothy Garrett, Maja A. Hartzell, Ernie Rushing, Sara Donahoe, Terry Walker, K. Melissa Smith Hayes, Nancy Wise, Lacey Cross, Monika Do, Carrie Plummer, Ellen Schoen, Judson Smith, Jessica Wellette, Melanie Morris, Robingale Panepinto, Melissa Lord, Brittany Kirby, and Shannon Ellrich*[i]

Kevin C. Klein (#23301)
Jeffrey W. Sheehan (#33534)
KLEIN SOLOMON MILLS, PLLC
1322 4th Avenue North
Nashville, Tennessee 37208
(615) 600-4780
*Attorneys for Defendants: Mary Ann Jessee, Michelle Tellock, Joel Newsome, Melissa Porter, G.L. Black, Neil Jamerson, Jeremy Bourgoin, Mavis Schorn, Pamela Jefferies, E. Jacob Cummings, Jill Harris, Heather Robbins, Cate Enstrom, Angela Weaver, Mary Roy, Michael Fazi, and Feylyn Lewis*

Respectfully submitted,

**/s/ Ian Hunter Lucas**
Ian Hunter Lucas
Plaintiff Pro Se
221 Charleston Avenue
Pleasant View, Tennessee, 37146
Phone: (910) 872-3577
Email: LucasIanHunter@outlook.com

---

[i] *This service has been executed through the court's Case Management/Electronic Case Files (CM/ECF) system, with Attorney Mark A. Baugh being designated as the "ATTORNEY TO BE NOTICED" on behalf of these defendants. It is important to note that this designation has been made notwithstanding the fact that a Federal Complaint or Federal Summons has not been formally served upon these defendants. This notice is issued to certify the completion of service as outlined above and to affirm the compliance with procedural requirements under the Federal Rules of Civil Procedure regarding the notification of defendants in this matter*